Carol A. Sigmond, Esq. CS 2735
Dunnington, Bartholow & Miller LLP
477 Madison Avenue – 12th Floor
New York, New York 10017
(212) 682-8811

UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WILLIAM A. GROSS CONSTRUCTION,                    CASE NO. 07CV10639
ASSOCIATES, INC.,

                                    Plaintiff,

                                                         **Amended Complaint**

        -against-

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                                    Defendant.

-------------------------------------------------------------------

        Plaintiff William A. Gross Construction Associates, Inc., by its undersigned attorney,

complaining of the defendant, upon information and belief, alleges:

                                    Jurisdiction

1.      Jurisdiction is pursuant to 28 U.S.C. section 1332 and is based upon diversity of the

        parties: Plaintiff is a corporation formed and existing under the laws of the State of New

        York, having its principal place of business in New York and Defendant is an insurance

        company formed and existing under the laws of the State of Illinois, having its principal

        place of business in Illinois (and in no other state) and there is more than $75,000 in

        issue.

                                    Venue

2.      Venue is pursuant to 28 U.S.C. section 1391 and is properly in this District by virtue of

                                        1

the claims in issue having arisen in the County of the Bronx, State of New York.

Parties

3.    William A. Gross Construction Associates, Inc. (hereinafter "WAGCA") is a corporation
organized and existing under the laws of the State of New York, being located at 117
South Fourth Street, New Hyde Park, NY 11040 and is engaged from time to time as a
site work contractor.

4.    Defendant American Manufacturers Mutual Insurance Company (hereinafter "American
Manufacturers") is a company formed and existing under the laws of the state of Illinois,
located at 1 Kemper Drive, Long Grove, Illinois and at all times relevant hereto was
authorized to operate as a surety in New York by the New York State Superintendent of
Insurance.  Defendant American Manufacturers does not currently conduct any business
in New York and does not currently maintain an office for the issuance of insurance or
surety bonds in New York.  Defendant American Manufacturers is currently in run off in
anticipation of a final shut down of its operations.  See Exhibit B.

Other Entities

5.    Non party Cauldwell Wingate Company, LLC, (hereinafter "CWC") is a domestic limited
liability company having its principal place of business at 380 Lexington Avenue, New
York, NY.

6.    Non party New York State Dormitory Authority (hereinafter "DASNY") is a public
benefit corporation formed and existing under the laws of the State of New York.
Pursuant to a Memorandum of Understanding, DASNY acts as the developer of court
projects located in the City of New York for use by the Office of Court Administration as

2

courthouses.

Background

7.    Upon information and belief, on or about December 20, 2002, CWC entered into a

contract with DASNY known as General Construction No.2 – Fitout Work at Bronx

Criminal Court Complex, DA NO. 92561, 138099999/CR58 in the approximate sum of

$46,995,000.00 (hereinafter "Prime Contract.")   Plaintiff begs leave to refer to the true

original Prime Contract for the precise terms thereof.

8.     Upon information and belief, under the Prime Contract, CWC agreed to furnish and

install all labor, material and equipment necessary to fit out the Bronx Criminal Court

Complex (hereinafter "Project.")

9.    On or about December 27, 2002, Defendant American Manufacturers issued a Labor and

Material Payment Bond No. 3SE030676 naming itself as Surety, DASNY as Owner and

CWC as Contractor for the benefit of any "claimant:" claimant being defined as one who

furnished labor, material or equipment for the Project as a subcontractor, sub-

subcontractor or supplier to CWC under Prime Contract.  A true and correct copy of said

bond is annexed hereto as Exhibit A and is incorporated hereat as if fully set forth.

10.    At all times relevant hereto, WAGCA is a "claimant" under said Labor and Material

Payment Bond.

11.    Less than one year has expired from the time that CWC stop work on the Project and the

commencement of this Action.

12.    On or about January 4, 2004, WAGCA entered into a subcontract with CWC for the site

work and landscaping for the Project under the Prime Contract.  Plaintiff respectfully

asks to refer to the true original for the exact terms and conditions, and incorporates said document here as if fully set forth.

13.     The January 4, 2004 contract provided that CWC would pay WAGCA the sum of $3,820,000 for the work, labor and material called for under the subcontract and said subcontract excluded material for 298 stainless steel bollards from WAGCA's obligations.

14.     Between January 4, 2004 and July 31, 2007, CWC ordered additional work and deleted work: with the net effect of the changes to the work being to increase the value of the contract between CWC and WAGCA to $6,704,037.44.

15.     Between approximately October 2005 and July 2007, WAGCA substantially performed its subcontract work, including substantially completing the punch list and change orders directed by CWC.

