UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
––––––––––––––––––––––––––––––––––––––––––––x

WILLIAM A. GROSS CONSTRUCTION
ASSOCIATES, INC.,                                                     07-CV-10639 (LAK)(AJP)

                                        Plaintiff,

                                                                              **ANSWER TO FOURTH-
                                                                              PARTY COMPLAINT
                                                                              AND COUNTERCLAIMS**

        - against -

AMERICAN MANUFACTURER'S MUTUAL
INSURANCE COMPANY,
                                        Defendant.
––––––––––––––––––––––––––––––––––––––––––––x
AMERICAN MANUFACTURER'S MUTUAL
INSURANCE COMPANY,

                                Third-Party Plaintiff,

                – against –

CAULDWELL WINGATE COMPANY, LLC,

                                Third-Party Defendant.
––––––––––––––––––––––––––––––––––––––––––––x
CAULDWELL WINGATE COMPANY, LLC,

                                Fourth-Party Plaintiff,

                – against –

DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,

                                Fourth-Party Defendant.
––––––––––––––––––––––––––––––––––––––––––––x

        Fourth-Party Defendant, the DORMITORY AUTHORITY OF THE STATE OF NEW

YORK (hereinafter "DASNY"), by its attorney, MICHAEL A. CARDOZO, Corporation

Counsel of the City of New York,  hereby Answers the Fourth-Party Complaint, as follows:

## AS AND FOR DASNY'S RESPONSE TO THE
## ALLEGATIONS CONCERNING JURISDICTION

1.      Denies the allegations set forth in paragraph "1" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE
## ALLEGATIONS CONCERNING THE PARTIES

2.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "2" of the Fourth-Party Complaint.

3.      Denies the allegations set forth in paragraph "3" of the Fourth-Party Complaint, except admits that DASNY is a public benefit corporation organized and existing under the Public Authorities Law of the State of New York.

## AS AND FOR DASNY'S RESPONSE TO THE
## ALLEGATIONS SUMMARIZING THE CASE

4.      Denies knowledge or information sufficient to for a belief as to the truth of the allegations set forth in paragraph "4" of the Fourth-Party Complaint, except admits that DASNY awarded a contract to Cauldwell Wingate and that contract was one of seventeen individual prime contracts awarded by DASNY for the construction of the new Bronx County Criminal Court Complex.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "5" of the Fourth-Party Complaint.

6.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "6" of the Fourth-Party Complaint.

7.      Denies the allegations set forth in paragraph "7" of the Fourth-Party Complaint.

8.      Denies the allegations set forth in paragraph "8" of the Fourth-Party Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "9" of the Fourth-Party Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "10" of the Fourth-Party Complaint.

11.     Denies the allegations set forth in paragraph "11" of the Fourth-Party Complaint.

12.     Denies the allegations set forth in paragraph "12" of the Fourth-Party Complaint.

13.     Denies the allegations set forth in paragraph "13" of the Fourth-Party Complaint.

14.     Denies the allegations set forth in paragraph "14" of the Fourth-Party Complaint.

15.     Denies the allegations set forth in paragraph "15" of the Fourth-Party Complaint.

16.     Denies the allegations set forth in paragraph "16" of the Fourth-Party Complaint.

17.     Denies the allegations set forth in paragraph "17" of the Fourth-Party Complaint.

18.     Denies the allegations set forth in paragraph "18" of the Fourth-Party Complaint.

19.    Denies the allegations set forth in paragraph "19" of the Fourth-Party Complaint.

20.    Denies the allegations set forth in paragraph "20" of the Fourth-Party Complaint.

21.    Denies the allegations set forth in paragraph "21" of the Fourth-Party Complaint.

22.    Denies the allegations set forth in paragraph "22" of the Fourth-Party Complaint.

23.    Denies the allegations set forth in paragraph "23" of the Fourth-Party Complaint.

24.    Denies the allegations set forth in paragraph "24" of the Fourth-Party Complaint, except denies knowledge or information sufficient to for a belief as to the allegation that Gross's claim constitutes part of the damages sought by Cauldwell Wingate against DASNY.

25.    Denies the allegations set forth in paragraph "25" of the Fourth-Party Complaint, except admits that Bovis Lend Lease was the initial construction manager and that Hill International was hired by DASNY to replace Bovis.

## AS AND FOR DASNY'S RESPONSE TO THE
## ALLEGATIONS CONCERNING THE BACKGROUND

26.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "26" of the Fourth-Party Complaint, except admits that Cauldwell Wingate and DASNY entered into a contract on December 20, 2002 and respectfully refers the Court to the documents annexed to the Fourth-Party Complaint as Exhibits A and B thereto for a full and complete statement of their contents.

27.     Admits the allegations set forth in paragraph "27" of the Fourth-Party Complaint.

28.     Admits the allegations contained in paragraph "28" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE ALLEGATIONS CONCERNING DELAYS ENCOUNTERED BY CAULDWELL WINGATE

29.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph "29" of the Fourth-Party Complaint.

