AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

William A. Gross Construction Associates, Inc.,
Plaintiff,

V.

American Manufacturers Mutual Insurance
Company, Defendant.

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:   07-CV-10639 (LAK) (AJP)

*Please Note: This is
a fifth-Party action.
Please see the attached
fifth-party complaint for
the full caption

TO: (Name and address of Defendant)

See attached service list.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Fourth-Party Defendant and Fifth-Party Plaintiff
    Dormitory Authority of the State of New York
100 Church Street
New York, N.Y. 10007
(212) 788-1185

By:   Edwin M. Levy
      Assistant Corporation Counsel

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

# J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

_____   7/9/2008
                                   DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                    Date                       *Signature of Server*

                                      _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

# FIFTH-PARTY COMPLAINT SERVICE LIST

A.  WILLIAMS TRUCKING & BACKHOE TRENCHING, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

AMERICAN CASUALTY COMPANY OF READING, PA
c/o CNA Surety Corporation
CNA Plaza
333South Wabash
13-South
Chicago, IL 60685-1303
Attn:   Raymond M. Lemming, P.E.

ASPRO MECHANICAL CONTRACTING, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

BEAUBOIS CANADA, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

BOVIS LEND LEASE LMB, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

DIERKS HEATING COMPANY, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

ENCLOS CORPORATION
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

FIVE STAR ELECTRIC CORPORATION
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231


FUTURE TECH CONSULTANTS OF NEW YORK, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

HERITAGE AIR SYSTEMS, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

HUGH O'KANE ELECTRIC CO., L.L.C.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

MATERIALS TESTING LAB, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

PYRAMID FIRE PROTECTION, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

RAFAEL VINOLY ARCHITECTS, P.C.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

SMI-OWEN STEEL COMPANY, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

STONEWALL CONTRACTING CORPORATION
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

TRACTEL, INC.
c/o Department of State of the State of New York
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

WILLIAM A. GROSS CONSTRUCTION ASSOCIATES, INC.,

07-CV-10639 (LAK)(AJP)

Plaintiff,    **FIFTH-PARTY COMPLAINT**

-against-

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

Defendant.

---------------------------------------------------------------------- x

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

Third-Party Plaintiff,

-against-

CAULDWELL WINGATE COMPANY, LLC,

Third-Party Defendant.

---------------------------------------------------------------------- x

CAULDWELL WINGATE COMPANY, LLC,

Fourth-Party Plaintiff,

-against-

DORMITORY AUTHORITY OF THE STATE OF NEW
YORK,

Fourth-Party Defendant.

---------------------------------------------------------------------- x

Caption continued on the next page

```
-------------------------------------------------------------------- x
```
DORMITORY AUTHORITY OF THE STATE OF NEW
YORK,

                                    Fifth-Party Plaintiff,

              -against-

A.   WILLIAMS   TRUCKING   &   BACKHOE
TRENCHING,   INC.,   ASPRO   MECHANICAL
CONTRACTORS, INC., BEAUBOIS CANADA, INC.,
BOVIS  LEND  LEASE  LMB,  INC.,  CNA  SURETY
CORPORATION   D/B/A   AMERICAN   CASUALTY
COMPANY  OF  READING,  PA,  DIERKS  HEATING
COMPANY, INC., ENCLOS CORPORATION, FIVE
STAR  ELECTRIC  CORPORATION,  FUTURE  TECH
CONSULTANTS  OF  NEW  YORK,  INC.,  HERITAGE
AIR  SYSTEMS,  INC.,  HUGH  O'KANE  ELECTRIC  CO.,
LLC, MATERIALS TESTING LAB, INC., PYRAMID
FIRE    PROTECTION,    INC.,    RAFAEL    VINOLY
ARCHITECTS  P.C.,  SMI-OWEN  STEEL  COMPANY,
INC., STONEWALL CONTRACTING CORPORATION,
TRACTEL LTD. SWINGSTAGE DIVISION,

                                    Fifth-Party Defendants.
```
-------------------------------------------------------------------- x
```

            Fourth-Party Defendant and Fifth-Party Plaintiff DORMITORY AUTHORITY

OF THE STATE OF NEW YORK ("DASNY"), by its counsel MICHAEL A. CARDOZO,

Corporation Counsel of the City of New York, respectfully alleges as follows:

## NATURE OF THE ACTION

            1.       This action arises from the failure of the Fifth-Party Defendants to

perform pursuant to numerous contracts relating to the construction of a new criminal court

complex, the Bronx County Hall of Justice (the "Complex" or the "Project") located in Bronx

County, New York.  The Project was financed and managed by the DASNY, pursuant to a

contract with the City of New York (the "City").

2.     Fifth-Party Defendants are contractors and consultants who were engaged by DASNY to perform construction work and provide construction-related services in connection with the Project. Fifth-Party Defendants' repeated failures to perform in accordance with their contractual obligations, and in accordance with generally accepted professional standards, have substantially delayed the completion of the construction, which resulted in DASNY incurring increased construction costs, and delayed the opening of the Complex – initially scheduled for December 31, 2005 – until February 2008, and have required, and will continue to require, the performance of corrective work necessary to correct defective and/or incomplete work .

## JURISDICTION AND VENUE

3.     This Court has supplemental jurisdiction over this Fifth-Party Action under 28 U.S.C. § 1367(a), to the extent that the Court has supplemental jurisdiction over the claims asserted in the Fourth-Party Action.[1]

4.     Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

5.     DASNY is public benefit corporation organized and existing under the Public Authorities Law of the State of New York, and maintains a place of business at 515 Broadway, Albany, New York 12207.

6.     Upon information and belief, A. Williams Trucking & Backhoe Trenching, Inc. ("Williams") is, and was at all relevant times, a domestic business corporation

---

[1] As of the date of the filing of this Fifth-Party Complaint, DASNY's motion, filed on June 13, 2008, to dismiss the Fourth-Party Action for lack of supplemental jurisdiction, has not been fully briefed, and therefore remains pending. In serving and filing the instant Fifth-Party Action, DASNY preserves, and in no way intends to waive, any of its jurisdictional objections or other defenses and/or counterclaims asserted in the Fourth-Party Action.

duly organized and existing under the laws of the State of New York. Williams' principal place of business is located at 225 Third Avenue, Brooklyn, New York 11217.

7.     Upon information and belief, Aspro Mechanical Contractors, Inc. ("Aspro") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Aspro's principal place of business is 127-08 Merrick Boulevard, Springfield Gardens, New York 11434.

8.     Upon information and belief, Beaubois Canada, Inc. ("Beaubois") is, and was at all relevant times, a foreign business corporation duly organized and existing under the laws of the Canada and authorized to conduct business in the State of New York. Beaubois' principal place of business is located at 521 6th Avenue, St. Georges, Quebec, Canada G5YB-7.

