Electronic Filing
ECF 1:07-cv-10639

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WILLIAM A. GROSS CONSTRUCTION                   07-CV-10639-LAK-AJP
ASSOCIATES, INC.,

                            Plaintiff,

             - against -

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                          Defendant.
-----------------------------------------------------------------X
      and successive impleader actions.
-----------------------------------------------------------------X


Memorandum of Law
on behalf of
American Manufacturers Mutual Insurance


ZICHELLO & McINTYRE, LLP
420 Lexington Avenue
New York, NY 10170
Tel. 212-972-5560
E-mail zimc@msn.com

Contents

Authorities   ii

Preliminary Statement   1

Statement of the Case   1

Point I - -   The delay claims entangle all parties.   5

Point II - -   Gross's claims for extras involve DASNY.   8

Point III - -   Gross's contract-balance claim involves DASNY.   10

Point IV - -   "Pay When Paid" is not applicable.   10

Conclusion:   A classic case for impleader.   13

Authorities

Burmar Electrical v. Starrett Bros., 60 AD 2d 561 (1st Dept 1977) . . . . . . . . . . . . . . . . . . 8, 11

Maines Paper v. Losco, 837 NYS2d 345 (3d Dept 2007) . . . . . . . . . . . . . . . . . . . . . . . . 12

Mascioni v. I.B. Miller, 261 NY 1 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Schiavone Const. v. T.B.T.A., 209 AD2d 598 (2d Dept 1994) . . . . . . . . . . . . . . . . . . . . . 6

Schuler-Haas v. Aetna, 49 AD2d 60 (4th Dept 1975) aff'd 40 NY2d 883 (1976) . . . . . . . . 11

Sira v. Morton, 380 F3d 57 (2d Cir 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sturdy v. Nab Const., 65 AD2d 262 (2nd Dept 1978) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Triangle Sheet Metal v. James H. Merritt and Co., 79 NY2d 801 (1991) . . . . . . . . . . 5, 6, 11

West-Fair v. Aetna, 87 NY2d 148 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Preliminary Statement

The Dormitory Authority moves to dismiss or sever the fourth-party complaint against it in this case.

This is submitted in limited opposition, on behalf of the initial defendant, the American Manufacturers Mutual Insurance Company.

For brevity, parties, places and things specific to this case will usually be referred herein to by the same abbreviated designations used in previously filed pleadings -- "DASNY," "American," etc. "Complaint" refers to the plaintiff's Amended Complaint dated December 10, 2007.

The case is at the pleading stage; the pleadings are thus the basic source for the matters related below, in our statement of the case.

## Statement of the Case

This case arises out of a mega ($325 million) project to build a new criminal-court complex in the Bronx.

Built for the state court system, on property of the City of New York, the court complex was a project of the state's Dormitory Authority, or "DASNY."[1]

As "project owner," or contractee, DASNY retained the project's architects, construction managers, and no fewer than 17 separate prime contractors.

One of these prime contractors was the Cauldwell Wingate Company, and one Cauldwell's subcontractors was the William A. Gross Construction Company. Gross

---

[1] So named because established to build dormitories for the post-war influx of college students under the G.I. Bill, the "Dormitory" Authority has expanded its scope over the years, but keeps its original name.

is the plaintiff here.

Gross filed this action against Cauldwell's payment-bond surety, American. There is diversity jurisdiction because Gross is incorporated and headquartered in New York; American, in Illinois.

On its part, American filed a third-party complaint against Cauldwell. Cauldwell in turn filed a "fourth-party" complaint, against DASNY. And DASNY has now filed a "fifth-party" complaint against the project's architects, one of DASNY's construction managers, and several of DASNY's other prime contractors.

Gross's claims, totaling all together about $2.6 million, comprise claims for "delay damages," for "extras," and for "unpaid contract balance."

Defenses to Gross's claims include the following:

- There is no balance due Gross because any accrued charges are more than offset by backcharges and reductions imposed by DASNY.

- Payment to Gross for "extras" is not due unless and until the items in question are recognized as true extras by the project owner, namely, DASNY.

