ECF CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

WILLIAM A. GROSS CONSTRUCTION   :
ASSOCIATES, INC.,                      :      07-CV-10639 (LAK)(AJP)

                  Plaintiff,      :

                 :

      -against-          :

                 :

AMERICAN MANUFACTURERS MUTUAL   :
INSURANCE COMPANY,           :

            Defendant.     :

-------------------------------------------------------------x

    And successive impleader actions.   :

-------------------------------------------------------------x

## CAULDWELL WINGATE'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP
Attorneys for Third-Party Defendant/
Fourth-Party Plaintiff, Cauldwell Wingate Company, LLC
250 Park Avenue
New York, New York 10177
(212) 907-9600

# TABLE OF CONTENTS

                                                                                        **Page**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF RELEVANT FACTS ..........................................................................4

PROCEDURAL HISTORY...............................................................................................6

THE STANDARD ON A MOTION TO DISMISS .........................................................9

ARGUMENT ...................................................................................................................10

POINT I ...........................................................................................................................10

    THE COURT HAS SUPPLEMENTAL JURISDICTION
    OVER THE CAULDWELL WINGATE COMPLAINT ................................................10

    A.     Introduction.........................................................................................10

    B.     The Claims In The Cauldwell Wingate Complaint
           Form Part Of The Same Case Or Controversy
           As Those In The Gross Complaint.......................................................12

    C.     The Claims In The Cauldwell Wingate Complaint Do Not
           Predominate Over Those In The Gross Complaint..............................14

    D.     There Is No Basis For
           Remand To State Court.......................................................................23

POINT II...........................................................................................................................25

    THE FOURTH-PARTY ACTION
    SHOULD NOT BE SEVERED OR TRIED
    SEPARATELY FROM THE MAIN ACTION ..............................................................25

CONCLUSION.................................................................................................................28

# TABLE OF AUTHORITIES

**Page**

Cases

*Akwesi v. Uptown Lube & C/W, Inc.,*
No. 07 Civ. 335 (NRB), 2007 WL 4326732 (S.D.N.Y. Dec. 3, 2007) .......... 14, 18, 23, 24

*Ansoumana v. Gristede's Operating Corp.,*
201 F.R.D. 81 (S.D.N.Y. 2001) ..................................................................................... 15

*AT&T Corp. v. New York City Health and Hosp. Corp.,*
72 F. Supp. 2d 398 (S.D.N.Y. 1999) ............................................................................. 20

*Borough of W. Mifflin v. Lancaster,*
45 F.3d 780 (3d Cir. 1995) ............................................................... 15, 16, 18, 22, 23

*Burmar Elec. v. Starrett Bros.,*
60 A.D.2d 561, 400 N.Y.S.2d 346 (1st Dep't 1977) ....................................................... 21

*CCC Ins. Co., Ltd. v. Brooklyn Hosp. Ctr.,*
No. 03 Civ. 3093 (TPG), 2004 WL 1191980 (S.D.N.Y. May 28, 2004) ........ 12, 18, 19-20

*Colonomos v. Ritz-Carlton Hotel Co., LLC,*
No. 98 Cv 2633 (RCC), 2002 WL 732113 (S.D.N.Y. April 25, 2002)..................... 26, 27

*Dunlop v. City of New York,*
No. 06-cv-433 (KMK) JCF, 2006 WL 2853972 (S.D.N.Y. Oct. 4, 2006)..................... 15

*Estate of Bruce v. City of Middletown,*
781 F. Supp. 1013 (S.D.N.Y. 1992) .......................................................................... 12, 14

*Feinberg v. Katz,*
No. 99 Civ. 0045 (CSH), 2005 WL 2990633 (S.D.N.Y. Nov. 7, 2005) .......................... 18

*F.T.C. v. Crescent Publ'g Group, Inc.*
129 F. Supp. 2d 311 (S.D.N.Y. 2001) (Kaplan, J.) ........................................................ 11

*German v. Fed. Home Loan Mortgage Corp.,*
896 F.Supp. 1385 (S.D.N.Y. 1995) ......................................................................... 25, 27

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
510 F. Supp. 2d 299 (S.D.N.Y. 2007) ........................................................................... 15

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
140 F.3d 442 (2d Cir. 1998) ......................................................................................... 11

*Jones v. Ford Motor Credit Co.*,
   358 F.3d 205 (2d Cir. 2004) ....................................................................... 15

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986) ..................................................................... 10

*Katsaros v. Cody*,
   744 F.2d 270 (2d Cir. 1984) ....................................................................... 27

*Krause v. Forex Exch.*,
   356 F. Supp. 2d 332 (S.D.N.Y. 2005) ........................................................ 23

*McConnell v. Costigan*,
   No. 00 Civ. 45989 (SAS), 2000 WL 1716273 (S.D.N.Y. Nov. 16, 2000) ................ 19, 21

*MMT Sales, Inc. v. Channel 53, Inc., WPGH Div.*,
   No. 92 Civ. 7207 (SS), 1993 WL 541242 (S.D.N.Y. Dec. 27, 1993) ............... 18

*OccuNomix Int'l LLC v. N. Ocean Ventures, Inc.*,
   No. 03 Civ. 6047 (GEL), 2003 WL 22240660 (S.D.N.Y. Sept. 30, 2003) ................ 20-21

*O'Mahony v. Accenture Ltd.*,
   537 F. Supp. 2d 506 (S.D.N.Y. 2008) ........................................................ 10

*Rothberg v. Chloe Foods Corp.*,
   No. CV-06-5712 (CPS), 2007 WL 2128376 (E.D.N.Y. July 25, 2007).................... 15, 19

*SST Global Tech., LLC v. Chapman*,
   270 F. Supp. 2d 444 (S.D.N.Y. 2003) ................................................ 16, 18, 19

*State of New York v. Philip Morris*,
   No. 97 Civ. 794 (LMM), 1998 WL 2574 (S.D.N.Y. Jan. 5, 1998) ........................... 22, 23

*Treglia v. Town of Manlius*,
   313 F.3d 713 (2d Cir. 2002) ....................................................................... 11

*Triangle Sheet Metal v. James H. Meritt*,
   79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991)..................................................... 21

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715, 86 S.Ct. 1130 (1966) ................................................... 1, 15, 24

*United States v. Stein*,
   No. 06-4358-Cv., 2007 WL 91350 (S.D.N.Y. Jan. 8, 2007) (Kaplan, J.) ........................ 12

*WTC Captive Ins. Co., Inc. v. Liberty Mut. Fire Ins. Co.,*
    537 F. Supp. 2d 619 (S.D.N.Y. 2008) ............................................................... 12

<u>Other Authorities</u>

28 U.S.C. § 1367(a) ...............................................................................10, 12, 24

28 U.S.C. § 1367(c) ...........................................1, 3, 11, 12, 15, 16, 18

Fed. R. Civ. P. 12(b) ................................................................................... 9

Fed. R. Civ. P. 14(a) ................................................................................. 25

Fed. R. Civ. P. 42(b) ................................................................................. 25

287790_1/00926-0053

## PRELIMINARY STATEMENT

Cauldwell Wingate Company, LLC ("Cauldwell Wingate") respectfully submits this memorandum of law in opposition to the motion of Dormitory Authority - State of New York ("DASNY") to dismiss Cauldwell Wingate's Fourth-Party Complaint (the "Cauldwell Wingate Complaint") or, alternatively, to sever it from the first and third-party actions and for a stay pending resolution of those actions (the "Motion").