16.     Plaintiff WAGCA substantially performed its work notwithstanding: CWC ordering it to work out of sequence on waterproofing; CWC omitting to provide accurate and timely information respecting the actual elevations of the Project; CWC omitting to provide compete and accurate design information timely; CWC ordering changes to the work; CWC not providing access to the site timely; CWC not providing access to work areas timely or fully, among other obstructions, impediments and disruptions to the Project.

17.     Specifically, WAGCA substantially completed; a) $4,111,558 of base contract work, leaving $3442 not done by reason of the failure of CWC to provide a design for the work in issue; b) $974,521.44 in changed and additional work; and c) $1,644,958 in disputed work generally consisting of labor and material escalation, disrupted sequence of work,

4

and extended supervision and administrative costs.

18.    To date, CWC has paid WAGCA the sum of $4,084,559.35 against the sum due of $6,704,037.44 leaving a balance due of $2,619,478.09.

19.    The sum due of $2,619,478.09 includes contract balance and $205,577.90 in retainage on completed work.

20.    The sum due of $2,619,478.09 excludes the Change Orders (hereinafter "CO"), Pending Change Orders (hereafter "PCO") Invoices, and Extra work orders processed and paid in full by CWC prior to July 31, 2007, but includes the 32 open change orders, pending change orders and extra work orders as set forth in paragraph 20 below.

21.

| Co No. | Description | Amount |
| --- | --- | --- |
| 3/PCO 349 | Drain Cover/Protection/Planter Drains | $   2,333.30 |
| 4/PCO 2428 | Plaza/Pavers/Light Weigh Fill | 196,544.29 |
| 10/PCO 431 | Increase for Non Slip Tread Nosing | 1,997.42 |
| 13 | Rigid Insulation/Stone Garden/JA Roof | 4,347.54 |
| 15/PCO 441 | Additional Work at Rock Garden | 17,026.28 |
| 20 | Supply/install ground cover at bike rack | 4,121.76 |
| 22 | Cutting Precast Pavers at electric lights | 16,034.05 |
| 23/PCO 355 & 240 | Changes to Stainless Steel Bollards | 204,556.45 |
| 24 | 4000 PSI concrete in lieu of 3200 PSI | 13,472.48 |
| 26 | Cast-in-Place add. Trench 12" wide | 32,257.00 |
| 27 | Add. wk per SK A 250 & 251 | 2,571.55 |
| 29 | Change Steel Face Curb/BPP | 5,537.80 |

| 31 | F&I Light Weight Fill at Breezeway | 17,855.00 |
| 32 | Open Trench Drain at Rain Pole | 2,094.00 |
| 36 | Remove & relocated Pre cast Panels per CWC | 906.11 |
| 37/PCO 1677 | Excavate Subgrade at sidewalk area | 77,485.39 |
| 38 | Early High Strength concrete | 496.00 |
| 40/Inv.108 | Add. labor for street restoration on E. 161/Morris | 2,425.58 |
| 41 | 2 Add. Lamp Foundations | 7,690.08 |
| 42 | Extra Wk TCO Walk through | 13,850.00 |
| 43 | Level & Shim Lift Slab | 19,866.31 |
| Inv. 104 | Asphalt on Sherman Ave. | 946.73 |
| Inv. 105 | Clean Up Driveway Area | 517.44 |
| Inv. 106 | Remove & replace broken stone @ bosque | 5,683.62 |
| Inv. 109 | Adjust Catch Basin & manholes @ various times | 1,855.58 |
| Inv. 110 | Obst. Temp. Fence on East 162/East 162 & Morris | 4,887.80 |
| Inv. 111 | Add. labor & equip. concrete rd. base on East 162 | 1,515.59 |
| Inv. 112 | Remove steps S. Side Bosque due to revised el'v. | 1,132.94 |
| CWC PCO 911R | Northside Redesign | 411,000.00 |
| CWC PCO 912 | Remove Contaminated Soil ($152,478.28) | 52,478.28 |
| CWC PCO 3296 | Trash Compactor Trenching | 6,513.96 |
| Flag Pole Credit | | (702.90) |

22.    The sum due of $2,619,478.09 includes $1,644,958 consisting of: escalated project

services -- $29,301; extended use of equipment -- $31,161; extended supervision --

$170,966; extended project administration -- $237,071; labor escalation -- $15,054; material escalation -- $179,301; additional work caused by waterproofing being installed by others out sequence -- $40,000; extended insurance -- $12,285; additional trucking -- $233,398; additional cost for top soil installation -- $59,555; and loss of productivity for concrete -- $362,706 all of which resulted from directives, instructions, actions and omissions to act on the part of CWC vis a vis Plaintiff WAGCA.