30.     Denies the allegations set forth in paragraph "30" of the Fourth-Party Complaint.

31.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph "31" of the Fourth-Party Complaint.

32.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "32" of the Fourth-Party Complaint.

33.     Denies the allegations set forth in paragraph "33" of the Fourth-Party Complaint, except admits that the various floor finishes were within Cauldwell-Wingate's scope of work.

34.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "34" of the Fourth-Party Complaint.

35.     Denies the allegations set forth in paragraph "35" of the Fourth-Party Complaint, except admits that the work required under the contract between the parties was completed after the original scheduled completion date.

36.     Denies knowledge or information sufficient to for a belief as to the truth of the allegations set forth in paragraph "36" of the Fourth-Party Complaint.

37.    Denies the allegations set forth in paragraph "37" of the Fourth-Party Complaint, except admits that the MEPS coordination phase started in 2002.

38.    Denies the allegations set forth in paragraph "38" of the Fourth-Party Complaint, except admits that DASNY required Cauldwell Wingate to repair and replace ceiling tiles.

39.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "39" of the Fourth-Party Complaint.

40.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "40" of the Fourth-Party Complaint.

41.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "41" of the Fourth-Party Complaint, except denies that DASNY failed to provide coordinated drawings.

42.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "42" of the Fourth-Party Complaint.

43.    Denies the allegations set forth in paragraph "43" of the Fourth-Party Complaint.

44.    Denies the allegations set forth in paragraph "44" of the Fourth-Party Complaint.

45.    Denies the allegations set forth in paragraph "45" of the Fourth-Party Complaint.

46.    Denies the allegations set forth in paragraph "46" of the Fourth-Party Complaint, except denies knowledge or information sufficient to form a belief as to the truth of

the allegation that Cauldwell Wingate expected a complete, coordinated and constructible set of contract documents.

## AS AND FOR DASNY'S RESPONSE TO THE
## ALLEGATIONS THAT DASNY REFUSED TO PAY FOR EXTRA WORK

47.     Denies the allegations set forth in paragraph "47" of the Fourth-Party Complaint.

48.     Denies the allegations set forth in paragraph "48" of the Fourth-Party Complaint.

49.     Denies the allegations set forth in paragraph "49" of the Fourth-Party Complaint.

50.     Denies the allegations set forth in paragraph "50" of the Fourth-Party Complaint.

51.     Denies the allegations set forth in paragraph "51" of the Fourth-Party Complaint.

52.     Denies the allegations set forth in paragraph "52" of the Fourth-Party Complaint

53.     Denies the allegations set forth in paragraph "53" of the Fourth-Party Complaint.

54.     Denies the allegations set forth in paragraph "54" of the Fourth-Party Complaint.

55.     Denies the allegations set forth in paragraph "55" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE ALLEGATIONS
## THAT DASNY REFUSED TO PAY RETAINAGE AND THE CONTRACT BALANCE

56.     Denies the allegations set forth in paragraph "56" of the Fourth-Party Complaint.

57.     Admits the allegations set forth in paragraph "57" of the Fourth-Party Complaint, except denies that '[o]nce Cauldwell Wingate had substantially completed its work, DASNY was required to reduce the retainage amount, less two times the value of the work remaining to be done."

58.     Denies the allegations set forth in paragraph "58" of the Fourth-Party Complaint, except admits that DASNY assessed Cauldwell Wingate for backcharges.

59.     Denies the allegations set forth in paragraph "59" of the Fourth-Party Complaint.

60.     Denies the allegations set forth in paragraph "60" of the Fourth-Party Complaint.

61.     Denies the allegations set forth in paragraph "61" of the Fourth-Party Complaint.

62.     Denies the allegations set forth in paragraph "62" of the Fourth-Party Complaint, except admits that DASNY levied a back charge against Cauldwell Wingate.

63.     Denies the allegations set forth in paragraph "63" of the Fourth-Party Complaint.

64.     Denies the allegations set forth in paragraph "64" of the Fourth-Party Complaint.

65.     Denies the allegations set forth in paragraph "65" of the Fourth-Party Complaint, except admits that DASNY presented Cauldwell Wingate with a punch list.

66.     Denies the allegations set forth in paragraph "66" of the Fourth-Party Complaint.

67.     Denies the allegations set forth in paragraph "67" of the Fourth-Party Complaint.

68.     Denies the allegations set forth in paragraph "68" of the Fourth-Party Complaint.

69.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "69" of the Fourth-Party Complaint.

70.     Denies the allegations set forth in paragraph "70" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO ALLEGATIONS CONCERNING ALLEGED PROBLEMS ENCOUNTERED BY CAULDWELL WINGATE'S SUBCONTRACTORS

### *Drywall And Ceiling Work*

71.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "71" of the Fourth-Party Complaint, except admits that Cauldwell Wingate subcontracted with Component Assembly Systems ("CAS").

72.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "72" of the Fourth-Party Complaint.