9.     Upon information and belief, Bovis Lend Lease LMB, Inc. ("Bovis") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Bovis' principal place of business is located at 200 Park Avenue, 9th Floor, New York, New York 10166.

10.    Upon information and belief, Dierks Heating Company, Inc. ("Dierks") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Dierks' principal place of business is located at 43-32 33rd Street, Long Island City, New York 11101.

11.    Upon information and belief, Enclos Corporation ("Enclos") is, and was at all relevant times, a corporation organized and existing under the laws of the State of Minnesota and authorized to conduct business in the State of New York. Enclos' principal place of business is located at 2770 Blue Water Road, Eagan, Minnesota 55121.

12.    Upon information and belief, Five Star Electric Corporation ("Five Star") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Five Star's principal place of business is located at 101-32 101st Street, Ozone Park, New York 11416.

13.    Upon information and belief, Future Tech Consultants of New York, Inc. ("Future Tech") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Future Tech's principal place of business is located at 52 East 2nd Street, Mineola, New York 11501.

14.    Upon information and belief, Heritage Air Systems, Inc., also known as Heritage Mechanical Services, Inc. ("Heritage"), is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. Heritage's principal place of business is located at 305 Suburban Avenue, Deer Park, New York 11729.

15.    Upon information and belief, Hugh O'Kane Electric Co., LLC ("O'Kane") is, and was at all relevant times, a foreign limited liability company duly organized and existing under the laws of the State of Delaware, and authorized to conduct business in the State of New York. O'Kane's principal place of business is located at 90 White Street, New York, New York 10013.

16.    Upon information and belief, Materials Testing Lab, Inc. ("MTL") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York. MTL's principal place of business is located at 145 Sherwood Avenue, Farmingdale, New York 11735.

17.    Upon information and belief, Pyramid Fire Protection, Inc. ("Pyramid") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York.  Pyramid's principal place of business is located at 2138 Williamsbridge Road, Bronx, New York 10461.

18.    Upon information and belief, Rafael Vinoly, Architects P.C. ("RVA") is, and was at all relevant times, a professional corporation duly organized and existing under the laws of the State of New York.  RVA's principal place of business is located at 50 Vandam Street, New York, New York 10013.

19.    Upon information and belief, SMI-Owen Steel Company, Inc. ("SMI-Owen") is, and was at all relevant times, a corporation duly organized and existing under the laws of the State of South Carolina and authorized to conduct business in the State of New York. SMI-Owen's principal place of business is located at 113 East Warehouse Court, Taylors, South Carolina 29687.

20.    Upon information and belief, CNA Surety Corporation d/b/a American Casualty Company of Reading, PA ("CNA") is, and was at all relevant times, was a foreign corporation authorized to do business in the State of New York.  Upon information and belief, CNA maintains a principal place of business at CNA Plaza, 333 South Wabash, 13-South, Chicago, Illinois 60685.

21.    Upon information and belief, Stonewall Contracting Corporation ("Stonewall") is, and was at all relevant times, a domestic business corporation duly organized and existing under the laws of the State of New York.  Stonewall's principal place of business is located at 14-09 110th Street, College Point, New York 11356.

22.    Upon information and belief, Tractel Inc., d/b/a Tractel Ltd. Swingstage Division ("Tractel") is, and was at all relevant times, a corporation duly organized and existing under the laws of the State of Massachusetts and authorized to conduct business in the State of New York. Tractel's principal place of business is located at 110 Shawmut Road, Canton, Massachusetts 02021.

## FACTUAL ALLEGATIONS

### The Genesis of the Project

23.    The City, in conjunction with the New York State Office of Court Administration, having determined that additional courtroom space was needed in The Bronx, decided to construct the Complex.

24.    The Complex was to include a Courthouse, a Jury Assembly Building, and an underground parking garage.

25.    The site selected for the Project covers two and one-half square city blocks, just east of the existing Bronx County Criminal Court and Family Court building, between East 161st Street on the south, East 163rd Street to the north, Sherman Avenue on the west, and Morris Avenue on the east (the "Site").

26.    In order to commence the Project, the City acquired title to several properties at the Site.

27.    The City, through the New York City Department of Design and Construction ("DDC"), commissioned RVA to devise architectural plans for the Complex (the "RVA Contract"). The architectural plans envisioned the construction of 774,000 square foot, nine-story building with forty-seven (47) courtrooms, seven (7) grand jury rooms, and office

space, a two-level underground parking garage, and a large, open plaza. The Complex would be one of the largest courthouses in the country.

28.    DASNY took over the planning and construction of the Project, pursuant to the Project Management Agreement between DASNY and the City, dated October 16, 1992, and in accordance with the provisions of the Dormitory Authority Act, as amended, Public Authorities Law §§ 1675, *et seq.* A budget of $325 million was established. Under the construction schedule established, work on the Project would begin in August 2001, and end in December 2005.

**The Project Contracts and Problems Encountered During the Project**

29.    Under the Project Management Agreement, DASNY was authorized to enter into contracts with consultants, construction contractors and a construction manager. With respect to the Project, DASNY entered into numerous contracts with not less than nineteen different prime contractors and several engineering and other consulting firms.

**The Project Design**

30.    In or about June 2001, RVA entered into Contract No. DA 72278/1380909999 (the "RVA Contract") with DASNY, under which RVA agreed to provide DASNY with certain architectural services in connection with the construction of the Project. The original amount of the RVA Contract was $6,664,170.00, although this amount was adjusted upward during the performance of the work through approved change orders.

31.    RVA failed to provide the services required under the RVA Contract.

32.    RVA failed to coordinate various design documents and failed to include essential design elements for construction, such as returns in several areas for the air heating and cooling systems.

33.   RVA failed to ensure that its designs and the construction materials it designated complied with applicable provisions in the New York City Building Code.

34.   RVA failed to timely respond to contractor inquiries and requests for information, which resulted in significant delays on the Project.

35.   RVA failed to properly review and approve proposed design changes to the Complex submitted by various contractors during construction, which resulted in significant structural failures.

**Construction Management**

36.   In or about August and September 2000, DASNY and Bovis entered into three separate written contracts – Contract No. DA 72369/1380909999, Contract No. DA 72345/1380909999, and Contract No. DA 72384/1380909999 (collectively the "Bovis Contracts") – under which Bovis agreed to perform certain services to DASNY in connection with the design of the Project, and with construction management and coordination services in connection with its construction.

37.   However, Bovis failed to provide the services required under the Bovis Contracts.

38.   Bovis failed to properly coordinate the work of the contractors hired for the Project.

39.   Bovis failed to develop a proper schedule for the Project.

40.   Bovis failed to properly supervise the work of the contractors hired for the Project.

41.   Bovis failed to properly provide adequate management of the Project, such as by sending unqualified personnel to oversee the work.