- Cauldwell is not legally liable to Gross for delay damages caused by DASNY (or its architects, or construction managers, or other contractors, over whom Cauldwell has no control) except to the extent Cauldwell recovers such damages from DASNY.

Those defenses were stated explicitly and with particularity in American's answer to Gross' complaint. (Answer p. 2)

Gross's claims - - for delay, for extras, for alleged unpaid contract balance - -

2

which Gross asserts against American, as Cauldwell's surety, are the gist of American's claim-over against Cauldwell, which is based on written indemnity agreements and the law of suretyship, and which is set forth in American's third-party complaint. (pp. 2-4)

By "fourth-party" complaint, Cauldwell brings DASNY into the case, contending DASNY is or may be liable to Cauldwell for all or part of Gross's claims, and thereby seeking an adjudication - - once and for all - - concerning delay damages, concerning whether the claimed "extras" truly are extras, and concerning the backcharges and reductions imposed by DASNY but disputed by Gross. (Cauldwell Forth-Party Complaint pp. 3 et seq.)

Gross's claims thus proceed along a straight axis - - from Gross to American to Cauldwell to DASNY.

Cauldwell does not simply relay Gross's claims, however. Cauldwell's fourth-party complaint against DASNY seeks considerably more money than is sought by Gross. Some of the increase presumably reflects Cauldwell's portion of the same extras claimed by Gross. Cauldwell also adds claims of its own, for delay damages, and claims on behalf of its other subcontractors.

Joinder of such additional claims is proper under Rule 18, procedurally. Jurisdictionally, Cauldwell invokes supplemental jurisdiction, under 28 USC 1367, on the ground that all the claims share a common core of operative facts.

The common denominator of the delay claims is readily apparent from the pleadings: the same allegedly inadequate plans, the same allegedly inept project management, the same project delays attributed to various other contractors.

Complete commonality, for each and every item of the other claims - - for

3

extras, for disputed backcharges - - however, is perhaps not immediately clear from the face of the pleadings.

At the pleading stage, we cannot tell for sure whether, for instance, some of the same changes directed by DASNY caused extra work for others, besides Gross and Cauldwell itself, or maybe even contributed to some of the delays.

As to the backcharges and deductions, there is a further wrinkle. Cauldwell's position is that, while disputing the dollar amounts taken by DASNY, Cauldwell has debited against Gross those backcharges and deductions properly applicable to Gross. But Gross says otherwise. Gross says Gross has already "equitably credited" to Cauldwell the value of contract work deleted by DASNY. However, Gross does not deny there were such deletions, by DASNY, and price deductions, by DASNY.

As for DASNY, DASNY's answer denies all liability on DASNY's part, for any of the claims made against DASNY.

Furthermore, DASNY's answer (¶ 211 p 29) explicitly adopts defenses pleaded to Gross's claims by American. Under Rule 14, DASNY has every right to do so, as a later-impleaded defendant. Those very defenses, however, link Gross's claims to DASNY - - for delays, for extras, for retainage and allegedly unpaid contract balances. (See American's Answer p. 2)

Nevertheless, DASNY's pleading-stage motion belittles such linkage; DASNY contends there is not sufficient commonality. DASNY predicts that, if the case goes forward as currently configured, common issues will not "predominate."

On that line of argument, DASNY urges a dismissal or severance of Cauldwell's fourth-party complaint against DASNY, in toto, including as to the original

Gross claims, which DASNY says are not strongly linked to the other claims it would dismiss.

In other words, while DASNY's whole argument is premised on a supposed lack of commonality - - lack of a sufficient nexus between the original claims, by Gross, and the added amounts sought by Cauldwell - - DASNY nevertheless wants them all lumped together, and all thrown out, as a package.

To the extent DASNY seeks to get rid of the original claims-over - - the claims which start with Gross and proceed along the axis of impleaders to DASNY - - American opposes, for the reasons which follow.

### Point I

### The Delay Claims Entangle All Parties

Under New York law, a claim for damages for project delays made by a subcontractor (like Gross here) against a prime contractor (like Cauldwell) is not a viable claim. See Triangle Sheet Metal v. James H. Merritt and Co., 79 NY2d 801 (1991).