The Motion is based on 28 U.S.C. § 1367(c)(2), and challenges this Court's supplemental jurisdiction. The standard for deciding whether to exercise supplemental jurisdiction derives from the landmark case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966), and is based on ensuring that the values of economy, convenience, fairness and comity are satisfied.

The Motion does not address any of these values in a meaningful way. As we show in detail below, all of the *Gibbs* factors favor the exercise of supplemental jurisdiction here.

The amended First-Party Complaint of William A. Gross Construction Associates, Inc. (the "Gross Complaint") and the Cauldwell Wingate Complaint arise from the same nucleus of facts: a large construction project that was so riddled with design defects, delays and cost overruns that the "Owner" -- DASNY -- has now seen fit to sue virtually every one of its contractors and other agents in its recently filed Fifth-Party Complaint (the "DASNY Complaint"). Both the Gross and Cauldwell Wingate Complaints are replete with similar allegations of poor design and mismanagement, as well as disputed extra work orders and back charges.

As counsel for both Gross and DASNY have acknowledged, the adjudication of Gross's and Cauldwell Wingate claims will require the same proof. And, indeed, Gross may not prevail

on its delay and extra work claims unless Cauldwell Wingate prevails on its similar claims. Judicial economy and convenience can thus only be served if these cases are tried together.

Nor would it be fair to Cauldwell Wingate at this juncture to have its complaint dismissed or severed. Cauldwell Wingate has proceeded promptly and in good faith in this action, while DASNY has delayed at every turn. From the outset, DASNY sought an unusually long time to answer. It then sought additional time to move to dismiss, in part because of its alleged "discovery" of a release which its counsel represented would form the centerpiece of a motion to dismiss. Despite the admonitions of both Judge Kaplan and Judge Peck that discovery would not abide an answer or motion by DASNY, and despite Judge Peck's specific admonition that DASNY should make its motion sooner than the adjourn date or run the risk of it becoming stale or moot, DASNY sought repeated adjournments and took three months just to make the Motion, which then was not even based on the release.

DASNY also repeatedly indicated that it knew it would have to sue additional parties in connection with the same construction project, yet took over three months finally to file the DASNY Complaint in this Court.

While all of this played out, Cauldwell Wingate and the other parties -- including DASNY -- proceeded with discovery. Indeed, Cauldwell Wingate has already incurred hundreds of thousands of dollars of costs in order to prepare its document and e-mail production. Its counsel has participated in meetings and conference calls and has exchanged literally hundreds of e-mails with counsel for the other parties to ensure compliance with their particular discovery-related needs and the Court's directives. It would be patently unfair to Cauldwell Wingate at this point to have to start all over again in state court against DASNY, while simultaneously defending the first and third-party actions in this Court.

Nor would it be fair to reward DASNY for forum shopping. DASNY's decision not to move on the basis of the alleged release was clearly influenced by Judge Peck's admonition that he would recommend denying the motion with respect to the release, because DASNY had delayed for so long in making it. Rather than face that eventuality, DASNY apparently is seeking yet another forum -- *i.e.*, state court -- in which it can seek to raise the release issue.

DASNY also suggests that the first and third-party actions will be much simpler to resolve, perhaps even on summary judgment, because Cauldwell Wingate has already admitted liability for Gross's claims. Nothing could be further from the truth. While Cauldwell Wingate has not yet had to address Gross's allegations directly, because it was brought in on a third-party action, we show below that those claims involve numerous disputed factual issues, which Cauldwell Wingate can and will defend vigorously.

Accordingly, the purpose of comity also will not be served should the Motion be granted. There would then be two actions, in two different courts, with the same set of facts and the same witnesses, with the very real danger of inconsistent verdicts. The only advantage in such a scenario would be to DASNY, affording it yet further delay.

In short, DASNY has failed to satisfy its burden of showing how the very narrow exception afforded by § 1367(c)(2) applies here. Indeed, it has failed to identify a single advantage in proceeding with the fourth-party action in state court rather than federal court. For all of the reasons explained below, both the facts of this case and applicable law warrant the exercise of supplemental jurisdiction.

## STATEMENT OF RELEVANT FACTS

This action arises from a construction contract that DASNY awarded to Cauldwell Wingate in December 2002. Cauldwell Wingate was one of 17 individual prime contractors hired by DASNY to build the new Bronx County Criminal Court Complex (the "BCC"), consisting of a courthouse, a jury assembly building and a garage/plaza area. (Declaration of Edwin M. Levy, dated June 13, 2008 (the "Levy Decl."), Ex. A, ¶¶ 4-5.) The original budget for the entire project (the "BCC Project" or the "Project") was $325 million, of which Cauldwell Wingate's contract was $47 million. (Levy Decl., Ex. A, ¶¶ 4, 6; Affidavit of Patricia Hewitt, dated July 21, 2008 (the "Hewitt Aff."), Ex. H, ¶ 28). It is believed that the cost overruns on the Project totaled at least $100 million. (Levy Decl., Ex. A, ¶ 6.)

Cauldwell Wingate's contract covered the "Fitout Work" for the Project. That work included: masonry, hollow metal and hardware, including for detention facilities; drywall and ceiling work; architectural metal and glass work; finish painting; tile and marble; and sidewalk and landscaping work. All of this work was carried out by subcontractors engaged by Cauldwell Wingate, with DASNY's approval. (Levy Decl., Ex. A, ¶¶ 27-28.) With undisputed increases in the scope of work, the eventual total of Cauldwell Wingate's contract with DASNY was approximately $52 million. (*Id.*, ¶ 27.)

One of Cauldwell Wingate's principal subcontracts, totaling originally over $3.8 million, was with Gross, for the site and landscaping work. (Levy Decl., Ex. A, ¶ 90; Hewitt Aff., Ex. I.)

As DASNY now acknowledges in the DASNY Complaint, the BCC Project was plagued with problems from the very first day. Mirroring Cauldwell Wingate's allegations, DASNY alleges, for example, that the 17 contractors and consultants it has named as Fifth-Party Defendants "substantially delayed the completion of the construction." (Hewitt Aff., Ex. H, ¶ 2.)