23.     In the documents provided by Plaintiff to Defendant American Manufacturers were copies of change orders, extra work tickets, directives and pending change orders signed by authorized representatives of CWC ordered Plaintiff to perform extra work or confirming that Plaintiff had performed extra work.  Specifically, CWC issued allowance and written authorization for WAGCA CO 4 in the sum of $196,544.29; WAGCA CO 15 in the sum of $17,026.28; WAGCA CO 26 in the sum of $33,893.82; WAGCA CO 31 in the sum of $17,855.65; and WAGCA CO 37 in the sum of $77,485.39 for a total due of $342,805.43.

24.     Furthermore, CWC has signed Extra Work orders or other documents admitting liability for: WAGCA CO 22 in the sum of $16,034.05; WAGCA CO 24 in the sum of $13,472.48; WAGCA CO 29 in the sum of $5,537.80; WAGCA CO 32 in the sum of $2,093.55; WAGCA CO 36 in the sum of $906.11; WAGCA CO 41 in the sum of $7,690.08; WAGCA CO 42 in the sum of $13,954.98; WAGCA CO 43 in the sum of $19,866.31; WAGCA Invoice No. 109 in the sum of $1,855.58; WAGCA Invoice No. 111 in the sum of $1,515.59; and CWC No. 919 in the sum of $6,513.96 for a total of $89,440.49

25. Furthermore, CWC signed its "Subs Change Order 009" and "Subs Change Order 012" in favor of WAGCA in the sums of $132,479 and $20,000 respectively.

26. Furthermore, DASNY's representative Bovis Lend Lease signed directives for work also signed by CWC and transmitted to WAGCA by CWC for: WAGCA CO 34 in the sum of $1,130.42; WAGCA CO 38 in the sum of $433.13; WAGCA CO 41 in the sum of $7,690.08; WAGCA CO 42 in the sum of $13,954.98; and WAGCA CO 43 in the sum of $19,866.31.

27. To date and after demand, CWC has not paid any part of the $2,619,478.09 currently due and owing to Plaintiff WAGCA.

28. To date, there have been no complaints of material deficiency or defect in any of the work, labor or materials provided by Plaintiff.

29. At all times relevant hereto, Plaintiff has equitably credited CWC and therefore Defendant American Manufacturers with costs of deleted or incomplete work.

30. On or about August 6, 2007, that being less than 30 days after Plaintiff last performed work at the Project and more than 90 days had passed without payment in full to WAGCA by CWC, and while CWC was still performing work at the Project, Plaintiff provided timely notice of its claim under the Payment Bond and copies of its agreement with CWC and its last requisition numbered 26, to Defendant American Manufactures together with CWC and the Project's owner, DASNY.

31. On or about August 8, 2007 and September 12, 2007 respectively, Defendant American Manufactures and DASNY acknowledged notice of WAGCA claims under the Defendant's Payment Bond.

32.    By letters dated August 28 and September 5, 2007, Plaintiff provided Defendant

American Manufacturers with the documents the latter requested respecting Plaintiff's

claim for the purpose of allowing Defendant to conduct an investigation of Plaintiff's

claim.

33.    To date, Defendant American Manufacturers has not responded to Plaintiff rejecting

Plaintiff's claim or paid Plaintiff all or any part of the outstanding sum due under the

Payment Bond of $2,619,478.09.

34.    To date, Defendant American Manufacturers has not provided any objection to the

evidence of CWC direction for extra work provided by Plaintiff WAGCA.

COUNT 1 PAYMENT BOND ACTION AGAINST DEFENDANT AMERICAN
MANUFACTURERS

35.    In its Labor and Material Payment Bond bearing number 3SE030676, Defendant

American Manufacturers agreed to pay suppliers and material men to the extent not paid

by CWC, including, without limitation, Plaintiff WAGCA., who furnished labor and

material to and where said labor material was incorporated into the Project if notice was

given within 90 days of the supplying the last item of material to the site and 30 days had

passed without payment being made by its principal.

36.    Plaintiff WAGCA has complied with all conditions precedent including, without

limitation, notice and time requirements under the said Payment Bond.

37.    By reason of the foregoing, Defendant American Manufacturers is liable to Plaintiff

WAGCA in the sum of together with attorney fees for this action as provided by the State

Finance Law and interest at the legal rate dating from July 31, 2007.

9

Wherefore the premises considered, Plaintiff William A. Gross Construction Associates, Inc., demands judgment against Defendant American Manufacturers Mutual Insurance Company as follows:

a. As to Count 1, against Defendant damages for breach of the Payment Bond in the sum of $2,619,478.09 together with pre judgment interest dating from July 31, 2007, and attorney fees for this action.;

b. As to Count 1, against Defendant attorney fees pursuant to State Finance Law section 137; and

c. As to all Counts against Defendant, costs, disbursements and interest, together with such other, further or different relief as the Court may deem just.