73.     Denies the allegations set forth in paragraph "73" of the Fourth-Party Complaint.

74.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "74" of the Fourth-Party Complaint, except denies that there was poor work coordination by DASNY.

*__Architectural Metal And Glass Work__*

75.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "75" of the Fourth-Party Complaint.

76.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "76" of the Fourth-Party Complaint, except admits that Fourth-Party Plaintiff's subcontractor for the architectural metal and glass work was UAD Group ("UAD").

77.     Denies the allegations set forth in paragraph "77" of the Fourth-Party Complaint.

78.     Denies the allegations set forth in paragraph "78" of the Fourth-Party Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Cauldwell Wingate generated almost 200 RFIs on behalf of UAD."

79.     Denies the allegations set forth in paragraph "79" of the Fourth-Party Complaint, except admits that work on the project extended to over 36 months.

80.     Denies the allegations set forth on paragraph "80" of the Fourth Party Complaint, except admits that UAD delivered glass panels to the work site.

81.     Denies the allegations set forth in paragraph "81" of the Fourth-Party Complaint, except admits that the completion date of the project was revised to November 30, 2005.

82.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "82" of the Fourth-Party Complaint.

83.     Denies the allegations set forth in paragraph "83" of the Fourth-Party Complaint.

84.    Denies the allegations set forth in paragraph "84" of the Fourth-Party Complaint.

85.    Denies the allegations set forth in paragraph "85" of the Fourth-Party Complaint, except admits that DASNY raised concerns that the five-inch steel plate used to construct the primary connection assemblies was improperly certified, that the weld connecting the five-inch plates was cracking and unacceptable and that DASNY decided to remove the canopy and to back charge Cauldwell Wingate for that work.

86.    Denies the allegations set forth in paragraph "86" of the Fourth-Party Complaint.

87.    Denies the allegations set forth in paragraph "87" of the Fourth-Party Complaint.

88.    Denies the allegations set forth in paragraph "88" of the Fourth-Party Complaint, except admits that DASNY complained that the welds used to attach the upper Canopy supports did not conform to shop drawings.

89.    Denies the allegations set forth in paragraph "89" of the Fourth-Party Complaint, except admits that DASNY inspected the Canopy in or about April 2007 and concluded that a controlled load test was required.

### *Site Work/Landscaping*

90.    Admits the allegations set forth in paragraph "90" of the Fourth-Party Complaint.

91.    Denies the allegations set forth in paragraph "91" of the Fourth-Party Complaint, except admits that the original schedule called for Gross's work to be completed by June 30, 2005.

92.    Denies the allegations set forth in paragraph "92" of the Fourth-Party Complaint.

93.    Denies the allegations set forth in paragraph "93" of the Fourth-Party Complaint.

94.    Denies the allegations set forth in paragraph "94" of the Fourth-Party Complaint.

95.    Admits the allegations set forth in paragraph "95" of the Fourth-Party Complaint.

96.    Denies the allegations set forth in paragraph "96" of the Fourth-Party Complaint, except admits that DASNY was entitled to a credit.

97.    Denies the allegations set forth in paragraph "97" of the Fourth-Party Complaint.

98.    Denies the allegations set forth in paragraph "98" of the Fourth-Party Complaint.

99.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "99" of the Fourth-Party Complaint.

100.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "100" of the Fourth-Party Complaint.

101.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "101" of the Fourth-Party Complaint.

### *Masonry Work*

102.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "102" of the Fourth-Party Complaint, except admits that Cauldwell Wingate engaged Commodore Construction for masonry work.

103.    Denies the allegations set forth in paragraph "103" of the Fourth-Party Complaint.

### *Tile and Marble*

104.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "104" of the Fourth-Party Complaint, except admits that Cauldwell Wingate engaged Port Morris Tile & Marble Corp. for tile and stone work.

105.    Denies the allegations set forth in paragraph "105" of the Fourth-Party Complaint.

### *Hollow Metal and Hardware Work*

106.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "106" of the Fourth-Party Complaint, except admits that Cauldwell Wingate subcontracted with Long Island Fire Proof Door for general hollow metal and hardware work.

107.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "107" of the Fourth-Party Complaint.

108.    Denies the allegations set forth in paragraph "108" of the Fourth-Party Complaint.

109.    Admits the allegations set forth in paragraph "109" of the Fourth-Party Complaint.

110.    Denies the allegations set forth in paragraph "110" of the Fourth-Party Complaint.

111.    Denies the allegations set forth in paragraph "111" of the Fourth-Party Complaint.

***Finish Painting***

112.    Admits the allegations set forth in paragraph "112" of the Fourth-Party Complaint.

113.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "113" of the Fourth-Party Complaint.

114.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "114" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO CAULDWELL WINGATE'S CLAIM FOR AN EQUITABLE ADJUSTMENT

115.    Denies the allegations set forth in paragraph "115" of the Fourth-Party Complaint, except admits that Cauldwell Wingate submitted the Adjustment Claim to DASNY.