**Excavation and Foundation Work**

      42.    In or about January 2002, Williams entered into a written contract identified as Contract No. DA 83083/1380909999 (the "Williams Contract") with DASNY, under which Williams agreed to perform certain excavation and foundation work in connection with the Project. The original amount of the Williams Contract was $18,479,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

      43.    Williams failed to complete its work in a timely manner, despite time extensions agreed to by DASNY.

      44.    Upon information and belief, the completion of Williams' work was delayed because it failed to adequately coordinate with other contractors.

      45.    In addition, Williams failed to perform in a workmanlike manner, by, *inter alia*, over-excavating the Site, which required excavated earth to be replaced; and by rupturing public water mains on at least two separate occasions.

      46.    Upon information and belief, Williams failed to adequately supervise the workers it hired to perform the services required under the Williams Contract.

**Structural Steel Work**

      47.    In or about March 2001, SMI-Owen entered into Contract No. DA 78798/1380909999 (the "SMI-Owen Contract") with DASNY, under which DASNY agreed to perform certain structural steel work in connection with the Project. The original amount of the SMI-Owen Contract was $27,850,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

48.    SMI-Owens failed to complete its work in a timely manner, despite time extensions agreed to by DASNY.

49.    Upon information and belief, SMI-Owens' work was delayed because it failed to adequately coordinate with other contractors.

50.    SMI-Owens failed to provide sufficient manpower to erect the steel skeleton of the buildings, which delayed completion of that phase of the Project, and commencement of subsequent phases.

51.    In addition, SMI-Owens failed to perform in a workmanlike manner, as evidenced, *inter alia*, by its deficient job in welding the monumental staircase installed in the Courthouse.

52.    Upon information and belief, on March 25, 2002, CNA executed performance bond no. 929216831 in the penal sum of $27,850,000.00, in connection with the SMI-Owen Contract, naming SMI-Owen as the principal and DASNY as the obligee.

53.    Upon information and belief, by letter dated December 10, 2003, SMI-Owen declared itself in voluntary default of the SMI-Owen Contract, and DASNY accepted SMI-Owen's voluntary default and made a demand upon CNA to perform under the performance bond.

54.    Upon information and belief, by letter dated January 9, 2004, CNA confirmed SMI-Owen's voluntary default.

55.    Upon information and belief, in an agreement dated January 29, 2004, entered into between DASNY and CNA, CNA agreed to arrange for the completion of the SMI-Owen Contract in accordance with the terms and conditions of the SMI-Owen Contract (the "Takeover Agreement").

56.    Article I of the Takeover Agreement provides in relevant part:

> Surety is the completing surety and agrees to cause the completion of all of the work under the Contract through its contractor, A.J. McNulty & Company, Inc. (the "Completion Contractor") and accepts responsibility for the performance of the work remaining to be completed under the Contract. The terms and conditions of the Bonds and the Contract as of the date of this Agreement shall govern the rights and liabilities of the parties except as set forth hereinafter.
>
> Surety agrees to comply with all terms and provisions of the Contract including furnishing all insurance policies that the contract requires the Contractor to furnish said insurance policies naming DASNY and, where required, others as an additional insured and Surety shall furnish DASNY with evidence thereof. The Surety shall cause the Completion Contractor to furnish all necessary insurance with respect to the Contract. DASNY reserves the right to disapprove any proposed Completion Contractor.

57.    Upon information and belief, CNA entered into a contract with A.J. McNulty & Company, Inc. ("McNulty") to complete all remaining work on the SMI-Owen Contract.

58.    CNA, acting through McNulty and others, failed to complete the work remaining under the SMI-Owen Contract in a timely manner, despite time extensions agreed to by DASNY.

59.    Upon information and belief, McNulty's work was delayed because it failed to adequately coordinate with other contractors.

60.    In addition, McNulty failed to perform in a workmanlike manner, as evidenced, *inter alia*, by its deficient job in welding the monumental staircase installed in the Courthouse.

12

**Exterior Work**

61.    In or about September 2001, Enclos entered into a written contract identified as Contract No. DA 78639/1380909999 (the "Enclos Contract") with DASNY under which Enclos agreed to perform certain curtain wall work and other exterior work at the Complex.  The original amount of the Enclos Contract was $35,366,541.00, although this amount was adjusted upward during the performance of the work through approved change orders.

62.    Upon information and belief, work on the Project was delayed because Enclos failed to adequately coordinate its work with other contractors.

**General Contract Work**

63.    In or about December 2001, Stonewall entered into Contract No. DA 84873/1380909999 (the "Stonewall Contract") with DASNY, under which Stonewall agreed to perform certain core and shell work in connection with the Project.  The original amount of the Stonewall Contract was $29,927,792.00, although this amount was adjusted upward during the performance of the work through approved change orders.

64.    Stonewall failed to complete its work in a timely manner, despite time extensions agreed to by DASNY.

65.    In addition, Stonewall failed to perform in a workmanlike manner, as evidenced, *inter alia*, by its failure to properly apply adequate laminate to the floors, and the failure of the topping slabs to bond to the underlying structural slabs.

66.    Stonewall also installed inadequate steel reinforcements in the walls of elevator shafts in at least twenty-three (23) different locations at the Site, the amelioration of which delayed completion of that phase of the Project and commencement of subsequent phases.

## Heating, Ventilation and Air Conditioning ("HVAC")

67.    In or about November 2001, Dierks entered into a written contract identified as Contract No. DA 84162/1380909999 (the "Dierks Contract") with DASNY, under which Dierks agreed to perform certain HVAC-related work to DASNY in connection with the Project. The original amount of the Dierks Contract was $12,614,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

68.    Dierks failed to complete its work in a timely manner, despite time extensions agreed to by DASNY.

69.    Upon information and belief, Dierks' work was delayed because it failed to adequately coordinate with other contractors.

70.    In addition, Dierks failed to perform in a workmanlike manner, as evidenced by its failure to adequately maintain temporary boilers and chillers before the permanent HVAC system was installed.

## Sheet Metal Work

71.    In or about November 2001, Heritage entered into a written contract identified as Contract No. DA 84112/1380909999 (the "Heritage Contract") with DASNY, under which Heritage agreed to perform certain sheetmetal work in connection with the Project. The original amount of the Heritage Contract was $11,413,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

72.    Heritage failed to complete its work in a timely manner, despite time extensions agreed to by DASNY.

73.    In addition, Heritage failed to perform in a workmanlike manner, as evidenced by its inadequate installation of variable air volume ("VAV") boxes necessary for adequate room cooling.

74.    Heritage also failed to diligently maintain and protect its work as required under the Heritage Contract, as evidenced by its failure to seal the sheet metal used in its installations.

**Plumbing**

75.    In or about October 2001, Aspro entered into a written contract identified as Contract No. DA 84008/1380909999 (the "Aspro Contract") with DASNY, under with Aspro agreed to perform certain plumbing services in connection with the Project. The original amount of the Aspro Contract was $6,263,500.00, although this amount was adjusted upward during the performance of the work through approved change orders.