The rationale is that the prime cannot be held responsible for delays caused by those over whom the prime has no control - - like the owner, or other contractors, or the architects, or the owner's construction manager. See Triangle, 79 NY2d at 802-803.

The rationale applies par excellence to a project such as is involved in this case - - with no fewer than 17 separate prime contractors, two construction managers, outside architects, engineers, and consultants.

In such a case the prime is not liable to suit by the sub at all. This is not a

5

situation where "first instance" liability can be imposed on the prime, who is then relegated to chasing after the owner. The suit by the sub is dismissible. See <u>Triangle</u>, 79 NY2d at 802.

But there is an exception. The sub's claims can survive to the extent the prime has undertaken to assert them as "pass-through" claims against the owner. See <u>Schiavone Const. v. T.B.T.A.</u>, 209 AD2d 598 (2d Dept 1994). That is exactly what Cauldwell's claim-over against DASNY seeks to do.

And, unless Cauldwell can do so, Gross gets nothing, under the Triangle Sheet Metal case.

Reinforcing Triangle, the Gross-Cauldwell subcontract explicitly provides (art. 5.3):

> Where such delays are caused by the Owner, except to the extent any costs or claim for such delays are recognized and paid by the Owner under the Contract, the extension of time granted shall be Subcontractor's sole remedy.[2]

So it comes down to two choices here: either dismiss Gross's delay claim or allow Cauldwell to assert pass-through claims for Gross, against DASNY.

Naturally, we are talking here of project delays attributable to the project owner DASNY, or attributable to those for whom DASNY is answerable, for example, DASNY's construction managers. There can of course be disputes about who is really

---

[2] The Court may consider the subcontract at the pleading stage because it is the foundational document for, and is explicitly invoked in, Gross's pleading. See <u>Sira v. Morton</u>, 380 F3d 57 (2d Cir 2004). A full text copy can be provided if desired.

to blame. There usually are. Project owner (or its minions) ? The prime contractor? The claimant sub itself? And regardless of the culprit, or culprits, there is an overarching issue: Is the delay of a type, and magnitude, such as to be compensable at all? Some delays after all are to be expected on any large multi-faceted project.

This case is no exception when it comes to the "usual suspects."

It seems clear that Gross itself attributes delays to DASNY, or to DASNY's architects and construction managers. To cite but a couple of examples, Gross complains of lack of "design information" and lack of timely data concerning "elevations." (Complaint ¶ 16) Also, though more vaguely, Gross refers to lack of "access" and of "disruptions." (Ibid.)

Nor is Gross the final arbiter of who is to blame.

Regardless of whom Gross fingers, Cauldwell points to DASNY, and DASNY's construction managers, as the real culprits. (Cauldwell Fourth-Party Complaint pp. 22-24)

Then comes DASNY. DASNY begins by completely denying responsibility, or at least by denying legal liability to pay damages. (DASNY Answer ¶¶11-17, 30, 35) But then DASNY goes on to blame its own architects, and its other prime contractors, for delaying the project. (DASNY Fifth-Party Complaint)

The very existence of these disputes - - of all this finger-pointing - - cries out for a comprehensive adjudication, before the same court, in the same case, for all parties, once and for all.

7

Point II

Gross's Claims For Extras Involve DASNY

As with delay damages, much the same can be said of Gross's claims for extras. Here's why.

A "subcontractor," by definition, undertakes to perform a portion of the contract work, that is, a portion of the work called for in the basic contract documents, the project owner's plans and specifications.

It follows that there can be two different kinds of extras for a subcontractor. One is where the portion allocated to the subcontractor is expanded purely as between the sub and prime; there is nothing "extra" to the basic contract work. Two, more commonly, are claims by the sub that it was made to perform work beyond, "extra" to, what was called for in the basic contract documents - - i.e., beyond the original plans and specifications of the project owner.

The latter - - subs's claims for project extras - - are premature unless and until recognized as extras by the project owner. See Burmar Electrical v. Starrett Bros., 60 AD 2d 561 (1st Dept 1977).

Consequently, this is another classic impleader situation.