As Cauldwell Wingate also has claimed, DASNY alleges that its architect, Rafael Vinoly Architects, *inter alia* "failed to coordinate various design documents . . . failed to include essential design elements for construction . . . failed to timely respond to contractor inquiries and requests for information . . . [and] failed to properly review and approve proposed design changes to the Complex submitted by various contractors during construction, which resulted in significant structural failures." (*Id.*, ¶¶ 32, 34-35.) With respect to its excavation contractor, A. Williams Trucking & Backhoe Trenching, Inc. ("A. Williams"), DASNY alleges that it "failed to perform in a workmanlike manner, by, *inter alia,* over-excavating the Site, which required excavated earth to be replaced . . . [and] delaying completion of its work and the work of other contractors on the Project," (*id.* ¶¶ 45, 98; *see also* ¶ 104), thereby confirming Cauldwell Wingate's allegations that delays at the outset of the BCC Project ultimately negatively affected Cauldwell Wingate and its subcontractors.

These and other allegations in the DASNY Complaint thus mirror those in the Gross and Cauldwell Wingate Complaints. Those complaints allege both serious design deficiencies and sequencing problems, and thus arise from the same controversy over who is responsible for the problems associated with the BCC Project. Their respective resolutions will depend in significant part on the same proof, including the same fact and expert witnesses.

As just a few examples:

- Gross alleges that Cauldwell Wingate failed "to provide compete [sic] and accurate design information timely." (Levy Decl., Ex. C, ¶ 16.) Similarly, Cauldwell Wingate has alleged numerous failures by DASNY and its agents to provide accurate design information and to respond, for example, to the hundreds of requests for information ("RFIs") that Cauldwell Wingate submitted on behalf of its various subcontractors, including over 200 on behalf of Gross. (*See, e.g., id.,* Ex. A, ¶¶ 41, 98.) To prove their respective claims then Gross and Cauldwell Wingate will both rely on the same documentary evidence, including design drawings and RFIs, as well as the same witnesses.

- Gross alleges that Cauldwell Wingate failed "to provide accurate and timely information respecting the actual elevations of the Project." (*Id.*, Ex. C, ¶ 16.) Similarly, Cauldwell Wingate alleges that the exterior site conditions it was forced to work with, including surface conditions, were totally incompatible for the site and landscaping work for which it had bid and contracted, and that as a result it and its subcontractors, including Gross, were required to perform significant extra work that had not been scheduled or budgeted and for which DASNY has refused to pay. (*Id.*, Ex. A, ¶¶ 9, 40, 98.) Here too, in seeking to recoup for the extra work incurred as a result of the alleged surface conditions, Gross and Cauldwell Wingate will need to rely on the same drawings, photographs and other evidence.

- Gross alleges that it is owed approximately $1.1 million in unpaid change and extra work orders. (*Id.*, Ex. C, ¶ 21.) Cauldwell Wingate maintains that the alleged unpaid orders are more than offset by the back charges DASNY imposed on Cauldwell Wingate for certain items. (*See* Affidavit of Susan L. Hayes, dated July 18, 2008 (the "Hayes Aff."), ¶¶ 5-11.) In defending the main action, Cauldwell Wingate will rely on the same documentation it needs to prosecute its claims against DASNY for unpaid change orders and excessive back charges.

- With respect to these and other claims, Gross's counsel has acknowledged that she will need DASNY's documents "to prove my case," (Hewitt Aff., Ex. B, 15:20-22) -- the very same documents that Cauldwell Wingate will need to prove its case against DASNY.

* * *

In light of these and other factual similarities between the allegations in the Gross and Cauldwell Wingate Complaints, we show below that this case more than satisfies the standard that has been applied in the Southern District for exercising supplemental jurisdiction.

## PROCEDURAL HISTORY

The Gross Complaint against American Manufacturers Mutual Insurance Company ("American Manufacturers") was filed on or about December 10, 2007. (Hewitt Aff., ¶ 2.) American Manufacturers is the surety that issued a payment bond in connection with Cauldwell Wingate's work on the Project. (Levy Decl., Ex. C, ¶ 9.)

American Manufacturers filed its Third-Party Complaint against Cauldwell Wingate (the "American Manufacturers Complaint") on or about December 17, 2007. Cauldwell Wingate filed its answer on February 19, 2008 and filed the Cauldwell Wingate Complaint, against DASNY, on March 14, 2008. (Hewitt Aff., ¶¶ 3-5.)

Counsel for Gross, American Manufacturers and Cauldwell Wingate appeared at a preliminary conference before the Court on February 22, 2008. At that time, counsel for Cauldwell Wingate informed the Court that it would be serving its complaint against DASNY by March 14. The Court instructed counsel to return for another conference on April 4, 2008, and to inform DASNY that its counsel should appear. (Hewitt Aff., ¶ 7.)

At the April 4 conference, counsel for DASNY sought and obtained an extension of 45 days beyond its original due date to answer the Cauldwell Wingate Complaint (from April 3 to May 19). The Court nevertheless set a discovery schedule, and made it clear that discovery would not abide the filing of DASNY's answer. (Hewitt Aff., ¶ 8.)

Counsel for all parties also appeared before Magistrate Judge Peck on April 24, 2008. Counsel for DASNY informed Judge Peck that DASNY had discovered a document in which Cauldwell Wingate had allegedly released its claims against DASNY, and that DASNY was going to move to dismiss on that basis. (Hewitt Aff., ¶ 9 and Ex. B thereto, at 6:5-11.) Judge Peck suggested that, in light of the fact that discovery was proceeding, DASNY should make its motion even sooner than the May 19 date. (*Id.*, Ex. B, at 16:8-20.)

Instead of doing that, counsel for DASNY sought yet additional time, until June 6, and then until June 13, which requests were granted. (Hewitt Aff., ¶ 11 and Exs. C and D thereto.)

When the parties appeared before him again on June 3, 2008, Judge Peck indicated that if it were up to him to decide DASNY's impending motion to dismiss, he would deny it, because

with the passage of time and the participation of all parties in discovery it was becoming increasingly inappropriate to make a motion to dismiss. (Hewitt Aff., ¶ 13 and Ex. E thereto at 10:2-6.) Alternatively, he indicated that he would treat DASNY's motion as a motion for summary judgment, in part because it was going to be based on a document outside the pleadings, *i.e.*, the alleged release. He also ordered that, even if DASNY did proceed with its motion to dismiss, it should also file an answer, so that the parties would be apprised of DASNY's affirmative defenses and address them in discovery. (*Id.*, Ex. E, at 10:4-13:10.)

DASNY finally answered and moved to dismiss on June 13, 2008 -- three months after it was served with the Cauldwell Wingate Complaint. (Hewitt Aff., ¶ 15.) Even though its counsel represented to the Court and to counsel for Cauldwell Wingate that DASNY needed more time to serve its papers in part because it had only discovered the alleged release sometime in April, (*id.*, ¶ 12), DASNY ultimately did not move on the basis of the release. Nor did DASNY seek a stay of discovery in connection with the Motion. (*Id.*, ¶ 15.)

Thus, DASNY took three months to raise a jurisdictional objection which, if valid at all, should have been readily apparent to it from the time it was served with the Cauldwell Wingate Complaint.