Dated: New York, NY
      December 10, 2007

                                      ___/s/ Carol A. Sigmond_____
                                        Carol A. Sigmond (CS 2735)
                                        Dunnington, Bartholow & Miller LLP
                                        Attorney for Plaintiff
                                        477 Madison Avenue B 12th Floor
                                        New York, NY  10022
                                        (212) 682-8811

10

# EXHIBIT A

# LABOR AND MATERIAL
## PAYMENT BOND



**DORMITORY AUTHORITY – STATE OF NEW YORK**

## LABOR AND MATERIAL PAYMENT BOND

Bond No. 3SE030676

KNOW ALL MEN BY THESE PRESENTS:

That    CAULDWELL WINGATE COMPANY, LLC

380 Lexington Avenue, 53rd Floor, New York, New York 10168

as Principal, hereinafter called CONTRACTOR, and

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY

(Here insert the legal title of Surety)

Three Connell Drive, Berkeley Heights, New Jersey  07922-0608

(Address)

as Surety, hereinafter called Surety, are held and firmly bound unto the Dormitory Authority - State of New York, 515 Broadway, Albany, New York 12207, as Obligee, hereinafter called OWNER, in the amount of <u>Forty-Six Million Nine Hundred Ninety-Five Thousand and 00/100 Dollars ($46,995,000.00)</u>,

WHEREAS, CONTRACTOR has by written agreement dated <u>December 20, 2002</u> entered into a Contract with OWNER for the <u>General Construction #2 - Fitout Work at Bronx Criminal Court Complex, DA # 92561, 1380909999/CR58</u> in accordance with the Contract Documents and any changes thereto, which are made a part hereof, and are hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the CONTRACTOR shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise such obligation shall remain in full force and effect, subject, however, to the following conditions:

1.    A claimant is defined as one having a direct Contract with the CONTRACTOR or with a Subcontractor of the CONTRACTOR for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

2.    The above named CONTRACTOR and Surety hereby jointly and severally agree with the OWNER that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The OWNER shall not be liable for the payment of any costs or expenses of any such suit.

1

3.    No suit or action shall be commenced hereunder by any claimant:

    a.    Unless claimant, other than one having a direct contract with the CONTRACTOR, shall have given written notice to any two (2) of the following: 1) the CONTRACTOR, 2) the OWNER, or 3) the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the CONTRACTOR, OWNER, or Surety, at any place where an office is regularly maintained by said CONTRACTOR, OWNER, or Surety for the transaction of business, or served in any manner in which legal process may be served in the State in which the aforesaid project is located, save that such service need not be made by a public officer.

    b.    After the expiration of one (1) year following the date on which CONTRACTOR ceased work of said Contract, however, if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

    c.    Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

4.    The penal sum of this Bond is in addition to any other Bond furnished by the CONTRACTOR and in no way shall be impaired or affected by any other Bond.

5.    The amount of this Bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of Mechanics' Liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this Bond.

Signed this _____27th_____ day of _____December_____ 2002.

IN THE PRESENCE OF:

CAULDWELL WINGATE
COMPANY, LLC
(Contractor)

_____
(Signature)

Susan L. Hayes, President
(Title)

380 Lexington Avenue
(Address)

New York, New York  10168
(City, State, Zip)

(212) 983-7150
(Telephone Number)

(212) 983-7275
(Facsimile Number)

AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY
(Surety)

_____
(Signature)

THERESA J. FOLEY, ATTORNEY-IN-FACT
(Title)

Three Connell Drive
(Address)

Berkeley Heights, New Jersey  07922
(City, State, Zip)

(908) 286-5390
(Telephone Number)

(908) 286-5680
(Facsimile Number)

3

ACKNOWLEDGEMENT OF CONTRACTOR, IF A PARTNERSHIP, LIMITED LIABILITY
COMPANY OR INDIVIDUAL

STATE OF NEW YORK )
                          ) ss:
COUNTY OF __N Y_____ )

On the __30th__ day of __December_____ in the year __2002__, before me, the undersigned, a Notary Public in and for said State, personally appeared __Susan C. Hayes_____ of **CAULDWELL WINGATE COMPANY, LLC,** personally known or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

PATRICK J. HARDY
Notary Public, State of New York
No. 31-5052980
Qualified in New York County
Commission Expires Dec. 11, 2005

ACKNOWLEDGEMENT OF SURETY

STATE OF NEW YORK )
                          ) ss:
COUNTY OF __Nassau_____ )

On the __27th__ day of __December_____ in the year 2002 before me personally came _____ __THERESA J. FOLEY_____ to me known, who, being by me duly sworn, did depose and say that (s)he resides at _____Levittown, NY_____ _____, that (s)he is the __Attorney-In-Fact____ _____ of __AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,__ the corporation described in and which executed the above instrument; and that (s)he signed her/his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