116.    Admits the allegations set forth in paragraph "116" of the Fourth-Party Complaint.

117.    Denies the allegations set forth in paragraph "117" of the Fourth-Party Complaint.

118.    Denies the allegations set forth in paragraph "118" of the Fourth-Party Complaint.

119.    Denies the allegations set forth in paragraph "119" of the Fourth-Party Complaint.

120.    Denies the allegations set forth in paragraph "120" of the Fourth-Party Complaint, except admits that DASNY's experts tested the panels.

121.    Denies the allegations set forth in paragraph "121" of the Fourth-Party Complaint.

122.    Denies the allegations set forth in paragraph "122" of the Fourth-Party Complaint.

### AS AND FOR DASNY'S RESPONSE TO THE FIRST CLAIM
### (Breach Of Contract – Unpaid Balance)

123.    DASNY repeats and realleges the above responses the allegations set forth in paragraphs "1" through "122" of the Fourth-Party Complaint with the same force and effect as though fully set forth at length herein.

124.    Denies the allegations set forth in paragraph "124" of the Fourth-Party Complaint.

125.    Denies the allegations set forth in paragraph "125" of the Fourth-Party Complaint.

126.    Denies the allegations set forth in paragraph "126" of the Fourth-Party Complaint, except admits that DASNY has paid Cauldwell Wingate approximately $48.6 million.

127.    Denies the allegations set forth in paragraph "127" of the Fourth-Party Complaint.

128.    Denies the allegations set forth in paragraph "128" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE SECOND CLAIM
### (Breach Of Contract – Extra Work Performed)

129.    DASNY repeats and realleges the above responses the allegations set forth in paragraphs "1" through "128" of the Fourth-Party Complaint with the same force and effect as though fully set forth at length herein.

130.    The allegations set forth in paragraph "130" of the Fourth-Party Complaint constitute a legal conclusion and thus require no response.  However, to the extent that a response is deemed to be required, DASNY denies the allegations.

131.    Denies the allegations set forth in paragraph "131" of the Fourth-Party Complaint.

132.    Denies the allegations set forth in paragraph "132" of the Fourth-Party Complaint, except admits that Cauldwell Wingate submitted written change orders.

133.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "133" of the Fourth-Party Complaint.

134.    Denies the allegations set forth in paragraph "134" of the Fourth-Party Complaint.

135.    Denies the allegations set forth in paragraph "135" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE THIRD CLAIM
### (Impact/Delay)

136.    DASNY repeats and realleges the above responses the allegations set forth in paragraphs "1" through "135" of the Fourth-Party Complaint with the same force and effect as though fully set forth at length herein.

137.    Denies the allegations set forth in paragraph "137" of the Fourth-Party Complaint.

138.    Denies the allegations set forth in paragraph "138" of the Fourth-Party Complaint.

139.    Denies the allegations set forth in paragraph "139" of the Fourth-Party Complaint.

140.    Denies the allegations set forth in paragraph "140" of the Fourth-Party Complaint.

141.    Denies the allegations set forth in paragraph "141" of the Fourth-Party Complaint.

142.    Denies the allegations set forth in paragraph "142" of the Fourth-Party Complaint.

143.    Denies the allegations set forth in paragraph "143" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE FOURTH CLAIM
### (Constructive Acceleration)

144.    DASNY repeats and realleges the above responses the allegations set forth in paragraphs "1" through "143" of the Fourth-Party Complaint with the same force and effect as though fully set forth at length herein.

145.    Denies the allegations set forth in paragraph "145" of the Fourth-Party Complaint.

146.    Denies the allegations set forth in paragraph "146" of the Fourth-Party Complaint.

147.    Denies the allegations set forth in paragraph "147" of the Fourth-Party Complaint.

148.     Denies the allegations set forth in paragraph "148" of the Fourth-Party Complaint.

149.     Denies the allegations set forth in paragraph "149" of the Fourth-Party Complaint.

150.     Denies the allegations set forth in paragraph "150" of the Fourth-Party Complaint.

## AS AND FOR DASNY'S RESPONSE TO THE FIFTH CLAIM
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

151.     DASNY repeats and realleges the above responses the allegations set forth in paragraphs "1" through "150" of the Fourth-Party Complaint with the same force and effect as though fully set forth at length herein.

152.     Denies the allegations set forth in paragraph "152" of the Fourth-Party Complaint.

153.     Denies the allegations set forth in paragraph "153" of the Fourth-Party Complaint.

154.     Denies the allegations set forth in paragraph "154" of the Fourth-Party Complaint.

155.     Denies the allegations set forth in paragraph "155" of the Fourth-Party Complaint.

## AS AND FOR A FIRST DEFENSE

156.     The Fourth-Party Complaint fails to state a cause of action upon which relief can be granted.

## AS AND FOR A SECOND DEFENSE

157.    Pursuant to 28 U.S.C. § 1367, this Court lacks jurisdiction under over the claims asserted in the Fourth-Party Complaint.