76.    Aspro failed to complete its work in a timely manner, despite an extension agreed to by DASNY.

77.    Aspro failed to install plumbing fixtures in the manner required by the New York City Building Code by, among other things, causing plumbing lines to be pitched in the wrong direction, and utilizing vents of insufficient size.

**Fire Protection**

78.    In or about October 2001, Pyramid entered into Contract No. DA 84011/1380909999 (the "Pyramid Contract") with DASNY, under which Pyramid agreed to perform certain fire protection work in connection with the Project. The original amount of the Pyramid Contract was $3,687,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

79.     Upon information and belief, Pyramid failed to complete the Pyramid Contract and abandoned the Project.

**Building Power and Fire Alarm Systems**

80.     In or about November 2001, O'Kane entered into a written contract identified as Contract No. DA 84220/1380909999 (the "O'Kane Contract") with DASNY, under which O'Kane agreed to perform certain electrical work in connection with the Project. The original amount of the O'Kane Contract was $37,900,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

81.     O'Kane's work failed to meet specifications under the O'Kane Contract.

82.     O'Kane failed to provide "as built" drawings to DASNY as required under the O'Kane Contract.

**Low Voltage Electrical Work**

83.     In or about March 2003, Five Star entered into a written contract identified as Contract No. DA 94397/1380909999 (the "Five Star Contract") with DASNY, under which Five Star agreed to perform certain low voltage electrical work in connection with the Project. The original amount of the Five Star Contract was $9,270,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

84.     Five Star's work failed to meet specifications under the Five Star Contract.

**Millwork**

85.     In or about February 2003, Beaubois entered into two separate written contracts – Contract No. DA 93680/1380909999 and Contract No. DA 93863/1380909999 (collectively the "Beaubois Contracts") – with DASNY, under which Beaubois agreed to

perform certain architectural woodwork and finishing work in connection with the construction of the Complex. The original amount of Contract No. DA 93680 was $1,916.000.00 and the original amount of Contract No. DA 93663 was $4,047,950.00, although these amounts were adjusted upward during the performance of the work through approved change orders.

86.    Beaubois' work and materials failed to meet specifications under the Beaubois Contracts.

87.    Beaubois also failed to perform in a workmanlike manner, which caused the hardware to break or become detached from the doors, and the wood veneer to delaminate.

**Façade Maintenance**

88.    In or about February 2004, Tractel entered into Contract No. DA 102566/1380909999 (the "Tractel Contract") with DASNY, under which Tractel agreed to perform certain façade maintenance in connection the construction of the Complex. The original amount of the Tractel Contract was $1,500,000.00, although this amount was adjusted upward during the performance of the work through approved change orders.

89.    To the extent that Tractel failed to meet its obligations under the Tractel Contract, it is liable to DASNY for any claims asserted against DASNY stemming from such failures.

**Testing**

90.    In or about January 2003, MTL entered into a written contract identified as Contract No. DA 92729/1380909999 (the "MTL Contract") with DASNY, under which MTL would provide certain engineering consulting services to DASNY in connection with the Project, including the performance of concrete testing services.

91.     In performing services under the MTL Contract, MTL provided to DASNY false and/or incorrect information upon which DASNY relied.

92.     MTL failed to meet its obligations under the MTL Contract by, *inter alia*, failing to note or advise DASNY of defective welds with respect to the canopy located at the Courthouse.

93.     In or about January 2003, Future Tech entered into a written contract identified as Contract No. DA 92704/1380909999 (the "Future Tech Contract") with DASNY, under which Future Tech would provide certain engineering consulting services and concrete inspection services in connection with the Project.

94.     Future Tech failed to meet its obligations under the Future Tech Contract by, *inter alia*, failing to note or advise DASNY of defective work in the parking garage that it was charged with inspecting and of the elevated concrete slabs located within the Courthouse.

### AS AND FOR A FIRST CLAIM FOR RELIEF:
### DEFENDANT WILLIAMS

95.     DASNY repeats and realleges the allegations contained in Paragraphs 1 through 94 above, with the same force and effect as though fully set forth at length herein.

96.     Pursuant to the Williams Contract, Williams agreed to complete, in a good, workmanlike manner, all work required by the Williams Contract.

97.     Williams failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Williams Contract.

98.     Williams breached the Williams Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the

work of other contractors on the Project; (iv) failing to adequately supervise its work; (v) failing to retain adequate and competent staff; (vi) delaying completion of its work and the work of other contractors on the Project; and (vii) failing to comply with directives issued by the construction manager.

99.     As a result  of Williams' material breaches of the Williams Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

100.     Accordingly, DASNY is entitled to recover from Williams all additional costs in an amount to be determined at trial arising from Williams' breach of contract.

## AS AND FOR A SECOND CLAIM FOR
## RELIEF: DEFENDANT WILLIAMS

101.     DASNY repeats and realleges the allegations set forth in Paragraphs 1 through 100 above, with the same force and effect as though fully set forth at length herein.

102.     Article 9, Section 9.01 of the General Conditions of the Williams' Contract ("Time of Completion") states, in relevant part, as follows:

> D.     If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.   Default shall include abandonment of the Work by the Contractor.

103.     Williams did not complete its work in the time required by the Williams Contract.

104.     As a result of Williams' delay, other contractors on the Project incurred delays.

105.    As a result of Williams' material breaches of its obligations under the Williams Contract, DASNY is entitled to recover from Williams liquidated damages in an amount to be determined at trial.

## AS AND FOR A THIRD CLAIM FOR RELIEF:
## DEFENDANT WILLIAMS

106.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 105 above, with the same force and effect as though fully set forth at length herein.

107.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Williams, together with the costs and disbursements of this action, to the extent such damages were caused by Williams' acts and omissions.

## AS AND FOR A FOURTH CLAIM FOR
## RELIEF: DEFENDANT ASPRO

108.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 107 above, with the same force and effect as though fully set forth at length herein.

109.    Pursuant to the Aspro Contract, Aspro agreed to complete, in a good, workmanlike manner, all work required by the Aspro Contract.

110.    Aspro failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Aspro Contract.

111.    Aspro failed to complete work that was in compliance with the New York City Building Code.

112.    Aspro breached the Aspro Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the

work of other contractors on the Project; (iv) delaying completion of its work and the work of other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

113.    As a result of Aspro's material breaches of the Aspro Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

114.    Accordingly, DASNY is entitled to recover from Aspro all additional costs in an amount to be determined at trial arising from Aspro's breach of contract.

### AS AND FOR A FIFTH CLAIM FOR RELIEF: DEFENDANT ASPRO

115.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 114 above, with the same force and effect as though fully set forth at length herein.