Put another way, if impleader is denied, Gross's claims for extras have to be dismissed; they are premature.

Consistent with the case law is a clause in the Gross-Cauldwell subcontract which so provides. Article 9.4 provides that Cauldwell can seek extras from DASNY for Gross but that

8

> The Subcontractor shall otherwise be bound by
> the determination of the Owner, and/or its
> Architect . . .

With extras, too, there can be issues of fact. But, again, it seems fairly evident, even at the pleading stage, that at least some of Gross's claims for extras are *contract* extras (not just subcontract extras.) For example, Gross seeks payment for "pending change orders," including for owner changes to "bollards," changes in specified concrete, "revised elevations," and Northside "redesign." (Complaint pp. 5-6) Gross explicitly refers to directions for "CO" (i.e., change order) work issued by one of DASNY's construction managers. (Complaint ¶ 26 p. 8) Such claims undeniably implicate DASNY.

That Cauldwell agrees with Gross as to some of these claims for "extras" does not make Cauldwell a guarantor, without recourse against DASNY. DASNY would not even consider Gross's claims unless Cauldwell endorsed them, and passed them up the line to DASNY. For Gross to turn that endorsement into an unconditional guarantee by Cauldwell is unfair.

It also ignores the quoted subcontract provision, not to mention the customs and practices of the industry.

And, it is contrary to New York law, as exemplified by the Burmar case, cited earlier.

Gross's claims for extras are premature. They cannot be allowed to proceed, unless Cauldwell is allowed to proceed against DASNY for them, as Cauldwell seeks to do with its claims against DASNY. (Cauldwell Fourth-Party Complaint pp. 13-14)

9

Point III

Gross's Contract-Balance Claim Involves DASNY

Gross's contract-balance claim also involves DASNY, but in a different way, or, perhaps more descriptively, in a different direction.

For the claims for extras and delay damages go up the line - - from Gross, through Cauldwell's surety to Cauldwell, through Cauldwell to DASNY. The resolution of Gross's contract-balance claim depends on claims coming from the other direction, down the line - - specifically, backcharges or contract-price reductions imposed by DASNY on Cauldwell, and consequently passed down by Cauldwell to Gross.

Pending resolution (favorable resolution) of these deductions, no money is currently due and payable to Gross according to Cauldwell.

Needless to say, Gross does not agree. Gross disputes these deductions, at least as to amount. Gross admits certain work was deleted. (Gross Complaint ¶ 29) Cauldwell disputes these deductions, too. (Cauldwell Fourth-Party Complaint ¶ 21, pp. 56-70) But that is one of the very reasons for this lawsuit. It is also why impleader of DASNY makes perfect sense, indeed, is essential.

Point IV

"Pay When Paid" Is Not Applicable

None of what is said above runs afoul of New York's nullification of "pay when paid" clauses.

10

"Pay when paid" clauses have long been common in subcontracts. Such clauses are designed to spread the loss, in proportion to the benefits, when the project owner is slow to pay, or a deadbeat, or insolvent. For many years "pay when paid" clauses were enforced in New York. See, e.g., Mascioni v. I.B. Miller, 261 NY 1 (1933). No more.

Starting in 1975 with the Schuler-Haas case, and culminating in 1995 with the West-Fair case, New York courts have come to pronounce "pay when paid" dead letter - - supposedly as against public policy implied by the lien law. See West-Fair v. Aetna, 87 NY2d 148 (1995); Schuler-Haas v. Aetna, 49 AD2d 60 (4th Dept 1975) aff'd 40 NY2d 883 (1976).

Strictly speaking, West-Fair outlaws "pay when paid" only when it would make the subcontractor share the risk that the owner will *never* pay, but not when it merely postpones the *time* of payment. See West-Fair, 87 NY2d at 158. In other words, the prime is not allowed to spread the loss from non-payment, but may spread the burden of slow payment.

More to the point here, New York's hostility to "pay when paid" simply does not apply at all to delay claims. The prime contractor does not implicitly guarantee there will be no delays. Triangle Sheet Metal v. James H. Merritt, 79 NY2d 801 (1991).