At the April 4 conference before the Court, DASNY indicated that it intended to sue additional parties in connection with the BCC Project, and that it was weighing its options as to when and where to do so. (Hewitt Aff., ¶ 8.) The Court ordered that any new parties be added no later than June 1, 2008. (*Id.*, Ex. A.) DASNY's counsel also informed Judge Peck at the April 24 conference that DASNY might bring in additional parties. (*Id.*, Ex. B, at 16:21-17:10.)

Notwithstanding its expressed intention to bring an action against additional parties in some venue, (*see, e.g., id.*, ¶ 8 and Ex. B. thereto, at 16:21-17:10), DASNY missed the June 1

deadline to do so in the Southern District. It later sought leave to initiate a fifth-party action here nevertheless. (*Id.*, Ex. F.) Judge Peck directed DASNY to do so by July 9, and DASNY filed the DASNY Complaint on that date. (*Id.*, ¶¶ 17-18.)

Both the Court and Judge Peck have repeatedly cautioned the parties that discovery would continue even though DASNY had not yet answered or moved to dismiss. (*See id.*, ¶ 8; *id.*, Ex. B, 16:6-8; Ex. E, 7:18-25; and Ex. G, 14:11-13.)

Accordingly, the parties are well into discovery. They had their first Rule 26(f) meeting with all counsel on May 14, 2008 and, at Judge Peck's direction, had a second meeting, in order to include their technical staff and deal with issues related to electronic discovery, on June 10, 2008. (Hewitt Aff., ¶ 19.) The parties also have participated in numerous conference calls, and have exchanged hundreds of e-mails on this subject. (*Id.*) No depositions have yet been scheduled. (*Id.*, ¶ 20.)

In order to satisfy the current requirements for electronic production in federal cases, Cauldwell Wingate has engaged the services of a proprietary document management company and has had its entire Project file, consisting of close to 500,000 pages, scanned, and is in the process of readying all of the e-mails from the Project for production no later than July 30 as well. Cauldwell Wingate has already incurred hundreds of thousands of dollars preparing its documents and e-mails for production. (*Id.*, ¶ 21.)

## THE STANDARD ON A MOTION TO DISMISS

Although DASNY has stated only that it is moving to dismiss "pursuant to 28. U.S.C. § 1367(c)," (Notice of Motion at 2), it is axiomatic that a motion to dismiss must be brought pursuant to Fed. R. Civ. P. 12(b). Since DASNY is moving to dismiss for lack of subject matter jurisdiction, its motion should properly have been styled as one under Rule 12(b)(1).

The principal basis for the Motion is that the issues in the main action are not related to those in the fourth-party action.[1] We disagree. At a minimum, the question of whether or not the two actions are related raises disputed issues of fact, warranting denial of the Motion. *See, e.g., O'Mahony v. Accenture Ltd.*, 537 F. Supp. 2d 506, 509-10 (S.D.N.Y. 2008).

DASNY's arguments in this regard are based less on the pleadings than on such unsubstantiated assertions as "[r]esolution of the fourth-party complaint also requires substantially more and different types of proof . . . and [Cauldwell Wingate's claims] are not derivative of the claims asserted in the amended complaint." (Memorandum Of Law In Support Of Motion To Dismiss Fourth-Party Complaint, dated June 13, 2008 ("DASNY Br."), at 9.) In showing that the allegations in the main action are, indeed, related to those in the fourth-party action, we rely here not only on the pleadings but also on evidence outside the pleadings, as is permitted when "subject matter jurisdiction is challenged under Rule 12(b)(1)." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also O'Mahony*, 537 F. Supp. 2d at 510.

## ARGUMENT

### POINT I

### THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE CAULDWELL WINGATE COMPLAINT

**A.**     **Introduction**

Pursuant to § 1367(a), a federal district court is vested with supplemental jurisdiction over those claims that are "so related" to claims upon which the court's original jurisdiction is based that "they form part of the same case or controversy." As even DASNY has acknowledged, Cauldwell Wingate's claims in the fourth-party action are inextricably related to Gross's claims in the main action.

---

[1] As used herein, the term "main action" refers both to the action initiated by Gross against American Manufacturers and American Manufacturers' third-party action against Cauldwell Wingate.

DASNY maintains nevertheless that the Court should not exercise supplemental jurisdiction over Cauldwell Wingate's claims because they involve additional subcontracts other than the one with Gross. The salient issue is not how many contractors or subcontractors may be involved, but whether the parties' allegations arise from the same case or controversy. *All* of the allegations before the Court arise from the design, sequencing and other problems that were associated with the construction of the BCC.

"[O]nce it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 447 (2d Cir. 1998). While a district court has discretion nevertheless to decline to exercise supplemental jurisdiction, it may do so only under the specific exceptions identified in § 1367(c). *Itar-Tass,* 140 F.3d at 448; *see also Treglia v. Town of Manlius,* 313 F.3d 713, 723 (2d Cir. 2002) (citing *Itar-Tass*); *F.T.C. v. Crescent Publ'g Group, Inc.* 129 F. Supp. 2d 311, 319 n.47 (S.D.N.Y. 2001) (Kaplan, J.) (quoting *Itar-Tass*).

DASNY maintains that the § 1367(c)(2) exception applies here, because the claims in the fourth-party action "predominate" over those in the main action, in that the Cauldwell Wingate Complaint "raises state law claims exclusively." (DASNY Br. at 5, 6.) Yet *all* of the claims in this lawsuit are "exclusively" state law claims, since the basis of jurisdiction here is diversity, not federal question.

The proper test, then, is whether the state law claims in the fourth-party action predominate over those in the main action such that: (i) the claims in the main action are peripheral to those in the fourth-party action; or (ii) the latter claims are significantly more complex than those in the main action. Since all of the claims here arise from the same large

construction project and will require similar proof to resolve, DASNY has failed to establish that the narrow exception provided by § 1367(c)(2) applies.

**B.    The Claims In The Cauldwell Wingate Complaint
Form Part Of The Same Case Or Controversy
As Those In The Gross Complaint**

As a threshold matter, 28 U.S.C. § 1367(a) expressly applies to "claims that involve the joinder or intervention of additional parties," *see, e.g., Estate of Bruce v. City of Middletown*, 781 F. Supp. 1013, 1015 (S.D.N.Y. 1992) (citations omitted); *see also United States v. Stein*, No. 06-4358-Cv., 2007 WL 91350, at *14 (S.D.N.Y. Jan. 8, 2007) (Kaplan, J.), including third-party litigation. *See WTC Captive Ins. Co., Inc. v. Liberty Mut. Fire Ins. Co.*, 537 F. Supp. 2d 619, 626 (S.D.N.Y. 2008); *Bruce*, 781 F. Supp. at 1016 (same); *CCC Ins. Co., Ltd. v. Brooklyn Hosp. Ctr.*, No. 03 Civ. 3093 (TPG), 2004 WL 1191980, at *4 (S.D.N.Y. May 28, 2004) (same). Accordingly, Cauldwell Wingate's joinder of DASNY in this action is not only permissible but appropriate.