GLORIA LOYD
Notary Public, State Of New York
No. 01LO6057748
Qualified In Queens County
Commission Expires April 23, 20 03

4

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, corporations organized and existing under the laws of the State of Illinois, having their principal office in Long Grove, Illinois (hereinafter collectively referred to as the "Company") do hereby appoint
Fred Nicholson , Theresa J. Foley , Fern Perry , George O. Brewster , Gloria Loyd and Nancy Schnee
of JERICHO , NY (EACH)


* * * * * * * * * * * *

their true and lawful agent(s) and Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as their act and deed:

Any and all bonds and undertakings


EXCEPTION: NO AUTHORITY is granted to make, execute, seal and deliver any bond or undertaking which guarantees the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

This appointment may be revoked at any time by the Company.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal office in Long Grove, Illinois.

This Power of Attorney is executed by authority of resolutions adopted by the Executive Committees of the Boards of Directors of the Company on February 23, 1988 at Chicago, Illinois, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the Executive Committee of the Boards of Directors of the Company at a meeting duly called and held on the 23rd day of February, 1988:

"VOTED, That the signature of the Chairman of the Board, the President, any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to resolution adopted by the Executive Committee of the Board of Directors on February 23, 1988 and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company."


FK 09 75 (Ed. 09 01)                    **Page 1 of 2**                    Printed in U.S.A.

In Testimony Whereof, the Company has caused this instrument to be signed and their corporate seals to be affixed by their authorized officers, this November 22, 2002.

Attested and Certified:

Lumbermens Mutual Casualty Company
American Motorists Insurance Company
American Manufacturers Mutual Insurance Company

 

John K. Conway, Corporate Secretary

*Gary J. Tully*

Gary J. Tully, Senior Vice President

STATE OF ILLINOIS      SS

COUNTY OF LAKE      SS

I, Maria I. Omori, a Notary Public, do hereby certify that Gary J. Tully and John K. Conway personally known to me to be the same persons whose names are respectively as Senior Vice President and Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, Corporations organized and existing under the laws of the State of Illinois, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seals and delivered the said instrument as the free and voluntary act of said corporations and as their own free and voluntary acts for the uses and purposes therein set forth.

"OFFICIAL SEAL"
MARIA I. OMORI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2003

*Maria I. Omori*

Maria I. Omori, Notary Public
My commission expires 9-17-03

CERTIFICATION

I, J. K. Conway, Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, do hereby certify that the attached Power of Attorney dated November 22, 2002 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Gary J. Tully, who executed the Power of Attorney as Senior Vice President, was on the date of execution of the attached Power of Attorney the duly elected Senior Vice President of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company on this ___27th___ day of ___December___, 20 _02_.

  

John K. Conway, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office:  Long Grove, IL  60049

**FK 09 75 (Ed. 09 01)**          **Page 2 of 2**          **Printed in U.S.A.**

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
FINANCIAL STATEMENT
DECEMBER 31, 2001

Assets

| | |
|---|---|
| Cash in banks | $ 21,687,239 |
| Bonds owned | 496,844,017 |
| Stocks | 3,045,074 |
| Premiums in course of collection | 140,743,624 |
| Accrued interest and other assets | 74,951,749 |
| Total | $737,271,703 |

Liabilities

| | |
|---|---|
| Reserve for losses and adjusting expenses | $329,394,911 |
| Reserve for unearned premiums | 100,522,301 |
| Reserve for taxes, expenses and other liabilities | 69,370,582 |
| Total | $499,287,794 |
| Surplus as regards policyholders | 237,983,909 |
| Total | $737,271,703 |

By _____    Attest _____
    Vice President of Accounting Services              Secretary

State of Illinois)
                 ) SS
County of Lake)

R. A. Daniel and J. K. Conway, being duly sworn, say that they are Vice President of Accounting Services and Secretary, respectively, of AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Illinois; that the foregoing is a true and correct statement of the financial condition of said company, as of December 31, 2001.

Subscribed and sworn to before me

On this 28th day of February, 2002

_____
Notary Public

"OFFICIAL SEAL"
ANGELA HANSEN
Notary Public, State of Illinois
My Commission Expires 2/18/04

# PERFORMANCE BOND



## DORMITORY AUTHORITY – STATE OF NEW YORK

Bond No. 3SE030676

## PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

That    CAULDWELL WINGATE COMPANY, LLC

_____380 Lexington Avenue, 53rd Floor, New York, New York 10168_____

as Principal, hereinafter called CONTRACTOR, and

_____AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY_____
(Here insert the legal title of Surety)

Three Connell Drive, Berkeley Heights, New Jersey    07922
(Address)

as Surety, hereinafter called Surety, are held and firmly bound unto the Dormitory Authority - State of New York, 515 Broadway, Albany, New York 12207, as Obligee, hereinafter called OWNER, in the amount of Forty-Six Million Nine Hundred Ninety-Five Thousand    and 00/100 Dollars ($46,995,000.00) for the payment whereof CONTRACTOR and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, CONTRACTOR has by written agreement dated December 20, 2002 entered into a Contract with OWNER for the General Construction #2 - Fitout Work at Bronx Criminal Court Complex, DA # 92561, 1380909999/CR58 in accordance with the Contract Documents and any changes thereto, which are made a part hereof, and are hereinafter referred to as the Contract.