## AS AND FOR A THIRD DEFENSE

158.    Cauldwell Wingate, for valuable consideration received and accepted, executed and delivered to DASNY a written release which released DASNY from any and all liability for the claims asserted in the Fourth-Party Complaint, except as to retainage.

159.    As a result, each of Cauldwell-Wingate's claims herein, except for retainage, is barred by release.

## AS AND FOR A FOURTH DEFENSE

160.    Cauldwell Wingate has been paid and has accepted all monies due and owing for the work it performed.

## AS AND FOR A FIFTH DEFENSE

161.    Cauldwell Wingate has waived some or all of its claims under the Cauldwell Wingate Contract.

## AS AND FOR A SIXTH DEFENSE

162.    Cauldwell Wingate has failed to mitigate any damages it may have suffered as a result of any of the actions it attributes to others as described in the Fourth-Party Complaint.

## AS AND FOR A SEVENTH DEFENSE

163.    Cauldwell Wingate has failed to duly perform and complete all the work in accordance with and as required under the Cauldwell Wingate Contract.

164.   Cauldwell Wingate therefore has breached the Cauldwell Wingate Contract.

165.   As a result, Cauldwell Wingate may not maintain the claims asserted in the Fourth-Party Complaint.

## AS AND FOR AN EIGHTH DEFENSE

166.   The damages, if any, sustained by Cauldwell Wingate were the result of Cauldwell Wingate's own culpable conduct

167.   As a result, Cauldwell Wingate may not maintain the claims asserted in the Fourth-Party Complaint.

## AS AND FOR A NINTH DEFENSE

168.   Article 8, Section 8.01 of the General Conditions of the Cauldwell Wingate Contract ("Changes") provides as follows:

> A.   Without invaliding the Contract, the Owner may order Extra Work or make changes by altering, adding to, or deducting from the Work, the contract consideration being adjusted accordingly. No claims for Extra Work shall be allowed unless such Extra Work is ordered in writing by the Owner. No changes in the Work shall be made unless such Work is ordered in writing by the Owner or Owners Representative. If the time for completion is affected by this change the revised time for completion shall be included in the change order. The Owner may order the Contractor to perform the Extra Work and proceed under the Dispute Article.

> \*       \*       \*

> D.   Regardless of the method used by the Owner in determining the value of a change order, the Contractor shall, within the time-frame given by the Owner, submit to the Owner or

Owner's Representative a detailed breakdown of the Contractor's estimate of the value of the omitted or Extra Work.

E.     Unless otherwise specifically provided for in a change order, the compensation specified therein for Extra Work includes full payment for the Extra Work covered thereby, and Contractor waives all rights to any other compensation for said Extra Work, damage or expense.

F.     The Contractor shall furnish satisfactory bills, payrolls and vouchers covering all items of cost and when requested by the Owner shall give the Owner access to all accounts and records relating thereto, including records of subcontractors and material suppliers.

169.     Section 8.01 is referred to and incorporated herein with the same force and effect as though fully set forth at length.

170.     Upon information and belief, Cauldwell Wingate has failed to comply with some or all of the requirements imposed under Section 8.01 of the General Conditions.

171.     Therefore, Cauldwell Wingate cannot maintain any claim based upon any allegation that there were changes to the work required under the Cauldwell Wingate Contract.

**AS AND FOR A TENTH DEFENSE**

172.     Article 9, Section 9.01(F) of the General Conditions of the Cauldwell Wingate Contract ("Time of Completion") provides that, within ten (10) days "from the beginning" of any delay in the completion of the Contract, the contractor shall "notify the Owner, in writing, of the causes of the delay."

173.     Section 9.01(F) is referred to and incorporated herein with the same force and effect as though fully set forth at length.

174.    Upon information and belief, to the extent Cauldwell Wingate is asserting any claims for delay, it has waived some or all of its delay claims by failing to comply with the requirements of Section 9.01(F) of the General Conditions.

175.    Therefore, Cauldwell Wingate may not maintain any claim based upon any allegation that DASNY caused any delays to the work required under the Cauldwell Wingate Contract.

## AS AND FOR AN ELEVENTH DEFENSE

176.    Article 10, Section 10.03 of the General Conditions of the Cauldwell Wingate Contract ("Owner's Right to do Work") provides as follows:

> The Owner may, after notice to the Contractor, without terminating the Contract and without prejudice to any other right or remedy the Owner may have, perform or have performed by others all of the Work or any part thereof and may deduct the cost thereof from any moneys due or to become due the Contractor.

177.    At various times during the course of the Contract, DASNY notified Cauldwell Wingate of its concerns about Cauldwell Wingate's defective work and lack of progress on the project.

178.    DASNY further notified Cauldwell Wingate that it would invoke the Owner's Right to do Work unless such problems were remedied within the timeframes specified in the notices.

179.    Cauldwell Wingate was provided with ample opportunity to remedy the problems with the quality and progress of its work.

180.    Cauldwell Wingate failed to remedy the problems.

181.    Accordingly, DASNY acted within its rights under Article 10, Section 10.03 in hiring alternate contractors to complete and/or correct Cauldwell Wingate's work and back charging Cauldwell Wingate.