116.    Article 9, Section 9.01 of the General Conditions of the Aspro Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

117.    Aspro failed to complete its work in the time required in the Aspro Contract.

118.    As a result of Aspro's delay, other contractors on the Project incurred delays.

21

119.    As a result of Aspro's material breaches of its obligations under the Aspro Contract, DASNY is entitled to recover from Aspro liquidated damages in an amount to be determined at trial.

## AS AND FOR A SIXTH CLAIM FOR RELIEF:
## DEFENDANT ASPRO

120.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 119 above, with the same force and effect as though fully set forth at length herein.

121.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Aspro, together with the costs and disbursements of this action, to the extent such damages were caused by Aspro's acts and omissions.

## AS AND FOR A SEVENTH CLAIM FOR
## RELIEF: DEFENDANT BEAUBOIS

122.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 121 above, with the same force and effect as though fully set forth at length herein.

123.    Pursuant to the Beaubois Contracts, Beaubois agreed to complete, in a good, workmanlike manner, all work required by the Beaubois Contracts.

124.    Beaubois failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Beaubois Contracts.

125.    Beaubois failed to properly order and install materials that meet that specifications in the Beaubois Contracts.

126.    Beaubois breached the Beaubois Contracts by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the

work of other contractors on the Project; (iv) delaying completion of its work and the work of other contractors on the Project; (v) failing to properly order and install materials that meet that contracts' specifications; and (vi) failing to comply with directives issued by the construction manager.

127.    As a result of Beaubois' material breaches of the Beaubois Contracts, DASNY incurred significant additional expenses in connection with the completion of the Project.

128.    Accordingly, DASNY is entitled to recover from Beaubois all additional costs in an amount to be determined at trial arising from Beaubois' breach of contract.

## AS AND FOR A EIGHTH CLAIM FOR
## RELIEF: DEFENDANT BEAUBOIS

129.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 128 above, with the same force and effect as though fully set forth at length herein.

130.    Article 9, Section 9.01 of the General Conditions of the Beaubois Contracts ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

131.    Beaubois failed to complete its work in the time required by the Beaubois Contracts.

132.    As a result of Beaubois' delay, other contractors on the Project incurred delays.

133.    As a result of Beaubois' material breaches of its obligations under the Beaubois Contracts, DASNY is entitled to recover from Beaubois liquidated damages in an amount to be determined at trial.

## AS AND FOR A NINTH CLAIM FOR RELIEF:
## DEFENDANT BEAUBOIS

134.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 133 above, with the same force and effect as though fully set forth at length herein.

135.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Beaubois, together with the costs and disbursements of this action, to the extent such damages were caused by Beaubois' acts and omissions.

## AS AND FOR A TENTH CLAIM FOR
## RELIEF: DEFENDANT DIERKS

136.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 135 above, with the same force and effect as though fully set forth at length herein.

137.    Pursuant to the Dierks Contract, Dierks agreed to complete, in a good, workmanlike manner, all work required by the Dierks Contract.

138.    Dierks failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Dierks Contract.

139.    Dierks breached the Dierks Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of

other contractors on the Project; (v) failing to diligently maintain and protect its work as required by the contract; and (vi) failing to comply with directives issued by the construction manager.

140.    As a result of Dierks' material breaches of the Dierks Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

141.    Accordingly, DASNY is entitled to recover from Dierks all additional costs in an amount to be determined at trial arising from Dierks' breach of contract.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF: DEFENDANT DIERKS

142.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 141 above, with the same force and effect as though fully set forth at length herein.

143.    Article 9, Section 9.01 of the General Conditions of the Dierks Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

144.    Dierks failed to complete its work in the time required by the Dierks Contract.

145.    As a result of Dierks' delay, other contractors on the Project incurred delays.

146.    As a result of Dierks' material breaches of its obligations under the Dierks Contract, DASNY is entitled to recover from Dierks liquidated damages in an amount to be determined at trial.

## AS AND FOR A TWELFTH CLAIM FOR
## RELIEF: DEFENDANT DIERKS

147.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 146 above, with the same force and effect as though fully set forth at length herein.

148.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Dierks, together with the costs and disbursements of this action, to the extent such damages were caused by Dierks' acts and omissions.

## AS AND FOR A THIRTEENTH CLAIM FOR
## RELIEF: DEFENDANT ENCLOS

149.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 148 above, with the same force and effect as though fully set forth at length herein.

150.    Pursuant to the Enclos Contract, Enclos agreed to complete, in a good, workmanlike manner, all work required by the Enclos Contract.

151.    Enclos failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Enclos Contract.

152.    Enclos breached the Enclos Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of the work of other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

153.    As a result of Enclos' material breaches of the Enclos Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

154.    Accordingly, DASNY is entitled to recover from Enclos all additional costs in an amount to be determined at trial arising from Enclos' breach of contract.

## AS AND FOR A FOURTEENTH CLAIM FOR RELIEF: DEFENDANT ENCLOS

155.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 154 above, with the same force and effect as though fully set forth at length herein.

156.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Enclos, together with the costs and disbursements of this action, to the extent such damages were caused by Enclos' acts and omissions.

## AS AND FOR A FIFTEENTH CLAIM FOR RELIEF: DEFENDANT FIVE STAR

157.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 156 above, with the same force and effect as though fully set forth at length herein.

158.    Pursuant to the Five Star Contract, Five Star agreed to complete, in a good, workmanlike manner, all work required by the Five Star Contract.

159.    Five Star failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Five Star Contract.

160.    Five Star breached the Five Star Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of other contractors on the Project; (v) failing to properly integrate low voltage technical systems as

required under the terms of the contract; and (vi) failing to comply with directives issued by the construction manager.

161.    As a result of Five Star's material breaches of the Five Star Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

162.    Accordingly, DASNY is entitled to recover from Five Star all additional costs in an amount to be determined at trial arising from Five Star's breach of contract.

### AS AND FOR A SIXTEENTH CLAIM FOR RELIEF: DEFENDANT FIVE STAR

163.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 162 above, with the same force and effect as though fully set forth at length herein.

164.    Article 9, Section 9.01 of the General Conditions of the Five Star Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

165.    Five Star failed to complete its work in the time required by the Five Star Contract.

166.    As a result of Five Star's delay, other contractors on the Project incurred delays.

167.   As a result of Five Star's material breaches of its obligations under the Five Star Contract, DASNY is entitled to recover from Five Star liquidated damages in an amount to be determined at trial.

### AS AND FOR A SEVENTEENTH CLAIM FOR RELIEF: DEFENDANT FIVE STAR

168.   DASNY repeats and realleges the allegations contained in Paragraphs 1 through 167 above, with the same force and effect as though fully set forth at length herein.

169.   In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Five Star, together with the costs and disbursements of this action, to the extent such damages were caused by Five Star's acts and omissions.