Nor to disputed or unapproved extras. See Burmar Electrical v. Starrett Bros., 60 AD2d 561 (1st Dept 1977).

The prime should not be forced to pay the full amount of the sub's claims, and then hope for reimbursement from the owner later on. Sturdy v. Nab Const., 65

11

AD2d 262, 268-269 (2nd Dept 1978). The owner will never pay if it is ultimately determined it was not truly extra work.

Nor does the rule against "pay when paid" apply when there are owner backcharges or deductions for omitted or unsatisfactory work, even when contested by the sub. See <u>Sturdy Concrete v. Nab Construction</u>, 65 AD2d 262, 272-273 (2d Dept 1982).

And the prime contractor's right to withhold retainage from subs is well recognized. See, e.g., <u>Maines Paper v. Losco</u>, 837 NYS2d 345 (3d Dept 2007).

Furthermore, even where the rule against "pay when paid" does apply, it applies only as between the prime (and its surety) and the sub. It does not stop the prime from impleading the delinquent owner, who is or may be liable to the prime for all or part of what the prime may owe the sub.

Nor does the presence of a payment bond alter the analysis.

The payment bond does nothing more than assure payment of what, if anything, is currently due the sub from the principal obligor, the prime contractor.

The payment bond does not cancel the owner's debts.

It is no defense for the owner to say "There's a payment bond. Let the surety pay. Go away, and leave me alone."

Quite to the contrary, the potential liability of the surety and principal obligor to the sub is a perfect basis for a claim-over against the owner.

So it is all related here: claims up the line, for delays and extras; claims down the line, for backcharges and deductions.

12

## Conclusion: A Classic Case for Impleader

All in all, one could not hypothesize a case more appropriate for a chain of successive claim-over impleaders - - to avoid inconsistent results and resolve common issues at the same time, in the same forum, for all interested parties.

Our particular focus here has been the primary claim-over, for the claims originating with the initial plaintiff, Gross. What of the rest? Well, we must say it does all seem inextricable.

It therefore comes as no surprise to learn that - - well before plaintiff Gross filed this lawsuit - - Cauldwell had already presented to DASNY a comprehensive claim, for all the amounts now sought here. (Cauldwell Fourth-Party Complaint, p. 27, ¶ 115) Cauldwell's Fourth-Party Complaint is not some dilatory after-thought.

And Gross is not the "tail wagging the dog," just the first "dog in the fight" to run to the courthouse, and who now wants first dibs on the bone, ahead of all others similarly situated.

Common issues pervade all claims - - alleged inadequacies in the plans, allegedly inept project management, domino delays.

To ignore those common issues and to look instead to dollar amounts, and the seeming disparity between the dollar amounts claimed by Gross for itself - - considered in isolation - - and the *combined* total, of all amounts sought by Cauldwell, for itself and *all* its subs (including Gross), is surely misleading.

And even if one believes the illusory disparity which sees Gross's damages as relatively small, then why rush to treat the lesser injury ahead of the greater? Strange triage.

13

Yes, comprehensive treatment makes for a complex case. Better complex than un-coördinated. Un-coördinated litigation only compounds the miseries from this (allegedly) poorly coördinated project.

Truncating this tightly intertwined dispute is not the answer. There are better devices in this Court's case-management tool-box - - bifurcating liability from damages, perhaps, or, maybe having break-out sessions when it comes to calculating individual damage claims.

But we go beyond our limited involvement; our client is the target only of Gross's claims. In that connection, we respectfully urge the Court not to break the chain of claims-over, from Gross, to our client American, to Cauldwell, to DASNY. Certainly to that extent (and probably beyond) DASNY's motion should be denied.

Dated: New York, NY
       July 21, 2008

                                              Respectfully submitted,

                                              ZICHELLO & McINTYRE, LLP
                                              Attorneys for American Motorists
                                              Insurance Company

                                  By: _____
                                         Vincent J. Zichello (VZ-3487)
                                              Office & P.O. Address
                                              420 Lexington Avenue
                                              New York, NY 10170
                                              Tel 212-972-5560
                                              E-mail zimc@msn.com