As the pleadings demonstrate, the claims in the fourth-party action are related to those in the main action. As but a few examples:

- Gross alleges that Cauldwell Wingate: "order[ed] it to work out of sequence on waterproofing . . . [and did] not provid[e] access to work areas timely or fully, among other obstructions, impediments and disruptions to the Project." (Levy Decl, Ex. C, ¶ 16.) Cauldwell Wingate, in turn, while acknowledging the exact same sequencing problems, alleges that they were attributable to DASNY and its agents, *not* Cauldwell Wingate. (*See, e.g., id.*, Ex. A, ¶¶ 31, 39, 91-92, 94, 100.) Both Gross's and Cauldwell Wingate's respective damages thus arise from the alleged failure of DASNY and its agent to ensure proper sequencing.

- Gross's claim includes open change orders for bollards (approximately $204,000) and "Northside Redesign." (Levy Decl., Ex. C ¶¶ 20-21.) These items are directly related to claims asserted in the Cauldwell Wingate Complaint. (*See, e.g.,* Levy Decl., Ex. A, ¶¶ 92-97.)

- DASNY itself acknowledges the interrelationship of Gross's and Cauldwell Wingate's claims. While expressing its reservations regarding the Court's

jurisdiction over the Cauldwell Wingate Complaint, DASNY nevertheless avers that its counterclaims, which by definition are related to the Cauldwell Wingate Complaint, "are directly related to the claims in the main action and in the third-party action *and therefore form part of the same case or controversy.*"  (Levy Decl., Ex. B, ¶ 214.) (Emphasis added.)

- Similarly, in the DASNY Complaint, DASNY not only admits that the issues of which both Gross and Cauldwell Wingate have complained, such as inadequate sequencing and design, are related, but attributes those problems to various fifth-party defendants.  (*See, e.g.,* Hewitt Aff., Ex. H, ¶¶ 32, 34-35, 38-41, 104, 261, 265, 274.)

Accordingly, the pleadings establish that Gross's claims are not discrete and different from Cauldwell Wingate's (and even DASNY's) claims, but that they all stem from the same controversy regarding such issues as poor design and poor sequencing.  The resolution of their respective claims will thus depend on the same proof.

Counsel for both Gross and DASNY have acknowledged the interrelationship of the parties' claims and the similarity of the proof required.  In the April 24, 2008 conference before Judge Peck, for example, counsel for Gross stated:

> First of all, the William A. Gross complaint is for retainage, contract balances, certain unaddressed change orders and impacts from certain actions *that were passed down to William A. Gross through Cauldwell from the owner.*
>
> . . . for months Hill International on behalf of DASNY has been running around doing change orders on the Cauldwell project, and just yesterday we received notice that they were taking another deduction on William A. Gross . . . that they think is going to be passed through to William A. Gross.
>
> . . . As the site or contractor outside, *William A. Gross suffered the consequences of a lot that happened in this job.*  For example, when DASNY decided early in the job not to have the original site work contractor -- that is, the foundation contractor, A. Williams Trucking, [now a fifth-party defendant], they didn't have them remove all of the contaminated soil. They . . . directed my client to remove it . . . and one of the disputes is whether he [Gross] should be paid the price for disposing of contaminated soil. . . .

> This is by way of saying there's another issue having to do with the elevation of the building. If you assume that the front of the building where you enter at the street level should be zero elevation, so that you walk straight from the sidewalk into the building, this building varies and can be off anywhere from an inch low to a half an inch high. *All of that impacts my client.*
>
> . . . As a result, Cauldwell is in a difficult position, and I say this as an objective observer of that case, *because there's a lot of information that they need relevant to my case that may have bearing on other change orders but bears on my change orders.*

(*Id.*, Ex. B, 13:1-14:20.) (Emphases added.)

In the June 24, 2008 conference before Judge Peck, in seeking to extend the time for DASNY to add new parties, DASNY's counsel stated:

> There is a very real possibility of harm if we are not permitted to add additional parties. We are litigating issues of delay and who caused delay and which parties may have caused delay and contributed to delay with Cauldwell in this case.
>
> It is our position that a number of contractors caused a number of delays that affected Cauldwell. They are not in this action.

(*Id.*, Ex. G, 17:13-20.)

Counsel have thus effectively conceded that Gross's claims are but one piece of a large but interrelated puzzle. Since the resolution of all of these claims is interdependent, the exercise of supplemental jurisdiction is warranted. *See, e.g. Bruce*, 781 F. Supp. at 1016.

**C.    The Claims In The Cauldwell Wingate Complaint Do Not Predominate Over Those In The Gross Complaint**

The burden is on DASNY, as the party challenging jurisdiction, to demonstrate that the Court should not exercise its jurisdiction over the Cauldwell Wingate Complaint. *See, e.g., Akwesi v. Uptown Lube & C/W, Inc.*, No. 07 Civ. 335 (NRB), 2007 WL 4326732, at *5 (S.D.N.Y. Dec. 3, 2007) ("*The burden remains on defendant to persuade us that plaintiffs' claims are better litigated elsewhere*") (citations omitted) (emphasis added). It must show not

only that one of the § 1367(c) exclusions applies, but *also* that dismissal would promote the values of economy, convenience, fairness and comity identified in *Gibbs*. *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (emphasis added).

Section 1367(c)(2) was thus "fashioned as a *limited* exception to the operation of the doctrine of pendent [supplemental] jurisdiction -- a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (emphasis added). "When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost." *Id.*

While acknowledging the applicability of the factors set out in *Gibbs*, (DASNY Br. at 5), DASNY fails to address them. Nor could it meaningfully. While DASNY repeatedly urges that the Cauldwell Wingate's claims may be tried in state court, the *Gibbs* factors are not satisfied where parallel litigation in state and federal court will result. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 330 (S.D.N.Y. 2007); *see also Dunlop v. City of New York*, No. 06-cv-433 (KMK) JCF, 2006 WL 2853972, at *6 (S.D.N.Y. Oct. 4, 2006); *Rothberg v. Chloe Foods Corp.*, No. CV-06-5712 (CPS), 2007 WL 2128376, at *10 (E.D.N.Y. July 25, 2007).

Supplemental jurisdiction also is appropriate because Cauldwell Wingate will otherwise face the danger of collateral estoppel or inconsistent results if it is obligated to litigate its claims against DASNY in state court while simultaneously defending the main action in federal court. *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 93 (S.D.N.Y. 2001).

DASNY also fails to demonstrate that Cauldwell Wingate's claims would substantially predominate over Gross's in terms of proof, the scope of the issues raised, or the

comprehensiveness of the remedy sought, as it must to establish the applicability of § 1367(c)(2). *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 456 (S.D.N.Y. 2003); *see also Mifflin,* 45 F.3d at 789.

Since Gross's and Cauldwell Wingate's claims both relate to change orders, extra work and delay, they raise the same legal issues, and will require the same proof.  Indeed, the resolution of Gross's claims depends largely on the resolution of Cauldwell Wingate's.