1.  If the CONTRACTOR performs the Contract, the Surety and the CONTRACTOR shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 2.1.

1

2.    If there is no OWNER default, the Surety's obligation under this Bond shall arise after:

    2.1    The OWNER has notified the CONTRACTOR, the Surety at its address described in Paragraph 8. below that the OWNER is considering declaring a CONTRACTOR in default.

    2.2    The OWNER has declared a CONTRACTOR in default and formally terminated the CONTRACTOR's right to complete the Contract.

    2.3    The OWNER has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Contract or to a CONTRACTOR selected to perform the Contract in accordance with the terms of the Contract with the OWNER.

3.    When the OWNER has satisfied the conditions of Paragraph 2., the Surety shall, at the OWNER's option, promptly and at the Surety's expense take on the following actions:

    3.1    Arrange for the CONTRACTOR, with consent of the OWNER, to perform and complete the Contract; or

    3.2    Undertake to perform and complete the Contract itself, through its agents or through independent contractors; or

    3.3    Obtain bids or negotiated proposals from qualified contractors acceptable to the OWNER for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the OWNER and the CONTRACTOR selected with the OWNER's concurrence, to be secured with performance and payment bonds executed by a qualified Surety equivalent to the bonds issued on the Contract, and pay to the OWNER the amount of damages as described in Paragraph 5. in excess of the Balance of the Contract Price incurred by the OWNER resulting from the CONTRACTOR default.

4.    If the Surety does not proceed with reasonable promptness, the Surety shall be deemed to be in default on this Bond, and the OWNER shall be entitled to enforce any remedy available to the OWNER.

5.    After the OWNER has terminated the CONTRACTOR's right to complete the Contract, and if the Surety elects to act under Subparagraph 3.1, 3.2, or 3.3 above, then the responsibilities of the Surety to the OWNER shall not be greater than those of the CONTRACTOR under the Contract, and the responsibilities of the OWNER to the Surety shall not be greater than those of the OWNER under the Contract. To the limit of the amount of this Bond, but subject to commitment by the OWNER of the Balance of the Contract Price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

5.1     The responsibilities of the CONTRACTOR for correction of defective work and completion of the Contract;

5.2     Additional legal, design, professional, and delay costs resulting from the CONTRACTOR's Default, and resulting from the actions or failure to act of the Surety under Paragraph 3.; and

5.3     Liquidated Damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or non-performance of the CONTRACTOR.

6.     The Surety shall not be liable to the OWNER or others for obligations of the CONTRACTOR that are unrelated to the Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the OWNER or its heirs, executors, administrators or successors.

7.     The Surety hereby waives notice of any change, including changes of time, to the Contract or to related subcontracts, purchase orders, and other obligations.

8.     Notice of the Surety and the CONTRACTOR shall be mailed or delivered to the address shown on the signature page. Notice to the OWNER shall be mailed or delivered to the address shown in the preamble.

9.     Definitions:

9.1     Balance of the Contract Price: The total amount payable by the OWNER to the CONTRACTOR under the Contract after all proper adjustments have been made, including allowance to the CONTRACTOR of any amounts received or to be received by the OWNER in settlement of insurance or other claims for damages to which the CONTRACTOR is entitled, reduced by all valid and proper payments made to or on behalf of the CONTRACTOR under the Contract.

9.2     Contract: The agreement between the OWNER and the CONTRACTOR identified on the signature page, including all Contract Documents and changes thereto.

9.3     CONTRACTOR Default: Failure of the CONTRACTOR, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

9.4     OWNER Default: Failure of the OWNER, which has neither been remedied nor waived, to pay the CONTRACTOR as required by the Contract or to perform and complete or comply with the other terms thereof.

The penal sum of this Bond is in addition to any other Bond furnished by the CONTRACTOR and in no way shall be impaired or affected by any other Bond.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which Final Payment is made under this Contract.

Signed as of this _____27th___ day of __December_____ 2002.