182.    Therefore, Cauldwell Wingate may not maintain a cause of action for breach of contract or impact/delay.

### AS AND FOR A TWELFTH DEFENSE

183.    Article 11, Section 11.01(A) of the General Conditions of the Cauldwell Wingate Contract ("Claims for Extra Work") provides that:

A.    If the contractor claims that any Work which the Contractor has been ordered to perform will be Extra Work, or that any action or omission of the Owner is contrary to the terms and provisions of the Contract and will require the Contractor to perform Extra Work the Contractor shall:

1.    Promptly comply with said order.

2.    File with the Owner within fifteen (15) working days after being ordered to perform the Work claimed by the Contractor to be Extra Work or within fifteen (15) working days commencing performance of the Work whichever date shall be earlier; or within fifteen (15) working days after the said action or omission on the part of the Owner occurred, a written notice of the basis of the Contractor's claim, including estimated cost, and request for a determination thereof.

3.    Proceed diligently, pending and subsequent to the determination of the Owner with respect to any said disputed matter, with the performance of the Work in

accordance with all instruction of the
Owner.

184.    Section 11.01(A) is referred to and incorporated herein with the same

force and effect as though fully set forth at length.

185.    Upon information and belief, Cauldwell Wingate has failed to comply

with some or all of the requirements imposed under Section 11.01(A) of the General Conditions.

186.    Therefore, Cauldwell Wingate may not maintain any claim that it

performed extra work under the Cauldwell Wingate Contract.

## AS AND FOR A THIRTEENTH DEFENSE

187.    Article 11, Section 11.01(B) of the General Conditions of the Cauldwell

Wingate Contract ("Claims for Extra Work") provides that:

> B.    No claim for Extra Work shall be allowed
> unless the same was done pursuant to a
> written order of the Owner. The
> Contractor's failure to comply with any or
> all parts of this Article shall be deemed to
> be:
>
> 1.    a conclusive and binding
> determination on the part of the
> contractor that said order, Work,
> action or omission does not involve
> Extra Work and is not contrary to the
> terms and provisions of the Contract,
>
> 2.    a waiver by the Contractor of all
> claims for additional compensation
> or damages as a result of said order,
> Work, action or omission.

188.    Section 11.01(B) is referred to and incorporated herein with the same

force and effect as though fully set forth at length.

189.    Upon information and belief, Cauldwell Wingate has failed to comply

with some or all of the requirements imposed under Section 11.01(B) of the General Conditions.

190.    Therefore, Cauldwell Wingate may not maintain any claim for charges for extra work.

## AS AND FOR A FOURTEENTH DEFENSE

191.    Article 11, Section 11.02 of the General Conditions of the Cauldwell Wingate Contract ("Claims for Delay") provides that:

> No claims for increased costs, charges, expenses or damages of any kind shall be made by the Contractor against the Owner for any delays or hindrances from any cause whatsoever; provided that the Owner, in the Owner's discretion, may compensate the Contractor for any said delays by extending the time for completion of the Work as specified in the Contract.

192.    Section 11.02 is referred to and incorporated herein with the same force and effect as though fully set forth at length.

193.    Therefore, Cauldwell Wingate may not maintain any claims for delay damages.

## AS AND FOR A FIFTEENTH DEFENSE

194.    Article 11, Section 11.03 of the General Conditions of the Cauldwell Wingate Contract ("Finality of Decisions") provides:

> A.    Any decision or determination of the Consultant, Owner or the Owner's Representative shall be final, binding and conclusive on the Contractor unless the Contractor shall, within ten (10) working days after said decision, make and deliver to the Owner a verified written statement of the Contractor's contention that said decision is contrary to a provision of the Contract. The Owner shall determine the validity of the contractor's contention. Pending the decision of the Owner, the Contractor shall proceed in accordance with the original decision.

B.    Whenever it is required in the Contract that an application must be made to the Owner or a determination made by the Owner, the decision of the Owner on said application or the determination of the Owner under the contract shall be final, conclusive and binding upon the Contractor unless the Contractor, within ten (10) working days after receiving notice of the Owner's decision or determination, files a written statement with the Owner that the Contractor reserves the Contractor's rights in connection with the matters covered by said decision or determination.

195.    Section 11.03 is referred to and incorporated herein with the same force and effect as though fully set forth at length.

196.    Numerous decisions in this case were made by the Owner or its Representative and, upon information and belief, Cauldwell Wingate has failed to comply with the provisions of Section 11.03 of the General Conditions.

197.    Therefore, Cauldwell Wingate may not maintain any of its claims.

## AS AND FOR A SIXTEENTH DEFENSE

198.    Article 13, Section 13.01 of the General Conditions of the Cauldwell Wingate ("Cooperation with Other Contractors") provides in relevant part that:

A.    During the progress of the Work, other contractors may be engaged in performing work. The Contractor shall coordinate the Contractor's Work with the work of said other contractors in such a manner as the Owner may direct.