### AS AND FOR A EIGHTEENTH CLAIM FOR RELIEF: DEFENDANT HERITAGE

170.   DASNY repeats and realleges the allegations contained in Paragraphs 1 through 169 above, with the same force and effect as though fully set forth at length herein.

171.   Pursuant to the Heritage Contract, Heritage agreed to complete, in a good, workmanlike manner, all work required by the Heritage Contract.

172.   Heritage failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Heritage Contract.

173.   Heritage breached the Heritage Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of

other contractors on the Project; (v) failing to diligently maintain and protect its work as required by the contract; and (vi) failing to comply with directives issued by the construction manager.

174.    As a result of Heritage's material breaches of the Heritage Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

175.    Accordingly, DASNY is entitled to recover from Heritage all additional costs in an amount to be determined at trial arising from Heritage's breach of contract.

## AS AND FOR A NINETEENTH CLAIM FOR RELIEF: DEFENDANT HERITAGE

176.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 175 above, with the same force and effect as though fully set forth at length herein.

177.    Article 9, Section 9.01 of the General Conditions of the Heritage Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

178.    Heritage failed to complete its work in the time required by the Heritage Contract.

179.    As a result of Heritage's delay, other contractors on the Project incurred delays.

180.    As a result of Heritage's material breaches of its obligations under the Heritage Contract, DASNY is entitled to recover from Heritage liquidated damages in an amount to be determined at trial.

## AS AND FOR A TWENTIETH CLAIM FOR RELIEF: DEFENDANT HERITAGE

181.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 180 above, with the same force and effect as though fully set forth at length herein.

182.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Heritage, together with the costs and disbursements of this action, to the extent such damages were caused by Heritage's acts and omissions.

## AS AND FOR A TWENTY-FIRST CLAIM FOR RELIEF: DEFENDANT O'KANE

183.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 182 above, with the same force and effect as though fully set forth at length herein.

184.    Pursuant to the O'Kane Contract, O'Kane agreed to complete, in a good, workmanlike manner, all work required by the O'Kane Contract.

185.    O'Kane failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the O'Kane Contract.

186.    O'Kane breached the O'Kane Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of

other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

187.    As a result of O'Kane's material breaches of the O'Kane Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

188.    Accordingly, DASNY is entitled to recover from O'Kane all additional costs in an amount to be determined at trial arising from O'Kane's breach of contract.

## AS AND FOR A TWENTY-SECOND CLAIM
## FOR RELIEF: DEFENDANT O'KANE

189.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 188 above, with the same force and effect as though fully set forth at length herein.

190.    Article 9, Section 9.01 of the General Conditions of the O'Kane Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

191.    O'Kane failed to complete its work in the time required by the O'Kane Contract.

192.    As a result of O'Kane's delay, other contractors on the Project incurred delays.

193.   As a result of O'Kane's material breaches of its obligations under the Heritage Contract, DASNY is entitled to recover from O'Kane liquidated damages in an amount to be determined at trial.

### AS AND FOR A TWENTY-THIRD CLAIM
### FOR RELIEF: DEFENDANT O'KANE

194.   DASNY repeats and realleges the allegations contained in Paragraphs 1 through 193 above, with the same force and effect as though fully set forth at length herein.

195.   In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against O'Kane, together with the costs and disbursements of this action, to the extent such damages were caused by O'Kane's acts and omissions.

### AS AND FOR A TWENTY-FOURTH CLAIM
### FOR RELIEF: DEFENDANT PYRAMID

196.   DASNY repeats and realleges the allegations contained in Paragraphs 1 through 195 above, with the same force and effect as though fully set forth at length herein.

197.   Pursuant to the Pyramid Contract, Pyramid agreed to complete, in a good, workmanlike manner, all work required by the Pyramid Contract.

198.   Pyramid failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Pyramid Contract.

199.   Pyramid breached the Pyramid Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia,* (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of

other contractors on the Project; (v) abandoning work on the Project; (and (vi) failing to comply with directives issued by the construction manager.

200.    As a result of Pyramid's material breaches of the Pyramid Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

201.    Accordingly, DASNY is entitled to recover from Pyramid all additional costs in an amount to be determined at trial arising from Pyramid's breach of contract.

## AS AND FOR A TWENTY-FIFTH CLAIM
## FOR RELIEF:  DEFENDANT PYRAMID

202.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 201 above, with the same force and effect as though fully set forth at length herein.

203.    Article 9, Section 9.01 of the General Conditions of the Pyramid Contract ("Time of Completion") states, in relevant part, as follows:

> D.      If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.   Default shall include abandonment of the Work by the Contractor.

204.    Pyramid failed to complete its work in the time required by the Pyramid Contract.

205.    As a result of Pyramid's delay, other contractors on the Project incurred delays.

206.    As a result of Pyramid's material breaches of its obligations under the Heritage Contract, DASNY is entitled to recover from Pyramid liquidated damages in an amount to be determined at trial.

## AS AND FOR A TWENTY-SIXTH CLAIM
## FOR RELIEF: DEFENDANT PYRAMID

207.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 206 above, with the same force and effect as though fully set forth at length herein.

208.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Pyramid, together with the costs and disbursements of this action, to the extent such damages were caused by Pyramid's acts and omissions.

## AS AND FOR A TWENTY-SEVENTH CLAIM
## FOR RELIEF: DEFENDANT SMI-OWEN

209.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 208 above, with the same force and effect as though fully set forth at length herein.

210.    Pursuant to the SMI-Owen Contract, SMI-Owen agreed to complete, in a good, workmanlike manner, all work required by the SMI-Owen Contract.

211.    SMI-Owen failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the SMI-Owen Contract.

212.    SMI-Owen failed to provide sufficient number of qualified labor on the Project.

213.    SMI-Owen breached the SMI-Owen Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the

work of other contractors on the Project; (iv) delaying completion of its work and the work of other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

214.    As a result of SMI-Owen's material breaches of the SMI-Owen Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

215.    Accordingly, DASNY is entitled to recover from SMI-Owen all additional costs in an amount to be determined at trial arising from SMI-Owen's breach of contract.

## AS AND FOR A TWENTY-EIGHTH CLAIM FOR RELIEF: DEFENDANT SMI-OWEN

216.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 215 above, with the same force and effect as though fully set forth at length herein.

217.    Article 9, Section 9.01 of the General Conditions of the SMI-Owen Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

218.    SMI-Owen failed to complete its work in the time required by the SMI-Owen Contract.

219.    As a result of SMI-Owen's delay, other contractors on the Project incurred delays.

220.    As a result of SMI-Owen's material breaches of its obligations under the SMI-Owen Contract, DASNY is entitled to recover from SMI-Owen liquidated damages in an amount to be determined at trial.

### AS AND FOR A TWENTY-NINTH CLAIM FOR RELIEF: DEFENDANT SMI-OWEN

221.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 220 above, with the same force and effect as though fully set forth at length herein.