Nor has Cauldwell Wingate, as DASNY suggests, admitted liability for Gross's alleged damages.  The Cauldwell Wingate Complaint contains the following paragraph:

> As alleged in the Complaint in the main action, Gross is owed over $2.6 million on its subcontract, including 32 open change orders, pending change orders and extra work orders.

(Levy Decl., Ex. A, ¶ 101.)  According to DASNY, Cauldwell Wingate has thereby "confessed liability for the full amount."  (DASNY Br. at 7; *see also id.* at 8.)  This statement is absurd on its face, since it is clear from the context of this single allegation extracted by DASNY that Cauldwell Wingate was simply repeating what Gross had alleged.  Moreover, in answering the American Manufacturers Complaint -- its first opportunity to address Gross's allegations -- Cauldwell Wingate had already *denied* liability for Gross's damages. (Levy Decl., Ex. F, ¶ 9.)

Since Gross's allegations are in dispute, they are not resolvable on summary judgment and will, instead, implicate the very same factual issues raised by Cauldwell Wingate against DASNY.

Of Gross's $2.6 million claim, approximately $1.1 million relates to change orders and extra work orders that are allegedly unpaid.  As set forth in the accompanying affidavit of Cauldwell Wingate's President and CEO, Susan L. Hayes, Cauldwell Wingate disputes, for example, the two largest of those change orders, for bollards (approximately $200,000) and the Northside Redesign ($411,000).  (Hayes Aff., ¶¶ 4-11.)  With respect to the bollards, Cauldwell

Wingate actually overpaid Gross, for bollard work it did not do, and is owed a credit of approximately $350,000. (*Id.* ¶¶ 7-9.)

These two change order items, as well as others, are disputed in part, at least, because DASNY has back charged Cauldwell Wingate for work it maintains was not done or was done improperly, and Cauldwell Wingate has passed the back charges on to Gross. (Hayes Aff., ¶¶ 10-11.) Thus, in order to defend against Gross's allegations, Cauldwell Wingate will be required to resort to the exact same proof as it will require to prosecute its claims against DASNY, and to defend against DASNY's counterclaims.

Similarly, in order to defend against Gross's claim that it was required to remove contaminated soil and should be paid for the extra expense involved, Cauldwell Wingate will seek to prove not only that DASNY demanded extra work in connection with contaminated soil removal, as even Gross alleges it did, (Levy. Decl., Ex. C ¶¶ 21-22), but also that the problem arose because another of DASNY's prime contractors, A. Williams, failed to carry out its own contractual obligations in that regard, as even DASNY alleges. (Hewitt Aff., Ex. H, ¶ 98.)

In defending against Gross's claims for damages related to re-paving and redesign, Cauldwell Wingate will seek to prove that any extra work required is attributable to the poor design of DASNY's agents, which DASNY acknowledges in the DASNY Complaint. Indeed, the whole issue of sequencing, of which Gross, Cauldwell Wingate and now DASNY have complained, suggests an interrelationship among all the "players" in this case. The initial alleged delays and failures of A. Williams at the front end of the Project, for example, ultimately affected Gross's alleged inability to complete its work on time or on budget at the back end of the Project.

Cauldwell Wingate's claims will thus not predominate over Gross's in terms of proof, such as to implicate § 1367(c)(2). *See, e.g., SST Global,* 270 F. Supp. 2d at 458-59. To the contrary, it will be both more convenient and more economical to try them together. Indeed, because of the interrelatedness of these issues, many of the same witnesses will be required to prove Gross's and Cauldwell Wingate's claims, including witnesses from: Bovis and Hill (sequencing); A. Williams (excavation, soil and related problems); DASNY; Gross; and Cauldwell Wingate; as well as expert witnesses, who will testify about such issues as design deficiencies and delay costs.

DASNY also has not established that Cauldwell Wingate's claims predominate in terms of the scope of the issues raised or comprehensiveness of the remedy sought, as required. *SST Global,* 270 F. Supp. 2d at 458-59. It argues that supplemental jurisdiction is inappropriate because Cauldwell Wingate has asserted claims relating to its other subcontracts, and because the monetary damages at stake will increase "by a factor of nine." (DASNY Br. at 5.)

These facts do not militate against the exercise of supplemental jurisdiction. *See, e.g., Mifflin,* 45 F.3d at 789 ("The 'substantially predominate' standard . . . is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts. An analysis more sensitive to the relevant interests is required"); *see also Akwesi,* 2007 WL 4326732, at *5 ("It is not enough to point out that plaintiffs bring numerically more state law claims than federal claims"); *Feinberg v. Katz,* No. 99 Civ. 0045 (CSH), 2005 WL 2990633, at *12 (S.D.N.Y. Nov. 7, 2005); *CCC,* 2004 WL 1191980, at *4-5. This is so even where the supplemental and original claims involve different contracts. *See, e.g., MMT Sales, Inc. v. Channel 53, Inc., WPGH Div.,* No. 92 Civ. 7207 (SS), 1993 WL 541242, at *2 (S.D.N.Y. Dec. 27, 1993).

DASNY's argument that the Cauldwell Wingate Complaint would greatly increase the scope of damages involved also is *not* a basis for this Court to decline to exercise supplemental jurisdiction. As the court stated in *McConnell v. Costigan*, No. 00 Civ. 45989 (SAS), 2000 WL 1716273, at *5, n.7 (S.D.N.Y. Nov. 16, 2000), "the size of a potential damages award is irrelevant to a determination of whether the state law claims predominate over the federal claims. In deciding that issue, a court must focus on the legal and factual questions presented by each claim -- *not* the amount of damages." (Emphasis added.)

Instead, state claims substantially predominate when the claims upon which the court's original jurisdiction is based "involve a technical or other issue that is peripheral to the state claims ... and where the factual or legal analysis governing the federal and state claims are unrelated." *SST Global*, 270 F. Supp. 2d at 456-57 (citations omitted). Likewise, state claims substantially predominate where they "are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole" than the claims upon which the court's original jurisdiction is based. *Rothberg*, 2007 WL 2128376, at *9.

Those factors are not present here. DASNY does not allege that Cauldwell Wingate's claims are more complex than Gross's. And, as shown, Gross's claims relate to, and stem from, the same nucleus of operative facts alleged in the Cauldwell Wingate Complaint. (*Compare, e.g.,* Levy Decl., Ex. C, at ¶¶ 12-14, 18, 20-22 with Levy Decl., Ex. A, at ¶¶ 91-100). While the Cauldwell Wingate Complaint asserts claims beyond those alleged in the Gross Complaint, that alone is an insufficient basis for the court to decline to exercise supplemental jurisdiction.

Indeed, to paraphrase the court in *CCC*, "[w]hile it is clear that [Gross's] allegations ... are only a small part of the larger controversy between the parties, this does not mean that

[Cauldwell Wingate's] potential-[fourth]-party claims 'predominate' over the issues raised by [Gross]." *CCC*, 2004 WL 1191980, at *4.