IN THE PRESENCE OF:


CAULDWELL WINGATE
COMPANY, LLC
(Contractor)

_____
(Signature)

Susan L. Hayes, President
(Title)

380 Lexington Avenue
(Address)

New York, New York 10168
(City, State, Zip)

(212) 983-7150
(Telephone Number)

(212) 983-7275
(Facsimile Number)


AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY
(Surety)

_____
(Signature)

THERESA J. FOLEY, ATTORNEY-IN-FACT
(Title)

Three Connell Drive
(Address)

Berkeley Heights, New Jersey 07922
(City, State, Zip)

(908) 286-5390
(Telephone Number)

(908) 286-5680
(Facsimile Number)

**ACKNOWLEDGEMENT OF CONTRACTOR, IF A PARTNERSHIP, LIMITED LIABILITY COMPANY OR INDIVIDUAL**

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF __NY__           )

On the __30th__ day of __December__ in the year _2002_, before me, the undersigned, a Notary Public in and for said State, personally appeared __Susan L. Hayes__ of **CAULDWELL WINGATE COMPANY, LLC**, personally known or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

PATRICK J. HARDY
Notary Public, State of New York
No. 31-5052980
Qualified in New York County
Commission Expires Dec. 11, 2005

**ACKNOWLEDGEMENT OF SURETY**

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF __Nassau__       )

On the __27th__ day of __December__ in the year 2002 before me personally came THERESA J. FOLEY _____ to me known, who, being by me duly sworn, did depose and say that (s)he resides at __Levittown, NY__ _____, that (s)he is the __Attorney-In-Fact__ of AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, the corporation described in and which executed the above instrument; and that (s)he signed her/his name thereto by order of the Board of Directors of said corporation.

_____
Notary Public

GLORIA LOYD
Notary Public, State Of New York
No. 01LO6057748
Qualified In Queens County
Commission Expires April 23, 20 03

5

# POWER OF ATTORNEY

**Know All Men By These Presents:**

That the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, corporations organized and existing under the laws of the State of Illinois, having their principal office in Long Grove, Illinois (hereinafter collectively referred to as the "Company") do hereby appoint
Fred Nicholson , Theresa J. Folley , Fern Perry , George O. Brewster , Gloria Loyd and Nancy Schnee
of JERICHO , NY (EACH)

* * * * * * * * * * * *

their true and lawful agent(s) and Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as their act and deed:

Any and all bonds and undertakings

EXCEPTION:  NO AUTHORITY is granted to make, execute, seal and deliver any bond or undertaking which guarantees the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

This appointment may be revoked at any time by the Company.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal office in Long Grove, Illinois.

This Power of Attorney is executed by authority of resolutions adopted by the Executive Committees of the Boards of Directors of the Company  on February 23, 1988 at Chicago, Illinois, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the Executive Committee of the Boards of Directors of the Company at a meeting duly called and held on the 23rd day of February, 1988:

"VOTED, That the signature of the Chairman of the Board, the President, any Vice President, or their appointees designated in writing with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to resolution adopted by the Executive Committee of the Board of Directors on February 23, 1988 and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company."

FK 09 75 (Ed. 09 01)                **Page 1 of 2**                Printed in U.S.A.

In Testimony Whereof, the Company has caused this instrument to be signed and their corporate seals to be affixed by their authorized officers, this November 22, 2002.

Attested and Certified:

Lumbermens Mutual Casualty Company
American Motorists Insurance Company
American Manufacturers Mutual Insurance Company

  

John K. Conway, Corporate Secretary

Gary J. Tully, Senior Vice President

STATE OF ILLINOIS        SS

COUNTY OF LAKE          SS

I, Maria I. Omori, a Notary Public, do hereby certify that Gary J. Tully and John K. Conway personally known to me to be the same persons whose names are respectively as Senior Vice President and Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, Corporations organized and existing under the laws of the State of Illinois, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seals and delivered the said instrument as the free and voluntary act of said corporations and as their own free and voluntary acts for the uses and purposes therein set forth.

"OFFICIAL SEAL"
MARIA I. OMORI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2003

Maria I. Omori, Notary Public
My commission expires 9-17-03

CERTIFICATION

I, J. K. Conway, Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, do hereby certify that the attached Power of Attorney dated November 22, 2002 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Gary J. Tully, who executed the Power of Attorney as Senior Vice President, was on the date of execution of the attached Power of Attorney the duly elected Senior Vice President of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company on this _____27th_____ day of _____December_____, 20 __02__

  

John K. Conway, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Long Grove, IL 60049

FK 09 75 (Ed. 09 01)            Page 2 of 2            Printed in U.S.A.

# AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY
## FINANCIAL STATEMENT
### DECEMBER 31, 2001

Assets

| | |
|---|---|
| Cash in banks | $ 21,687,239 |
| Bonds owned | 496,844,017 |
| Stocks | 3,045,074 |
| Premiums in course of collection | 140,743,624 |
| Accrued interest and other assets | 74,951,749 |
| Total | $737,271,703 |

Liabilities

| | |
|---|---|
| Reserve for losses and adjusting expenses | $329,394,911 |
| Reserve for unearned premiums | 100,522,301 |
| Reserve for taxes, expenses and other liabilities | 69,370,582 |
| Total | $499,287,794 |
| Surplus as regards policyholders | 237,983,909 |
| Total | $737,271,703 |

By _____    Attest _____
Vice President of Accounting Services                Secretary

State of Illinois)
            ) SS
County of Lake)

R. A. Daniel and J. K. Conway, being duly sworn, say that they are Vice President of Accounting Services and Secretary, respectively, of AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Illinois; that the foregoing is a true and correct statement of the financial condition of said company, as of December 31, 2001.

Subscribed and sworn to before me

On this 28th day of February, 2002

_____
Notary Public

"OFFICIAL SEAL"
ANGELA HANSEN
Notary Public, State of Illinois
My Commission Expires 2/18/04

# EXHIBIT B





| **Run-Off Contact Information** | List of Companies | Policy Cancellations | File A Claim |

**File A Claim**

# File A Claim

As an organization in run off, the Kemper Insurance Companies substantially ceased issuing new policies in the spring of 2003. Policyholder claims are being handled under the terms of the existing policies. Most of Kemper's claim handling has been outsourced to unaffiliated third-party administrators.

**Claims on policies issued by Specialty National Insurance Company or Specialty Surplus Insurance Company**

Specialty National and Specialty Surplus were part of Kemper's "Kempes" unit formerly based in Scottsdale, Arizona. If you have a claim on any policies underwritten by Specialty National or Specialty Surplus, please contact Network Adjusters at 1-877-533-1211.

**Claims on policies issued by Eagle Pacific Insurance Company or Pacific Eagle Insurance Company**

If you have a claim on any policies originally underwritten by Eagle Pacific Insurance Company or Pacific Eagle Insurance Company, please contact SeaBright Insurance Company at 1-800-372-2255.

**Workers' compensation, commercial auto and premises and products liability claims**

Most workers' compensation, commercial auto and premises and products liability claims (standard forms) are being handled by Broadspire Services, Inc. Questions about medical bill review and medical case management should also be addressed to Broadspire. Broadspire's staff includes many of the same people who had been part of Kemper's former claims handling operation which was sold to Broadspire's parent, Platinum Equity, in July 2003. If you have a workers' compensation, commercial auto or premises and products liability claim (other than on policies issued by the Specialty or Eagle operations noted above), please contact Broadspire at:

Phone: 1-800-753-6737
Fax: 1-800-245-9927
Email: nol@choosebroadspire.com
Website: www.choosebroadspire.com

To expedite the process, please complete your claim form (link to WC and auto forms) and fax or email it to Broadspire.

**Commercial property and specialty liability claims**

Please contact Kemper's customer relations unit for commercial property claims on Kemper policies (other than those issued by the Specialty or Eagle operations noted above), as well as specialty liability claims, including:
- Environmental
- Directors and officers

- Professional liability
- Excess casualty
- Construction defect
- Malpractice
- Intellectual property
- Other non-standard liability

Phone: 1-847-320-3237 or 1-800-833-0355
Fax: 1-847-320-2228
Email: corprel@kemperinsurance.com
Website: www.kemperinsurance.com

**Personal lines claims**

Kemper sold its personal lines business to Unitrin, Inc in 2002. Whether your Kemper Auto and Home policy was issued by a Kemper company or Unitrin, please contact Unitrin representatives at:

Phone: 1-888-252-2799
Website: www.kemperautoandhome.com

---

© 2007 - Lumbermens Mutual Casualty Co | Terms and Conditions of Use | Privacy Policy | Internet Privacy Policy
Kemperinsurance.com is best viewed   using Internet Explorer version 5.0 or higher or Netscape version 6.0 or higher.





- ▶ Policy Cancellations
- ▶ File A Claim
- ▶ List of Companies
- ▶ Run-off Contacts
- ▶ Media Contacts
- ▶ Financial Information
- ▶ Job Opportunities

**List of Companies**

As of January 1, 2007, Kemper Insurance Companies in the U.S. included Lumbermens Mutual Casualty Company and its affiliated property and casualty insurers:

- American Manufacturers Mutual Insurance Company
- American Motorists Insurance Company
- Kemper Casualty Insurance Company
- Kemper Lloyds Insurance Company
- Specialty Surplus Insurance Company

---

© 2007 - Lumbermens Mutual Casualty Co | Terms and Conditions of Use | Privacy Policy | Internet Privacy Policy
Kemperinsurance.com is best viewed  using Internet Explorer version 5.0 or higher or Netscape version 6.0 or higher.