\*    \*    \*

C.    If the Contractor notifies the Owner, in writing, that another contractor on the Site is failing to coordinate the work of said contractor with the Work, the Owner shall investigate the charge. If the Owner finds it to be true, the Owner shall promptly issue

such directions to the other contractor with respect thereto as the situation may require. The Owner shall not be liable for any damages suffered by the Contractor by reason of the other contractor's failure to promptly comply with the directions so issued by the Owner, or by reason of another contractor's default in performance.

D.    Should the Contractor sustain any damage through any act or omission of any other contractor having a contract with the Owner or through any act or omission of any Subcontractor of said other contractor, the Contractor shall have no claim against the Owner for said damage.

*    *    *

F.    The Owner cannot guarantee the responsibility, efficiency, unimpeded operations or performance of any Contractor. The Contractor acknowledges these conditions and shall bear the risk of all delays including, but not limited to, delays caused by the presence or operations of other contractors and delays attendant upon any construction schedule approved by the Owner and the Owner shall not incur any liability by reason of any delay.

199.    Section 13.01 is referred to and incorporated herein with the same force and effect as though fully set forth at length.

200.    Other contractors were involved in various stages of the project. Upon information and belief, some or all of these other contractors caused the damages of which Cauldwell Wingate complains.

201.    Section 13.01 of the General Conditions bars Cauldwell Wingate from recovering against DASNY for damages caused in whole or in part by other contractors.

202.    Therefore, Cauldwell Wingate may not maintain any of its claims.

## AS AND FOR A SEVENTEENTH DEFENSE

203.    Article 13, Section 13.02 of the General Conditions of the Cauldwell Wingate Contract ("Separate Contracts") provides in relevant part:

A.    The Owner may award other contracts, work under which may proceed simultaneously with the execution of the Work. The Contractor shall coordinate the Contractor's operations with those of other contractors as directed by the Owner. Cooperation shall be required in the arrangements for access, the storage of material and in the detailed execution of the Work

B.    The Contractor shall keep informed of the progress and workmanship of other contractors and any Subcontractors and shall notify the Owner in writing immediately of lack of progress or defective workmanship on the part of other contractors or subcontractors, where said delay or defective workmanship may interfere with the Contractor's operations.

C.    Failure of a Contractor to keep so informed and failure to give notice of lack of progress or defective workmanship by others shall be construed as acceptance by the Contractor of said progress and workmanship as being satisfactory for proper coordination with the Work.

204.    Section 13.02 is referred to and incorporated herein with the same force and effect as though fully set forth at length.

205.    Upon information and belief, Cauldwell Wingate has waived its claims in whole or in part by failing to comply with the requirements of Section 13.02 of the General Conditions.

206.    Therefore, Cauldwell Wingate may not maintain any of its claims.

## AS AND FOR AN EIGHTEENTH DEFENSE

207.    Article 20, Section 20.16 of the General Conditions of the Cauldwell Wingate Contract ("Waiver of Certain Causes of Action") provides as follows:

> No action or proceeding shall lie or shall be maintained by the Contractor, nor anyone claiming under or through the Contractor, against the Owner upon any claim arising out of or based upon the Contract, relating to the giving of notices or information.

208.    Upon information and belief, Cauldwell Wingate's claims in this action relate, in whole or in part, to the giving of notices or information.

209.    Therefore, Cauldwell Wingate may not maintain any of its claims.

## AS AND FOR A NINETEENTH DEFENSE

210.    On or about December 27, 2002, the defendant in the main action, American Manufacturers Mutual Insurance Company ("American"), as surety, issued Labor and Material Payment Bond No. 3SEO30676 (the "Labor and Material Payment Bond") naming Cauldwell Wingate as principal and DASNY as obligee.

211.    To the extent that, in the Fourth-Party Complaint, Cauldwell Wingate seeks indemnification against claims asserted in the Amended Complaint of William A. Gross Construction Associates, Inc. ("Gross"), the plaintiff in the main action, against the Labor and Material Payment Bond issued by American as surety, the Fourth-Party Complaint is barred for the reasons set forth in the affirmative defenses in American's Answer to the Amended Complaint.

## AS AND FOR A FIRST COUNTERCLAIM

212.    DASNY is a public benefit corporation organized and existing under the Public Authorities Law of the State of New York, and maintains a place of business at 515 Broadway, Albany, New York.

213.    Upon information and belief, Cauldwell Wingate is a limited liability company organized under the laws of the State of Delaware, has its principal place of business at 380 Lexington Avenue, New York, New York, and provides general construction services.

214.    To the extent that it is deemed that this Court has jurisdiction over the claims asserted in the Fourth-Party Complaint, this Court has jurisdiction over DASNY's counterclaims in this fourth-party action pursuant to 28 U.S.C. § 1367, in that they are directly related to the claims in the main action and in the third-party action and therefore form part of the same case or controversy.