222.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against SMI-Owen, together with the costs and disbursements of this action, to the extent such damages were caused by SMI-Owen's acts and omissions.

### AS AND FOR A THIRTIETH CLAIM FOR RELIEF: DEFENDANT CNA

223.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 222 above, with the same force and effect as though fully set forth at length herein.

224.    Pursuant to the Takeover Agreement, CNA agreed to complete, in a good, workmanlike manner, all work required by the SMI-Owen Contract.

225.    CNA failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the SMI-Owen Contract.

226.    CNA failed to provide sufficient number of qualified labor on the Project.

227.    CNA breached the Takeover Agreement SMI-Owen Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of

its work and the work of other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

228.    As a result of CNA's material breaches of the Takeover Agreement SMI-Owen Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

229.    Accordingly, DASNY is entitled to recover from CNA all additional costs in an amount to be determined at trial arising from CNA's breach of contract.

### AS AND FOR A THIRTY-FIRST CLAIM FOR RELIEF: DEFENDANT CNA

230.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 229 above, with the same force and effect as though fully set forth at length herein.

231.    Article 9, Section 9.01 of the General Conditions of the SMI-Owen Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

232.    CNA failed to complete its work in the time required by the SMI-Owen Contract.

233.    As a result of CNA'S delay, other contractors on the Project incurred delays.

38

234.    As a result of CNA'S material breaches of its obligations under the SMI-Owen Contract, DASNY is entitled to recover from CNA liquidated damages in an amount to be determined at trial.

## AS AND FOR A THIRTY-SECOND CLAIM FOR RELIEF: DEFENDANT CNA

235.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 234 above, with the same force and effect as though fully set forth at length herein.

236.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against CNA, together with the costs and disbursements of this action, to the extent such damages were caused by CNA'S acts and omissions.

## AS AND FOR A THIRTY-THIRD CLAIM FOR RELIEF: DEFENDANT STONEWALL

237.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 236 above, with the same force and effect as though fully set forth at length herein.

238.    Pursuant to the Stonewall Contract, Stonewall agreed to complete, in a good, workmanlike manner, all work required by the Stonewall Contract.

239.    Stonewall failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Stonewall Contract.

240.    Stonewall breached the Stonewall Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents; (ii) performing defective work; (iii) failing to properly coordinate its work with the work of other contractors on the Project; (iv) delaying completion of its work and the work of

other contractors on the Project; and (v) failing to comply with directives issued by the construction manager.

241.    As a result of Stonewall's material breaches of the Stonewall Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

242.    Accordingly, DASNY is entitled to recover from Stonewall all additional costs in an amount to be determined at trial arising from Stonewall's breach of contract.

## AS AND FOR A THIRTY-FOURTH CLAIM
## FOR RELIEF: DEFENDANT STONEWALL

243.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 242 above, with the same force and effect as though fully set forth at length herein.

244.    Article 9, Section 9.01 of the General Conditions of the Stonewall Contract ("Time of Completion") states, in relevant part, as follows:

> D.    If the Contractor shall neglect, fail or refuse to complete the Work within the time specified, or any proper extension thereof granted by the Owner, the Contractor agrees to pay the Owner for loss of beneficial use of the structure an amount specified in the Contract, not as a penalty, but as liquidated damages, for each and every calendar day that the Contractor is in default.    Default shall include abandonment of the Work by the Contractor.

245.    Stonewall failed to complete its work in the time required by the Stonewall Contract.

246.    As a result of Stonewall's delay, other contractors on the Project incurred delays.

247.    As a result of Stonewall's material breaches of its obligations under the Stonewall Contract, DASNY is entitled to recover from Stonewall liquidated damages in an amount to be determined at trial.

## AS AND FOR A THIRTY-FIFTH CLAIM FOR RELIEF: DEFENDANT STONEWALL

248.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 247 above, with the same force and effect as though fully set forth at length herein.

249.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Stonewall, together with the costs and disbursements of this action, to the extent such damages were caused by Stonewall's acts and omissions.

## AS AND FOR A THIRTY-SIXTH CLAIM FOR RELIEF: DEFENDANT TRACTEL

250.    DASNY repeats and realleges the allegations contained in Paragraphs 1 through 249 above, with the same force and effect as though fully set forth at length herein.

251.    Pursuant to the Tractel Contract, Tractel agreed to complete, in a good, workmanlike manner, all work required by the Tractel Contract.

252.    Tractel failed to progress the work in a timely manner and failed to perform in a good, workmanlike manner as required by the Tractel Contract.

253.    Tractel breached the Tractel Contract by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of the contract, by, *inter alia*, (i) delaying completion of the work of other contractors on the Project; and (ii) failing to comply with directives issued by the construction manager.

254.    As a result of Tractel's material breaches of the Tractel Contract, DASNY incurred significant additional expenses in connection with the completion of the Project.

255. Accordingly, DASNY is entitled to recover from Tractel all additional costs in an amount to be determined at trial arising from Tractel's breach of contract.

## AS AND FOR A THIRTY-SEVENTH CLAIM
## FOR RELIEF: DEFENDANT TRACTEL

256. DASNY repeats and realleges the allegations contained in Paragraphs 1 through 255 above, with the same force and effect as though fully set forth at length herein.

257. In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Tractel, together with the costs and disbursements of this action, to the extent such damages were caused by Tractel's acts and omissions.

## AS AND FOR A THIRTY-EIGHTH CLAIM
## FOR RELIEF: DEFENDANT RVA

258. DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 257 above, with the same force and effect as though fully set forth at length herein.

259. Upon information and belief, RVA engaged subcontractors and subconsultants to carry out certain work related to RVA's duties under the RVA Contract.

260. RVA was fully responsible for the work of its subcontractors and subconsultants and was obligated to ensure that all work performed by its subcontractors and subconsultants was in compliance with the RVA Contract.

261. RVA breached the RVA Contract by failing to complete and properly perform the work required under the contract by, *inter alia*, (i) failing to perform its work in accordance with the contract documents, (ii) failing to provide adequate designs for the Project; (iii) failing to properly supervise the subcontractors and subconsultants it retained with regard to the Project, (iv) failing to monitor the overall progress on the Project to ensure that work was

being completed properly and in substantial compliance with the design recommendations, specifications and their intent; (v) failing to timely and adequately respond to requests for information; .and (vi) failing to ascertain that certain design changes proposed by other contractors were inadequate.

262.    As a result of RVA's material breaches of the RVA Contract, DASNY has incurred and will continue to incur significant additional expenses in connection with the completion of the Project.

263.    Accordingly, DASNY is entitled to recover from RVA all additional costs in an amount to be determined at trial arising from RVA's breach of contract.

## AS AND FOR A THIRTY-NINTH CLAIM FOR RELIEF: DEFENDANT RVA

264.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 263 above, with the same force and effect as though fully set forth at length herein.