The cases relied upon by DASNY in this context are inapposite. *AT&T Corp. v. New York City Health and Hosp. Corp.*, 72 F. Supp. 2d 398 (S.D.N.Y. 1999), involved a suit by a telephone company against a hospital for unpaid telephone bills. The hospital filed a third-party complaint against the contractor that designed and installed the telephone system, and the third-party defendant moved to dismiss for lack of subject matter jurisdiction. In granting that motion, the court observed that "AT&T's claim against [the hospital] is simplicity itself. Its records show that the calls were made. Non-payment of the bills appears to be conceded. The claim presumably will be resolved on summary judgment." *AT&T*, 72 F. Supp. 2d at 400. The third-party claim was more complex and required consideration of a complicated telecommunications installation contract and a variety of other issues wholly unrelated to the non-payment action. The only common issue was the same telephone calls. *Id.*

Here, by contrast, the vast majority of the claims asserted in the Gross Complaint are directly related to Cauldwell Wingate's claims because they are attributable to delays and extra work that Gross attributes to Cauldwell Wingate, (Levy Decl., Ex. C, ¶¶ 12-22), and which Cauldwell Wingate alleges were actually caused by DASNY and its agents. (Levy Decl., Ex. C, ¶¶ 90-100.)    Moreover, despite DASNY's suggestion to the contrary, there has been no admission of liability here which would render the claims asserted by Gross in the main action susceptible to resolution on summary judgment. Gross's claims are very much in dispute.

*OccuNomix Int'l LLC v. N. Ocean Ventures, Inc.*, No. 03 Civ. 6047 (GEL), 2003 WL 22240660 (S.D.N.Y. Sept. 30, 2003) is likewise distinguishable. There the *plaintiff* moved to dismiss its *own* complaint so that it could reinstitute state court proceedings that it had previously

voluntarily discontinued. *Id.*, at *1. The plaintiff argued that the court should decline to exercise supplemental jurisdiction over its state claims and that it should abstain from exercising jurisdiction over the remaining, federal claim. *Id.* The defendant opposed the motion, though the decision is somewhat ambiguous as to whether the defendant was merely opposing the dismissal of the plaintiff's complaint without prejudice or challenging the arguments regarding the exercise of supplemental jurisdiction. *See id.* at *1.

In any event, the sole federal claim in *OccuNomix* was wholly unrelated to the state claims in that action, which comprised the real body of that case. *Id.* Accordingly, this case also is distinguishable, because here Cauldwell Wingate and Gross's claims are intertwined. *OccuNomix* is consonant with the proposition that a plaintiff is the "master" of its own complaint, and would be analogous here only if it were Cauldwell Wingate, not DASNY, that sought to have the Court decline to exercise jurisdiction.

DASNY concedes that *McConnell*, 2000 WL 171623 at *5, allowed for the exercise of supplemental jurisdiction where the resolution of the supplemental claims is necessary to a resolution of the original claims, but suggests that that is not the case here because New York's nullification of "pay when paid" clauses means that Gross's claims can be adjudicated separately from Cauldwell Wingate's. (DASNY Br. at 8-9.) That is not the case.

The prohibition on "pay when paid" clauses is inapplicable to claims for delay damages, and unless Cauldwell Wingate prevails on its delay claims against DASNY, Gross will not recover for its delay claims. *See Triangle Sheet Metal v. James H. Meritt*, 79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991). The "pay when paid" exception is similarly inapplicable to Gross's claims for extra work, which must abide resolution of Cauldwell Wingate's extra work claims against DASNY. *Burmar Elec. v. Starrett Bros.*, 60 A.D.2d 561, 400 N.Y.S.2d 346 (1st Dep't 1977).

This latter principle is reinforced by § 9.4 of the subcontract between Gross and Cauldwell Wingate, which states:

> The Contractor [Cauldwell Wingate] . . . at its sole discretion, may appeal from any ruling or may institute suit for damages for extra work or contest any deduction or refusal to pay by the Owner [DASNY]. . . [t]he Subcontractor [Gross] shall otherwise be bound by the determination of the Owner.

(Hewitt Aff., Ex. I, § 9.4.)   Accordingly, the resolution of Gross's claims must abide the resolution of Cauldwell Wingate's.

Finally, relying on *State of New York v. Philip Morris Inc.,* No. 97 Civ. 794 (LMM), 1998 WL 2574, at *2 (S.D.N.Y. Jan. 5, 1998), quoting *Mifflin,* DASNY suggests that Gross's claims are the "federal tail" wagging the "state dog" of Cauldwell Wingate's claims.  (DASNY Br. at 6.)  *Philip Morris,* however, is readily distinguishable.  There, the plaintiff asserted both state and federal claims in state court.  After the case was removed to federal court, the plaintiff dropped its federal (RICO) claims and moved to remand back to state court.  In granting remand, the court was influenced by the fact that remand would "not result in two parallel actions, one in a state court, one in a federal court." *Id.* at *2.

In contrast, even were there a basis here to remand, there *would* be two parallel actions -- the Gross and American Manufacturers actions in this Court and the Cauldwell Wingate action in state court.

DASNY's citation to *Philip Morris* also is misleading in its reliance on *Mifflin.*  The Third Circuit held that a court should *not* decline to exercise supplemental jurisdiction over claims that fall within the purview of § 1367(a) *unless* the state claims constitute the "real body" of the case, which would ordinarily not apply where the claims arise out of the same transaction. *Mifflin,* 45 F.3d at 789.  Accordingly, while the Third Circuit did indeed admonish against the

federal tail wagging the state dog, it made it clear that would only be the case where the "federal claim is only an appendage." *Id.*

That was clearly the case in *Philip Morris,* since three were no longer any federal claims remaining. Here, in contrast, Cauldwell Wingate's "state" claims are directly related to the claims in Gross's diversity action, and thus do not substantially predominate over them.

For all of these reasons, DASNY has not satisfied its burden to show why the Court should decline to exercise supplemental jurisdiction.

**D.    There Is No Basis For**
**    Remand To State Court**

DASNY urges that the Court "remand[] the fourth-party complaint to state court." (DASNY Br. at 7).  There is simply no basis for remand.  The Cauldwell Wingate Complaint was filed in federal court, and "[a] case originally filed in federal court cannot be remanded to state court." *Akwesi,* 2007 WL 4326732, at *3.  The issue before the Court is thus not whether to "remand," but whether to dismiss the Cauldwell Wingate Complaint in its entirety.  *Id.*

DASNY cites to this Court's decision in *Krause v. Forex Exch.,* 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005), and suggests that the Court "remanded the remaining state law claims." (DASNY Br. at 9.)  But this Court did not remand in *Krause*; it *dismissed* those claims, because they involved allegations by multiple plaintiffs against the same defendant, and the details of each plaintiff's claims predominated over their common issues.  *Id.*  For the reasons already discussed, that is not the case here.  DASNY has not cited to any authority which supports its position that remand is an option.