215.    On or about December 20, 2002, the parties entered into a written contract designated as "General Construction #2 – Fitout Work" (the "Cauldwell Wingate Contract") under which Cauldwell Wingate, as general contractor, would render services to DASNY in connection with the construction of the Bronx Criminal Court Complex in Bronx, New York.

216.    The Cauldwell Wingate Contract is referred to and incorporated herein with the same force and effect as though fully set forth at length herein.

217.    The Cauldwell Wingate Contract is legally binding upon both parties.

218.    The Cauldwell Wingate Contract required Cauldwell Wingate to "perform all Work of every kind or nature whatsoever required and all other things necessary to complete in a proper and workmanlike manner" the construction of the Bronx Criminal Court Complex in

strict accordance with the documents forming the Cauldwell Wingate Contract and with such changes ordered and approved by DASNY pursuant to the Cauldwell Wingate Contract.

219.    DASNY has complied with, and fully performed its obligations under, the Cauldwell Wingate Contract.

220.    Cauldwell Wingate failed to perform its obligations under, and thereby breached, the Cauldwell Wingate Contract by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to provide adequate manpower; (iv) failing to properly coordinate its work with the work of other contractors on the project; (v) delaying completion of its work and the work of other contractors on the project; and (vi) failing to comply with directives issued by the construction manager.

221.    As a result of Cauldwell Wingate's breach, DASNY has sustained damages in an amount to be determined at trial.

## AS AND FOR A SECOND COUNTERCLAIM

222.    DASNY repeats and realleges each and every allegation set forth in paragraphs "212" to "220" as if fully set forth at length herein.

223.    Article 9, Section 9.01 of the General Conditions of the Cauldwell Wingate Contract ("Time of Completion") states in relevant part as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay to the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default. Default shall include abandonment of the Work by the Contractor.

224.    As set forth in the Cauldwell Wingate Contract, Cauldwell Wingate is liable to DASNY for liquidated damages for each and every day that Cauldwell Wingate is in default after the date set forth therein for completion of the project.

225.    Cauldwell Wingate failed to complete its work by the completion date specified in the Cauldwell Wingate Contract.

226.    Accordingly, DASNY is entitled to recover from Cauldwell Wingate liquidated damages in an amount to be determined at trial.

## AS AND FOR A THIRD COUNTERCLAIM

227.    DASNY repeats and realleges each and every allegation set forth in paragraphs "212" to "220" as if fully set forth at length herein.

228.    Article 9, Section 9.01 of the General Conditions of the Cauldwell Wingate Contract ("Time of Completion") states, in relevant, part as follows:

> H.    The foregoing liquidated damages are intended to compensate the Owner only for the loss of beneficial use of the structure. In addition, the Contractor shall be liable to the Owner, to the fullest extent permitted by law, for whatever actual damages (other than actual loss of beneficial use) the Owner may incur as a result of any actions or inactions of the Contractor or its Subcontractors including, without limitation, interest expense and carrying costs, liabilities to other Contractors working on the project or other third parties, job extension costs, and other losses incurred by the Owner....

229.    As a consequence of Cauldwell Wingate's breaches of its obligations under the Cauldwell Wingate Contract, DASNY has incurred and/or will incur additional costs. These costs include, but are not limited to: (i) additional funds paid to other contractors as a result of delays caused by Cauldwell Wingate; (ii) additional funds paid to other contractors to

perform work that Cauldwell Wingate was required to perform but failed to perform pursuant to the Contract; (iii) additional construction management and general conditions fees paid to or owed to DASNY's construction manager; (iv) additional architectural and engineering fees paid to or owed to DASNY's architect/engineer; (iv) additional consultants' fees; (v) additional owner's fees; (vi) additional insurance fees; and (vi) other costs.

230.    Accordingly, DASNY is entitled to recover its actual damages from Cauldwell Wingate in an amount to be determined at trial.

## AS AND FOR A FOURTH COUNTERCLAIM

231.    DASNY repeats and realleges each and every allegation set forth in paragraphs "212" to "217" as if fully set forth at length herein.

232.    To the extent that DASNY is finally determined to be liable to any individual or entity for any act or omission of Cauldwell Wingate, DASNY shall be entitled to recover any such sum or sums from Cauldwell Wingate in amounts to be determined at trial.

## DEMAND FOR A JURY TRIAL

233.    DASNY demands a trial by jury as to all issues in the above matter.

## CONCLUSION

**WHEREFORE,** DASNY respectfully requests judgment in its favor:

(1)     dismissing the Fourth-Party Complaint, with prejudice, in its entirety;

(2)     awarding to DASNY all damages with respect to its counterclaims in amounts to be determined at trial;

(3)     awarding to DASNY its costs and disbursements; and

(4)     granting to DASNY such other and further relief as the Court may deem appropriate.

Dated:        New York, New York
              June 13, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
Attorney for the Dormitory Authority
  of the State of New York
100 Church Street, Room 3-241
New York, New York 10007
(212) 788-1185

By:

EDWIN M. LEVY (EL-7792)
Assistant Corporation Counsel