265.    RVA failed to comply with professional standards of care in that RVA, by, *inter alia*, (i) failing to perform its work in accordance with the contract documents, (ii) failing to provide adequate designs for the Project; (iii) failing to properly supervise the subcontractors and subconsultants it retained with regard to the Project, (iv) failing to monitor the overall progress on the Project to ensure that work was being completed properly and in substantial compliance with the design recommendations, specifications and their intent; (v) failing to ascertain that certain design changes proposed by other contractors were inadequate; (vi) failing to timely and adequately respond to requests for information; and (vii) failing to use due and reasonable care in a manner consistent with applicable professional standards, customs and practices.

266.    As a result of RVA's failure to perform in accordance with widely-accepted standards and practices in its profession, DASNY has incurred and will continue to incur significant additional expenses to complete the Project that DASNY would not have incurred absent such negligence.

267.    Accordingly, DASNY is entitled to recover additional costs in an amount to be determined at trial based on RVA's acts and omissions.

## AS AND FOR A FORTIETH CLAIM FOR RELIEF: DEFENDANT RVA

268.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 267 above, with the same force and effect as though fully set forth at length herein.

269.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against RVA under the principles of implied and/or common law indemnification and contribution, together with the costs and disbursements of this action, as such damages were caused by RVA's acts and omissions.

## AS AND FOR A FORTY-FIRST CLAIM FOR RELIEF: DEFENDANT BOVIS

270.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 269 above, with the same force and effect as though fully set forth at length herein.

271.    Pursuant to the Bovis Contracts, Bovis agreed to complete, in a good, workmanlike manner, all work required by the Bovis Contracts.

272.    Bovis failed to timely progress the Project, and to coordinate

273.    Bovis failed to properly staff the Project with competent and adequately-trained personnel.

44

274.    Bovis breached the Bovis Contracts by failing to complete the work it was required to perform under the contract in a timely manner and in accordance with the terms of its contracts, by, *inter alia*, (i) failing to properly coordinate the work of contractors and subcontractors on the Project; (ii) failing to properly coordinate its work with the work of other contractors on the Project; (iii) failing to detect defective work; (iv) delaying completion of the Project by drafting unreasonable and incomprehensible construction schedules; (v) failing to timely review and appropriately approve certain payment requests; (vi) failing to retain qualified personnel; and (vii) failing to create an overall construction plan that would ensure timely completion of the Project.

275.    As a result of Bovis' material breaches of the Bovis Contracts, DASNY has incurred and will continue to incur significant additional expenses in connection with the completion of the Project.

276.    Accordingly, DASNY is entitled to recover from Bovis additional costs in an amount to be determined at trial arising from Bovis' breach of contract.

## AS AND FOR A FORTY-SECOND CLAIM
## FOR RELIEF: DEFENDANT BOVIS

277.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 276 above, with the same force and effect as though fully set forth at length herein.

278.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Bovis, together with the costs and disbursements of this action, to the extent such damages were caused by Bovis' acts and omissions.

## AS AND FOR A FORTY-THIRD CLAIM FOR RELIEF: DEFENDANT FUTURE TECH

279.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 278 above, with the same force and effect as though fully set forth at length herein.

280.    Pursuant to the Future Tech Contract, Future Tech agreed to complete, in a good, workmanlike manner, all work required by the Future Tech Contract.

281.    Future Tech breached the Future Tech Contract by failing to perform its work in accordance with the Future Tech Contract by, *inter alia*, (i) failing to monitor and inspect concrete pours in the underground parking garage and (ii) failing to monitor and inspect rebar installation in the underground parking garage.

282.    As a result of Future Tech's material breaches of the Future Tech Contract, DASNY has incurred and will continue to incur significant additional expenses in connection with the completion of the Project.

283.    Accordingly, DASNY is entitled to recover from Future Tech additional costs in an amount to be determined at trial arising from Future Tech's breach of contract.

## AS AND FOR A FORTY-FOURTH CLAIM FOR RELIEF: DEFENDANT FUTURE TECH

284.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 283 above, with the same force and effect as though fully set forth at length herein.

285.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against Future Tech under the principles of implied or common law indemnification, together with the costs and disbursements of this action, as such damages were directly caused by Future Tech's acts and omissions.

46

### AS AND FOR A FORTY-FIFTH CLAIM FOR RELIEF: DEFENDANT MTL

286.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 285 above, with the same force and effect as though fully set forth at length herein.

287.    MTL breached the MTL contract by, *inter alia*, (i) failing to advise DASNY of certain welding defects in relation to the canopy.

288.    As a result of MTL's material breaches of the MTL Contract, DASNY has incurred and will continue to incur significant additional expenses in connection with the completion of the Project.

289.    Accordingly, DASNY is entitled to recover from MTL additional costs in an amount to be determined at trial arising from MTL's breach of contract.

### AS AND FOR A FORTY-SIXTH CLAIM FOR RELIEF: DEFENDANT MTL

290.    DASNY repeats and realleges each and every allegation contained in Paragraphs 1 through 289 above, with the same force and effect as though fully set forth at length herein.

291.    In the event that DASNY is found liable for any damages to any party, DASNY demands judgment in the same amount against MTL under the principles of implied or common law indemnification and/or contribution, together with the costs and disbursements of this action, as such damages were directly caused by MTL's acts and omissions.

### JURY DEMAND

292.    DASNY hereby demands a jury trial as to all issues of this suit.

## CONCLUSION

**WHEREFORE**, Fourth-Party Defendant and Fifth-Party Plaintiff Dormitory Authority of the State of New York respectfully prays that the Court grant judgment against Fifth-Party Defendants as prayed for above, together with interest thereon, plus the costs and disbursements of this action, and such other and further relief as the Court may deem appropriate.

Dated:          New York, New York
                July 9, 2008


                          MICHAEL A. CARDOZO
                          Corporation Counsel of the
                            City of New York
                          Attorney for the Dormitory Authority
                            of the State of New York
                          100 Church Street, Room 3-241
                          New York, New York 10007
                          (212) 788-1185


                    By: _____
                          EDWIN M. LEVY (EL-7792)
                          Assistant Corporation Counsel

07-CV-10639 (LAK) (AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM A. GROSS CONSTRUCTION
ASSOCIATES, INC.,

Plaintiff,

- against -

AMERICAN MANUFACTURER'S MUTUAL
INSURANCE COMPANY,

Defendant.

And Other Actions.

**FIFTH-PARTY COMPLAINT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Fourth-Party Defendant DASNY*
*100 Church Street, Room 3-122*
*New York, N.Y. 10007*

*Of Counsel: Edwin M. Levy*
*Tel: (212)788-1185*

*LM No. 2007-038373*

*Due and timely service is hereby admitted.*

*New York, N.Y. ......................................................, 200......*

*..................................................................................... Esq.*

*Attorney for..........................................................................*