Nor has DASNY indicated what would then become of its counterclaims or its fifth-party claims.  Having failed promptly to make a motion to dismiss and settle the jurisdictional issue, DASNY has now availed itself of the Court's jurisdiction by filing the DASNY Complaint.

While preserving its jurisdictional objections, (Hewitt Aff., Ex. H, n.1), DASNY nevertheless has represented to the Court not only that the Court *has* jurisdiction but also, by invoking § 1367(a), that its claims are related to Gross's and Cauldwell Wingate's. (*Id.,* Ex. H, ¶ 3.) Presumably, were it to prevail on the Motion, DASNY would withdraw the DASNY Complaint and re-file in state court. Having already initiated its own action in this Court, however, and set in motion the involvement of additional parties, DASNY hardly can argue that it would be more "convenient" or "economical" to start again in state court.

DASNY is, in effect, forum shopping. From the outset, it sought an unusually long time even to answer the Cauldwell Wingate Complaint. (Hewitt Aff., ¶ 8.) It then informed the Court that it intended instead to make a motion to dismiss based on a release allegedly signed by Cauldwell Wingate. (*Id.,* ¶ 9 and Ex. B, 6:5-11; *see also* Ex. C thereto, May 15 letter to Judge Kaplan.) After having been informed by Judge Peck that he would recommend to this Court that, at best, such a proposed motion be denied or treated as a summary judgment motion, (*id.,* ¶ 13 and Ex. E at 10:2-13:6), DASNY shifted course again and moved only on jurisdictional grounds. Should Cauldwell Wingate be compelled to file its claims against DASNY in state court, DASNY would undoubtedly try for another "bite at the apple" there, and move to dismiss based on the release issue. Such a result hardly satisfies *Gibbs's* fairness test.

In view of the interrelationship of all of the parties' claims, and DASNY's own invocation of this Court's jurisdiction through its counterclaims and the DASNY Complaint, there is no basis to permit DASNY further to delay and to seek another court's intervention on the purported release, while leaving Cauldwell Wingate to defend interrelated claims in at least two courts.

## POINT II

### THE FOURTH-PARTY ACTION
### SHOULD NOT BE SEVERED OR TRIED
### SEPARATELY FROM THE MAIN ACTION

In the event the Court does not dismiss the Cauldwell Wingate Complaint, DASNY urges that it should at least be severed, pursuant to Rule 14(a) or Rule 42(b). (DASNY Br. at 10.) With virtually no discussion or support, DASNY asserts that "Cauldwell Wingate would not be prejudiced by severing or staying the fourth-party complaint," and that "the fourth-party complaint will require different witnesses and documents, as it arises out of different facts." (*Id.*)

Whether considering severance or separate trials, it is clear that district courts carefully consider and weigh a number of factors. The Motion is devoid of any such analysis.

With respect to severance, "courts generally consider (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." *German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995) (citations omitted). DASNY has not cited to any case in which severance was granted.

As discussed, the issues to be tried in the Gross and Cauldwell Wingate actions are *not* significantly different. The plaintiffs in each of those actions provided services in connection with the construction of the BCC, and claim to have been prejudiced, *inter alia,* by DASNY's mismanagement, poor design and excessive back charges. Their allegations reference similar issues, including disputed change orders, and failure of waterproofing. While the fourth-party action may require additional witnesses as well, both actions will require the testimony of

employees of Gross, Cauldwell Wingate, DASNY, Bovis, RVA and A. Williams, to name a few, on these and other similar issues.

As just one example of the similarity of the issues and proof, both Gross and Cauldwell Wingate are seeking delay damages. Those claims will thus implicate not only the same legal theories regarding whether delay damages are warranted in a case such as this, but also the same factual issues, such as who was responsible for the delays and whether they were foreseeable. Not only are these and other issues to be tried similar in both actions, but if the actions are severed Cauldwell Wingate will be required to examine the same witnesses to defend itself in the main action as it will in prosecuting the fourth-party action.

For this and many other reasons, Cauldwell Wingate will be severely prejudiced if the actions are severed. It will have to litigate two related cases, duplicating expenses at every turn -- including in depositions, motion practice and in separate trials. In addition, of course, Cauldwell Wingate runs the risk of separate judgments, with a negative decision in the main action, for example, prejudicing its ability to prevail against DASNY.

In contrast, DASNY has failed even to suggest how it will be prejudiced if the actions are *not* severed. And, indeed, by the DASNY Complaint, DASNY has only reinforced Cauldwell Wingate's position that the various design and sequencing problems experienced during construction were interrelated, affecting almost all contractors and subcontractors, including both Gross and Cauldwell Wingate.

The fact that both the main and the fourth-party actions are in the same stage of discovery is yet one more factor mitigating against severance. *See Colonomos v. Ritz-Carlton Hotel Co., LLC*, No. 98 Cv 2633 (RCC), 2002 WL 732113, at *5 (S.D.N.Y. April 25, 2002). Where, as

here, severance "would neither serve the interests of justice nor further the prompt and efficient resolution" of the main action, it is not warranted. *German,* 896 F. Supp. at 1400-01.

Nor are separate trials warranted. In the only case cited by DASNY in which separate trials were ordered, the first-party claims were ready for trial while the third-party claims were "still early in discovery." *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir. 1984).

DASNY may argue that the fifth-party action has only just started, and that it may take some months for the parties there to file their answers and catch up with discovery. The issue before the Court, however, is the severance of the fourth-party action, *not* the fifth-party action. It would be unfair at this juncture to penalize Cauldwell Wingate for DASNY's failure timely to initiate the fifth-party action.

Moreover, in light of DASNY's own allegations in the DASNY Complaint, it is clear that the issues in all of the actions are related, warranting one, not separate trials. *See, e.g., Colonomos,* 2002 WL 732113 at *6 (where claims in both actions arise from same set of facts, separate trials are not warranted). To paraphrase the court in *German,* separate trials are not appropriate where they would be "repetitious, prolong the ultimate termination of this litigation, and place an unnecessary burden on [Cauldwell Wingate]." *German,* 896 F. Supp. at 1401.

DASNY has thus failed to establish not only why the fourth-party action should not be tried in this Court, but also why it should not be tried at the same time as the main action.

## CONCLUSION

For all of the reasons set forth above, Cauldwell Wingate respectfully requests that the

Motion be denied in all respects.

Dated:  New York, New York
        July 21, 2008

INGRAM YUZEK GAINEN CARROLL &
    BERTOLOTTI, LLP

By: _____
        Larry F. Gainen (LG-9351)
        Patricia Hewitt (PH-7769)
        Caitlin L. Bronner (CB-4280)
    Attorneys for Third-Party Defendant/Fourth-
        Party Plaintiff Cauldwell Wingate
        Company, LLC
    250 Park Avenue
    New York, New York 10177
    (212) 907-9600

286570_4/00926-0053

28