UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
WILLIAM A. GROSS CONSTRUCTION ASSOCIATES,
INC.,

                                               07-CV-10639 (LAK)(AJP)

                           Plaintiff,

        -against-

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                          Defendant.
------------------------------------------------------------------ x

             And other actions.

------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DASNY'S MOTION TO DISMISS FOURTH-PARTY COMPLAINT**

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Fourth-Party Defendant
and Fifth-Party Plaintiff
The Dormitory Authority of the State of New York
100 Church Street, Room 3-241
New York, New York 10007
Tel. (212) 788-1185

EDWIN M. LEVY (EL 7792)
Of Counsel

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ……………………………………………………...…..1

ARGUMENT

      POINT I ………………………………………………………………………2

          THE FOURTH PARTY ACTION SHOULD
          BE DISMISSED IN ITS ENTIRETY …..……………………………..2

      POINT II …………………………………………………………………...…13

          DASNY HAS NOT UNDULY DELAYED THIS ACTION …………...13

CONCLUSION …………………………………………………………………………14

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                              <u>**Pages**</u>

*Antares Aircraft v. Federal Republic of Nigeria,*
   948 F.2d 90 (2d Cir. 1991)
   *vacated on other grounds,* 505 U.S. 1215 (1992) ..................................................................13

*Azevedo & Boyle Contr., Inc. v. J. Greaney Constr. Corp.,*
   285 A.D.2d 571, 728 N.Y.S.2d 743 (2d Dep't 2001) ............................................................3

*Barry, Bette & Led Duke, Inc. v. State of New York,*
   240 A.D.2d 54, 669 N.Y.S.2d 741 (3d Dep't 1998) ........................................................ 6-7

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,*
   215 F.3d 219 (2d Cir. 2000) .................................................................................................12

*Bovis Lend Lease LMB, Inc. v. GCT Venture Inc.,*
   285 A.D.2d 68, 728 N.Y.S.2d 25 (1st Dep't 2001) .............................................................5

*Buckwalter v. Napoli, Kaiser & Bern LLP,*
   2005 U.S. Dist. LEXIS 5231 (S.D.N.Y. 2005) ....................................................................12

*Campbell v. Pacific Fruit Express,*
   148 F. Supp. 209 (D. ID 1957) ..............................................................................................8

*Federal Ins. Co. v. Safeskin Corp.,*
   1998 U.S. Dist. LEXIS 18598 (S.D.N.Y. 1998)....................................................................9

*Filetech S.A. v. France Telecom S.A.,*
   157 F.3d 922 (2d Cir. 1998) .................................................................................................12

*Gaulter v. Capdeboscq,*
   404 F. Supp. 900 (E.D. La. 1975) .......................................................................................11

*Hinsdale v. Farmers National Bank and Trust Co.,*
   93 F.R.D. 662 (N.D. Ohio 1982) .........................................................................................10

*Honeywell, Inc. v. J.P. Maguire, Co., Inc.,*
   2000 U.S. Dist. LEXIS 3699 (S.D.N.Y. 2000) .....................................................................6

*Indianapolis v. Chase Nat'l Bank,*
   314 U.S. 63 (1941) .............................................................................................................6, 9

*Iragorri v. United Technologies Corp.,*
   274 F.3d 65 (2d Cir. 2001) ..................................................................................................10

*Jedrejcic v. Croatian Olympic Comm.,*
   190 F.R.D. 60 (E.D.N.Y. 1999)............................................................................................12

*Maryland Cas. Co. v. W.R. Grace and Co.,*
    23 F.3d 617 (2d Cir. 1993) .................................................................9

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    510 F. Supp. 2d 299 (S.D.N.Y. 2007) .....................................12

*Norcross v. Wills,*
    198 N.Y. 336 (1910) ...........................................................................2

*North Moore Street Developers, LLC v. Meltzer/Mandl Architects, P.C.,*
    23 A.D.3d 27, 799 N.Y.S.2d 485 (1st Dep't 2005) ................5

*Owen Equip. & Erection Co. v. Kroger,*
    437 U.S. 365 (1978) ...............................................................8, 13

*Port Chester Elec. Constr. Corp. v. HBE Corp.,*
    1995 U.S. Dist. LEXIS 116 (S.D.N.Y. 1995)
    *aff'd without opp.,* 89 F.3d 826,
    1995 U.S. App. LEXIS 37288 (2d Cir. N.Y. 1995) ..................4, 5, 6, 11

*Prudential Oil Corp. v. Phillips Petroleum Co.,*
    546 F.2d 469 (2d Cir. 1976) .....................................................11

*Rivera v. Golden Nat'l Mortg. Banking Corp.,*
    2005 U.S. Dist. LEXIS 12564 (S.D.N.Y. 2005)
    *aff'd,* 201 Fed. Appx. 799 (2d Cir. 2006) ..........................12

*Schiavone Constr. Co., Inc. v. Triborough Bridge & Tunnel Auth.,*
    209 A.D.2d 598, 619 N.Y.S.2d 117 (2d Dep't 1994) ...............5

*Status Design LP v. Montgomery Ward & Co., Inc.,*
    1990 U.S. Dist. LEXIS 1990 (N.D. Ill. 1990) ...........................9

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Services, Corp.,*
    421 F. Supp.2d 741 (S.D.N.Y. 2006) .......................................9

*Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.,*
    79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991) ...................2, 5, 11, 12

*Universal/MMEC, Ltd. v. DASNY,*
    50 A.D.3d 352, 856 N.Y.S.2d 560 (1st Dep't 2008)
    *aff'g,* Index No. 601052/03 (Sup. Ct. New York Co., March 23, 2006) ..........4, 5

*Wesco Distrib. v. Anshelewitz,*
    2008 U.S. Dist. LEXIS 54044 (S.D.N.Y. 2008)...................12

**<u>Statutes</u>**

28 U.S.C. § 1367(c) ........................................................................1

28 U.S.C. § 1359 ...........................................................................11

Fed. R. Civ. Pro. 14(a)(4) ..............................................................1

Fed. R. Civ. Pro. 19 & 19(c) .........................................................10

New York Lien Law § 44 ..............................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
WILLIAM A. GROSS CONSTRUCTION ASSOCIATES,
INC.,

                                                    07-CV-10639 (LAK)(AJP)

                                        Plaintiff,

                -against-

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                                        Defendant.
------------------------------------------------------------------------ x
                        And other actions.
------------------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DASNY'S MOTION TO DISMISS FOURTH-PARTY COMPLAINT

### PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in support of the motion of fourth-party-defendant the Dormitory Authority of the State of New York ("DASNY") to dismiss the fourth-party complaint pursuant to 28 U.S.C. § 1367(c), or, in the alternative, to sever all or part of the fourth-party complaint from the main and third-party actions and for a stay pursuant to Fed. R. Civ. Pro. 14(a)(4). In particular, this Reply Memorandum is submitted in response to the opposition papers submitted by defendant/third-party plaintiff American Manufacturer's Insurance Company ("American") and third-party defendant/fourth-party plaintiff Cauldwell Wingate Company, LLC ("Cauldwell Wingate"). Plaintiff William A. Gross Construction Associates, Inc. ("Gross" or the "plaintiff") has submitted no opposition to DASNY's motion to dismiss.

## ARGUMENT

### POINT I

### THE FOURTH-PARTY ACTION SHOULD
### BE DISMISSED IN ITS ENTIRETY

Under *Triangle Sheet Metal Works, Inc. v. James H. Merritt and Co.*, 79 N.Y.2d

801, 580 N.Y.S.2d 171 (1991), upon which both American and Cauldwell Wingate heavily rely

in their opposition papers (*see* American Memorandum of Law ["American Memo"] at pp. 5-6,

11; Cauldwell Wingate Memorandum of Law ["CW Memo"] at p. 21), the overwhelming

majority of the claims alleging extra work and delay asserted by Gross in the amended complaint

cannot be maintained against Cauldwell Wingate, the prime contractor.

In *Triangle Sheet Metal*, the New York Court of Appeals denied a subcontractor

recovery for delay damages, extra work or loss of productivity claims after finding that the delay

was not the fault of the general contractor.  Triangle, a subcontractor on a construction project

for New York City, sought recovery against *Merritt,* the prime contractor, for performance

delays which were contributed to by the City, other contractors, and weather delays.  The trial

court dismissed the claim and the appeals court affirmed, holding that:

> This case falls squarely within the general rule that, absent a
> contractual commitment to the contrary, a prime contractor is not
> responsible for delays that its subcontractor may incur unless those
> delays are caused by some agency or circumstance under the prime
> contractor's direction or control. Contrary to Triangle's contention,
> there is no basis for concluding that a prime contractor -- which
> oftentimes lacks control over much of the work to be performed at
> a  particular  project  --  has  implicitly  agreed  to  assume
> responsibility for all delays that a subcontractor might experience -
> - no matter what their cause.

79 N.Y.2d at 802, 580 N.Y.S.2d at 172 (citations and quotations omitted).  *See also Norcross v.*

*Wills,* 198 N.Y. 336, 341 (1910) (holding that a party to a construction contract will be

"answerable for all losses caused by delays, which his control of the work should make him responsible for …").

These claims of Gross are explicated by Cauldwell Wingate to consist, in the main, not of damages alleged to have been caused by Cauldwell, but instead those which allegedly have been caused by DASNY. For example, the affidavit of Cauldwell Wingate's president and CEO (the "Hayes Aff."), squarely places the blame for delays sustained by Gross upon DASNY (which DASNY of course in no way concedes). *See* Hayes Aff. at ¶¶ 6-11, 14-18. Indeed, Cauldwell Wingate freely admits that Gross' "allegations regarding delay mirror Cauldwell Wingate's." *Id.* at ¶ 17. These allegations were further described in the fourth-party complaint, where Cauldwell Wingate specifically alleges that "Cauldwell Wingate experienced significant, unforeseen difficulties in completing the CW Contract in a timely manner due to circumstances … ultimately attributable to DASNY's acts or omissions." *See* Declaration of Edwin M. Levy, dated June 13, 2008 (the "Levy Decl."), Exhibit A, ¶ 137.

In addition to the delay claims that Gross has asserted, Gross also alleges that that it is owed $411,000.00 for extra work related to the "Northside Redesign." *See* Amended Complaint (Levy Decl., Exhibit C). However, Cauldwell Wingate contends that only DASNY is responsible for approving and making payment for this extra work. *See* Hayes Aff. at ¶ 10. More specifically, Cauldwell Wingate, in the Hayes Aff., asserts that it has sought that amount on Gross' behalf in a proposed change order that "was never approved by DASNY."

It is axiomatic under New York law that a surety and its principal stand in the same shoes (*see Azevedo & Boyle Contr., Inc. v. J. Greaney Constr. Corp.*, 285 A.D.2d 571, 572, 728 N.Y.S.2d 743, 744 [2d Dep't 2001]), and necessarily follows as a matter of law, and has been held by the courts, that where no claim could lie against Cauldwell Wingate, none can be

3

maintained against American, Cauldwell Wingate's surety.[1] *See, e.g., Port Chester Elec. Constr. Corp. v. HBE Corp.*, 1995 U.S. Dist. LEXIS 116 (S.D.N.Y. Jan. 9, 1995), *aff'd without opp.*, 89 F.3d 826, 1995 U.S. App. LEXIS 37288 (2d Cir. N.Y. 1995); *Universal/MMEC, Ltd. v. DASNY*, 50 A.D.3d 352, 856 N.Y.S.2d 560 (1st Dep't 2008), *aff'g*, Index No. 601052/03 (Sup. Ct. New York Co., March 23, 2006) (Moskowitz, J.) (copy annexed).

Thus, as a matter of law, as discussed below, to avoid outright dismissal on their face, Gross' Northside Redesign claim and its delay claims can only be asserted against DASNY by Cauldwell Wingate, on Gross' behalf, through a liquidating agreement. These claims total approximately $2,055,958.00 of its $2,619,478.00 demand in the amended complaint. *See* Amended Complaint (Levy Decl., Exhibit C).

Despite this, Gross, a New York corporation, has asserted its delay claims and Northside Redesign claim only against American, an Illinois corporation. In doing so, Gross purports to invoke this Court's diversity jurisdiction by asserting delay claims in the main action against American, an out-of-state entity which concededly is not liable for them as a matter of law. As the claims are currently framed in the first-party action, Cauldwell Wingate, a New York corporation, would either have to have been sued as a defendant or appeared as a co-plaintiff with Gross, and DASNY, a New York public benefit corporation, would have had to have been named as a defendant. Either scenario would have destroyed diversity.

However, in its opposition to DASNY's present motion, Cauldwell Wingate attempts to evade this threshold jurisdictional matter by strategically redefining the term "main action" to include both Gross's claims against American and American's third-party claims against Cauldwell Wingate (*see* CW Memo at p. 10, fn. 1), despite the conceded legal infirmity

---

[1] Indeed, American should only be liable for those change orders that Cauldwell Wingate approved for Gross, but did not pay. *See* Levy Decl., Exhibit C, ¶¶ 23-24.

of these claims against American under *Triangle Sheet Metal* and the fact that, under Fed. R. Civ. Pro. Rule 14, the main action consists of only plaintiff's claims against defendant American, while American's claims comprise a procedurally distinct third-party action.

Both American and Cauldwell Wingate argue the claims raised in Cauldwell's fourth-party complaint and DASNY's fifth-party complaint are so intertwined with those in the amended complaint that resolution of the main action depends on resolution of the fourth and fifth party claims. Thus, American and Cauldwell Wingate argue that plaintiff's delay claims run from Gross to American to Cauldwell Wingate, and end, naturally, with DASNY. However that argument fails at the outset since Gross cannot assert delay claims against American. *See Port Chester Electrical*; *Triangle Sheet Metal*; *Universal/MMEC, Ltd. v. DASNY*.

New York courts have recognized that a prime contractor may bring a claim against a project owner on its subcontractor's behalf only when an express provision in the subcontract so states or when the prime contractor and subcontractor have entered into a separate liquidating agreement. *See Schiavone Constr. Co., Inc. v. Triborough Bridge & Tunnel Auth.*, 209 A.D.2d 598, 619 N.Y.S.2d 117 (2d Dep't 1994); *see also North Moore Street Developers, LLC v. Meltzer/Mandl Architects, P.C.*, 23 A.D.3d 27, 799 N.Y.S.2d 485 (1st Dep't 2005); *Bovis Lend Lease LMB, Inc. v. GCT Venture Inc.*, 285 A.D.2d 68, 728 N.Y.S.2d 25 (1st Dep't 2001); *accord Port Chester Elec. Constr. Corp. v. HBE Corp.*, 1995 U.S. Dist. LEXIS 116 at *4. A prime contractor expressly assumes liability in a liquidating agreement for a subcontractor's costs, and any recovery the prime contractor obtains against an owner passes through to the subcontractor.

Neither American nor Cauldwell Wingate allege that any such liquidating agreement exists, nor do they cite to any provision of the subcontract between Cauldwell

Wingate and Gross under which the prime contractor can assert delay claims on behalf of the subcontractor. Instead, American cites to a provision expressly limiting Gross' remedy for delay caused by DASNY to be an extension of time, thereby precluding any delay claim by Gross. *See* American Memo at p. 6. Further, the sole provision of the subcontract cited by Cauldwell Wingate (*see* CW Memo at p. 22) does not permit or require Cauldwell Wingate to bring delay claims on behalf of Gross, nor does it create any liability of Cauldwell Wingate to Gross for delay damages allegedly caused by DASNY. *See Honeywell, Inc. v. J.P. Maguire Co., Inc.,* 2000 U.S. Dist. LEXIS 3699 at *37 (S.D.N.Y. 2000).

In spite of a lack of a reference to a liquidating agreement between Gross and Cauldwell Wingate, both clearly are acting as if a liquidating agreement either does exist or is anticipated by them to be entered into. As part of its contract closeout procedure, Cauldwell Wingate submitted a claim for an equitable adjustment on behalf of its subcontractors to DASNY and included as a portion of that the delay claim Gross submitted to Cauldwell Wingate for presentation to DASNY. *See* Exhibits A and B, respectively, annexed to the Reply Declaration of Edwin M. Levy, dated August 4, 2008 (the "Levy Reply Decl.").[2]

However, absent an express provision in the subcontract or a liquidating agreement between Gross and Cauldwell Wingate, Cauldwell Wingate is precluded from asserting a "pass through" claim of Gross directly against DASNY. *Port Chester Electrical Constr. Corp. v. HBE Corp.,* 1995 U.S. Dist. LEXIS 116 (finding that plaintiff subcontractor had not established, either in a subcontract or in a separate liquidating agreement, a contractual commitment on the part of a general contractor to pass through the subcontractor's delay claims to the project owner); *see also Barry, Bette & Led Duke, Inc. v. State of New York,* 240 A.D.2d

---

[2] As noted above, were Gross and Cauldwell Wingate to enter into a liquidating agreement, there would be no diversity jurisdiction, as DASNY, a New York public benefit corporation, would have to be named as a defendant in the main action.

54, 669 N.Y.S.2d 741 (3d Dep't 1998) (declining to find an "implied" liquidating agreement in the absence of any contractual provision holding the prime contractor liable for a subcontractor's claims).

Given the recognition by both American and Cauldwell Wingate that Gross cannot assert delay claims against them, as well as their stated position that Gross' delay claims arise from DASNY's alleged conduct and/or omissions, one cannot help but to conclude that Gross, American, and Cauldwell Wingate have improperly or collusively omitted DASNY from the "main action" to prop up its claim to diversity jurisdiction, so this entire litigation could proceed in this Court (while audaciously accusing DASNY of forum shopping).  This apparent collusion is evident both in Cauldwell Wingate's opposition brief, which incorrectly defines the "main action" as comprising "both … the action initiated by Gross against American Manufacturers and American Manufacturers' third-party action against Cauldwell Wingate," (CW Memo at p. 10), and in Cauldwell Wingate's refraining from bringing compulsory cross-claims against plaintiff and American's failure to move to dismiss the illegal claims.

As the Supreme Court long ago recognized in *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69-70 (1941):

> Diversity jurisdiction cannot be conferred upon federal courts by the parties' own determination of who are plaintiffs and who are defendants.  It is our duty… to look beyond the pleadings and arrange the parties according to their sides in the dispute … Litigation is the pursuit of practical ends, not a game of chess.  Whether the necessary collision of interests … exists is therefore not to be determined by mechanical rules.  It must be ascertained from the principal purpose of the suit … and the primary and controlling matter in dispute.

(Internal quotation marks and citations omitted.)

Courts take a dim view of the omission of necessary non-diverse parties resulting in a state law claim from being litigated in federal court. In *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-76 (1978), the Supreme Court held that, even where federal claims (i.e. those grounded in federal question or diversity jurisdiction) and non-federal claims share a common nucleus of fact, a District Court must examine the posture in which a non-federal claim is brought in order to determine whether the District Court should entertain a non-federal claim. In *Owen*, the surviving spouse of an Iowa resident brought a wrongful death action against a Nebraska power company as the result of her husband having been electrocuted by a crane that came too close to the company's power line. The accident apparently was caused by the negligence of the crane operator, an Iowa corporation not named in the initial complaint, as a result of which the plaintiff purported to invoke diversity jurisdiction. The Nebraska power company moved for summary judgment, and, before that motion was granted, the plaintiff was permitted to amend the complaint to assert claims against the Iowa crane operator. Reversing the Circuit Court, the Supreme Court held that, since the plaintiff could not have sued in federal court if she had initially sued the Iowa crane operator, her amended complaint should not have been permitted to proceed in federal court. The Supreme Court reasoned that to hold otherwise:

> [A] plaintiff could defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants.

*Owen, supra*, 437 U.S. at 374. Thus, failure to join an indispensable non-diverse party requires dismissal on jurisdictional grounds. *See also, e.g., Campbell v. Pacific Fruit Express*, 148 F. Supp. 209 (D. ID 1957) (dismissing wrongful death action on jurisdictional grounds where son

of decedent who lived in same state as defendant did not participate and state law required all heirs to assert wrongful death claim).

In *Maryland Cas. Co. v. W.R. Grace and Co.*, 23 F.3d 617 (2d Cir. 1993), in order to better weed-out cases with manufactured diversity from the federal docket, the Second Circuit explicitly adopted the "collision of interests" approach to realigning the parties articulated by the Supreme Court in *Indianapolis v. Chase Nat'l Bank, supra.* In doing so, the Second Circuit reasoned that:

> Hypothetical conflicts manufactured by skillful counsel must not control[,] because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court.

23 F.3d at 623.

In determining whether to realign the parties under *Maryland Cas., supra,* the District Court must determine whether an **actual** conflict between the parties existed at the time of the commencement of the litigation. *Id.* Thus, the mere potential of conflict is insufficient to defeat realignment. *See, e.g., Federal Ins. Co. v. Safeskin Corp.*, 1998 U.S. Dist. LEXIS 18598 (S.D.N.Y. 1998) (plaintiff insurance company's allegation that the named defendant-insurance companies potentially could be liable for indemnity and contribution confirmed that no actual controversy between the non-diverse named parties existing, mandating dismissal upon realignment of the parties); *Status Design LP v. Montgomery Ward & Co., Inc.*, 1990 U.S. Dist. LEXIS 1990 (N.D. Ill. 1990) (dismissing breach of contract action where plaintiff, a California company in liquidation under private trust agreement, failed to sue trustee, a non-diverse real party in interest, and instead sued only Illinois corporation lacking control over disputed funds); *see also Strategic Value Master Fund, Ltd. v. Cargill Fin. Services, Corp.*, 421 F. Supp.2d 741 (S.D.N.Y. 2006) (Court granted defendants' motion to dismiss on *forum non conveniens* grounds

where plaintiff foreign corporations brought breach of contract claim in New York without naming defendant's English parent company, with whom it had negotiated the alleged transaction, apparently in order to preserve diversity); *cf. Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (plaintiff's choice of forum is entitled to less deference the more it is motivated by forum shopping).

Gross' delay claims and its Northside Redesign claim cannot be asserted against American at all. Indeed, these claims may only be asserted by Cauldwell Wingate against DASNY, but only to the extent that there has been a liquidating agreement entered into between Gross and Cauldwell Wingate. Accordingly, there cannot have been any actual controversy between Gross and American, the party it elected to sue upon commencement of this action. Clearly, both Cauldwell Wingate and DASNY are interested parties and should have been named in the initial complaint, pursuant to Fed. R. Civ. Pro. Rule 19. It should be noted that Rule 19(c) requires an explanation for the failure to join an interested party. Such failure has been held to be the basis for dismissal. *See Hinsdale v. Farmers National Bank and Trust Co.*, 93 F.R.D. 662 (N.D. Ohio 1982) (dismissing case for lack of diversity jurisdiction where, plaintiff failed, without setting forth why as required under Rule 19[c], to join non-diverse interested party).

These glaring omissions suggest that Gross, perhaps acting with American and/or Cauldwell Wingate, is attempting to manufacture diversity jurisdiction by omitting Cauldwell Wingate and DASNY from the main action, even though DASNY is an indispensable, though non-diverse, party with respect to Gross' delay and Northside Redesign claims. This is highlighted in Cauldwell Wingate's opportunistic re-definition of the "main action" as comprising "both … the action initiated by Gross against American Manufacturers and American Manufacturers' third-party action against Cauldwell Wingate." *See* CW Memo at p. 10, fn. 1.

10

Cauldwell Wingate, mirrored by American, goes on to argue at length that the issues raised in its fourth-party complaint do not predominate over the "main action" – *i.e.*, the main action plus the third party action -- because Gross can obtain relief on its delay claims only if Cauldwell Wingate prevails against DASNY. To the contrary, however, Gross cannot prevail on the bulk of its claims because they are asserted against the wrong party, since they cannot, as a matter of law, be maintained against the prime contractor or its surety. *See Port Chester Electrical, supra; Triangle Sheet Metal, supra.*

Accordingly, the first-party complaint must be dismissed for lack of jurisdiction. Section 1359 of title 28, U.S.C., entitled "Parties collusively joined or made" provides:

> A district court shall not have jurisdiction of a civil
> action in which any party, by assignment or
> otherwise, has been improperly or collusively made
> or joined to invoke the jurisdiction of such court.

The purpose of the statute is "to exclude from federal court jurisdiction purely local controversies in which diversity has been manufactured." *Gaulter v. Capdeboscq*, 404 F. Supp. 900, 902 (E.D. La. 1975). Accordingly, "Section 1359 should ... be construed broadly to bar any improper attempt to create federal diversity jurisdiction." *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976). Here, the fact that Gross, a New York corporation, has asserted claims against American, an Illinois corporation, for which American cannot be liable as a matter of law, appears to run afoul of the statutory provision against improper or collusive joinder.

Plaintiff's failure to name DASNY, as project owner, the only party against which, as a matter of law, it could obtain relief if it were to prevail on its delay and Northside Redesign claims, coupled with Cauldwell Wingate's failure to bring compulsory cross-claims against Gross and American's failure to move to dismiss the illegal claims despite explicitly

11

recognizing their legal infirmity in its opposition to DASNY's motion, highlight the apparent collusion of Gross, American and/or Cauldwell Wingate to keep this case in federal court despite the lack of diversity between the real parties in interest.[3]

The parties' reliance on the *Triangle Sheet Metal* argument, the framing of the "main action" as comprising both the amended complaint and the third-party complaint without any legal basis, and their accusations of forum shopping by DASNY are properly addressed in this Reply Memorandum. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party"); *Wesco Distrib. v. Anshelewitz*, 2008 U.S. Dist. LEXIS 54044 (S.D.N.Y. 2008). Moreover, a challenge to subject matter jurisdiction may be raised at any time. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 305 (S.D.N.Y. 2007).

In addition, the court may look to evidence outside the pleadings on deciding disputed jurisdictional issues in a motion to dismiss. *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (stating that "the court should have looked outside the pleadings to the submissions, which both contradicted and supported the bare allegations of jurisdiction pleaded in the complaint"); *Rivera v. Golden Nat'l Mortg. Banking Corp.*, 2005 U.S. Dist. LEXIS 12564 (S.D.N.Y. 2005), *aff'd*, 201 Fed. Appx. 799 (2d Cir. 2006); *Buckwalter v. Napoli, Kaiser & Bern LLP,* 2005 U.S. Dist. LEXIS 5231 (S.D.N.Y. 2005); *Jedrejcic v. Croation Olympic Comm.,* 190 F.R.D. 60 (E.D.N.Y. 1999). Such evidence may include affidavits.

---

[3]  It should be noted that Gross has also filed a public improvement lien against the sums due Cauldwell Wingate on this Project, claiming the sum of $2,935,110.10, and recently filed a one-year extension of its lien on or about July 25, 2008. Conveniently, Gross omits mention of this lien in its Complaint, nor has Gross sought to foreclose on this lien under the New York Lien Law, which would require the inclusion of DASNY as a necessary party pursuant to Section 44 of the New York Lien Law. *See* Levy Reply Decl., Exhibit C. It is clear that Gross, recognizing the procedural infirmities of its pleading addressed by the instant motion, is seeking to ensure that it has an alternative venue in which to seek recovery.

*Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 505 U.S. 1215 (1992).

Cauldwell Wingate's argument that it will be prejudiced if the fourth-party complaint is dismissed or severed because it allegedly has expended so much money on discovery is without merit because the same discovery would be necessary in state court. It is of no moment to the ultimate forum in which the action is litigated. Indeed, to the extent that American and Cauldwell Wingate oppose DASNY's motion on purported concern about delays in the litigation, the efficiency they seek "so avidly is available without question in the state courts" without any jurisdictional impediment. *Owen Equip. & Erection Co., supra*, 437 U.S. at 376 (internal quotation marks and citation omitted).

## POINT II

### DASNY HAS NOT UNDULY DELAYED THIS ACTION

Furthermore, DASNY has not engaged in delay tactics. The fourth-party complaint was filed on March 14, 2008, approximately four and one-half months ago. In the time since, the Court required DASNY to advance along multiple tracks simultaneously: (i) bring a motion to dismiss; (ii) file the fourth-party answer; (iii) commence a fifth-party action in an expedited manner; and (iv) proceed with discovery (imaging and coding approximately 1.3 million pages of paper project files and collection and assessment of over 1.2 terrabytes of electronic data). This required substantially more work from DASNY than any of the other parties. Furthermore, all the parties were aware of the additional efforts their apparently collusive efforts necessarily engendered; *i.e.*, by not naming Cauldwell Wingate, DASNY would have to implead all the other parties in an excess of caution in case the if the fourth-party

complaint is to be litigated in this Court. These actions have proceeded with alacrity and Cauldwell Wingate's assertions to the contrary ring hollow.

## **CONCLUSION**

For the reasons set forth above, and in our original motion papers, the fourth-party complaint should be dismissed, or in the alternative, severed from the main and third-party complaints and stayed.

Dated:   New York, New York
         August 4, 2008

                                 MICHAEL A. CARDOZO
                                 Corporation Counsel of the
                                    City of New York
                                 Attorney for the Dormitory Authority
                                    of the State of New York
                                 100 Church Street, Room 3-241
                                 New York, New York 10007
                                 (212) 788-1185

                        By: _____
                                 EDWIN M. LEVY (EL 7792)
                                 Senior Counsel

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : IAS PART 3
--------------------------------------------------------------------- x
UNIVERSAL/MMEC, Ltd., individually and in a representative
capacity on behalf of all beneficiaries of a Lien Law Article 3-A
Trust,

                                  Plaintiff,

        - against -

The DORMITORY AUTHORITY OF THE STATE OF NEW
YORK, SIEBE ENVIRONMENTAL CONTROLS, a Division
of Barber-Colman Company a/k/a INVENSYS BUILDING
SYSTEMS INC., NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD, MEZZ ELECTRIC, INC., GUY
MEZZANCELLO, JOAN MEZZANCELLO, LUMBERMAN'S
MUTUAL CASUALTY COMPANY and "John Doe", Nos., 1-25,
the name John Doe being fictitious, the true names of the
defendants being unknown,

                               Defendants.
--------------------------------------------------------------------- x
MEZZ ELECTRIC, INC.,

                    Third-Party Plaintiff,

        - against -

LIBERTY MUTUAL INSURANCE COMPANY and
MICHAEL MAZZEO ELECTRIC CORP,

                    Third-Party Defendants.
--------------------------------------------------------------------- x
Karla Moskowitz, J.:

Index No. 601052/2003

**DECISION and ORDER**

Index No. 590592/2003



     Motion and cross-motions under sequence number 008 are disposed of in accordance

with the following memorandum decision.

     Plaintiff Universal/MMEC (Universal) and third-party defendant Michael Mazzeo

Electric Corp. (Mazzeo) move, pursuant to CPLR 3212, for partial summary judgment against

two defendants under their labor and material payment bonds: (i) Invensys Building Systems Inc.

f/k/a Siebe Environmental Controls, a Division of Barber-Colman Company (Invensys) and

National Fire Insurance Company of Hartford (National) (the Invensys Bond) and (ii) Mezz

Electric, Inc. (Mezz Electric) and the Lumberman's Mutual Casualty Company (Lumberman's)

(the Mezz Bond).

Defendants Invensys and National cross-move for partial summary judgment pursuant to CPLR 3212 (e), Lien Law Article 3-A, and, pursuant to this court's order dated and entered February 23, 2004, directing defendants Mezz Electric, Guy Mezzancello and Joan Mezzancello (the Mezzancellos), to place an additional $49,824 into the Lien Law Article 3-A Trust Fund, thereby increasing the Fund to $368,562.

Defendants Mezz Electric and the Mezzancellos cross-move for partial summary judgment, pursuant to CPLR 3212 (e), (I) against plaintiff dismissing the complaint; (ii) against plaintiff dismissing the complaint to the extent that plaintiff seeks delay damages and impact costs against Mezz Electric and the payment of "Extra Work" claims for which plaintiff failed to give written notice to Mezz Electric, as the contract required or that defendant the Dormitory Authority of the State of New York (DASNY) or Invensys denied; or, in the alternative, (iii) in the event the court grants plaintiff, Universal/MMEC, a judgment on the issue of liability against Lumberman's, a conditional judgment of indemnification against Invensys and National in favor of Lumberman's, to recover any of Universal/MMEC's claims.

The material facts are set forth in this court's order dated and entered February 23, 2004.

The complaint alleges seven causes of action, as follows: (1) against Mezz Electric for breach of contract; (2) against Mezz Electric's surety, Lumberman's; (3) against Invensys and its surety, National, to recover the $2,940,624.00, plus reasonable attorney's fees, pursuant to State Finance Law § 137 (4); (4) foreclosure on a public improvement mechanic's lien that plaintiff filed on December 27, 2002, in the amount of $3,085,408.00; (5) a declaration, pursuant to Lien Law § 70, that any right of action that Invensys or Mezz Electric has to recover monies due or earned in connection with the Project shall constitute assets of the Trust, and that Universal is

2

due monies for work, labor and services performed on the Project, and is a beneficiary of the Trust; (6) against Mezz Electric and the Mezzancellos for diversion of Trust funds plus punitive damages; and (7) damages for abandonment of the original purchase order.

Plaintiff claims that it is entitled to payment under the defendant sureties' labor and material payment bonds (the bonds) for labor performed and material furnished and used in the construction of the Project. Plaintiff seeks partial summary judgment on the second and third causes of action in the complaint against the sureties (1) for extra work and (2) for additional labor used at the Project resulting from the failure of the owner to provide vertical transportation (i.e., elevator service) on the 14-story Project; from defendants' directing and requiring it to perform excessive overtime work; and from inefficiencies caused by working in an occupied building. Plaintiff asserts that it was directed to and did perform 10,788 overtime hours, a substantial portion of it performed nine hours a day for a six-day week, resulting in its workers' loss of productivity.

Plaintiff also claims that it is entitled to recover its costs under the bonds for labor performed and materials furnished to install additional wire and conduit that were far beyond the quantities set forth in the bid documents and that, had plaintiff known the amount of wire and conduit actually needed, its bid price would have been substantially higher. Plaintiff claims that the bid documents called for 183,655 feet of wire and 38,750 feet of conduit, but that it actually furnished and installed 554,301 feet of wire and 50,435 feet of conduit.

As to the last item, neither DASNY nor Invensys prepared the document that plaintiff alleged it relied upon to its detriment in preparing its bid (Notice of Motion, Ex. G). Indeed, it appears that John Senkovich, Jr., an independent estimator of Mezz Electric, who has no

3

relationship to either DASNY or Invensys, prepared the document, that the parties characterize as

a "quantity take off." Nor was the document listed in the Prime Contract as part of the contract

documents. Therefore, as a matter of law, it is not considered a "bid document." In addition,

Mezz Electric also presents evidence that Universal developed its bid independently.

Thus, plaintiff Universal's president, Mark Mezzancello, admits in an affidavit that

defendants Mezz Electric and the Mezzancellos submit in reply, that:

> 16. As the president of Universal/MMEC, I can certify that based
> upon my personal observations at the project site and based upon
> my communications with MMEC, Universal/MMEC did not suffer
> any damages because of anything Mezz did or did not do.
>
> 17. Mezz' take-off had no bearing on Universal/MMEC's bid for
> the project and therefore could not have caused Universal/MMEC
> to suffer damages.

He also sets forth the basis for his conclusion in paragraph 17. First, the takeoff was not

part of the bid documents; second, who and how the document was prepared, and third, that it

was not used to prepare Universal's bid. (Reply of Mezz Electric and Mezzancello, Aff. of Mark

Mezzancello, passim)

Accordingly, the court denies plaintiff's motion for summary judgment based on that

claim and grants defendants Mezz Electric's and Mezzancellos' cross-motion for summary

judgment to the extent of dismissing plaintiff's fraud claim based on the alleged misleading "bid

document" because it was neither a bid document nor relied on.

As to extra work and vertical transportation, Mezz Electric points to section 01500.05 of

the Supplemental General Requirements (Ex. A to Tripodianos' Affirmation) as barring damages

against it based on the failure to provide a hoist service that Universal alleges Mezz Electric's

subcontract required. Section 01500.07 requires the Construction Manager (TDX) to provide the

temporary hoist and the permanent elevators. The section at A5 also states "[n]o claims or extras

will be entertained because of limited availability of the hoist/elevators" and Mezz Electric

shows that Universal/MMEC performed change order work pursuant to the construction

manager, TDX, DASNY or Invensys' directions, not Mezz Electric. Mezz Electric also argues

that Universal cannot hold Mezz Electric responsible for delays that others caused (see Triangle

Sheet Metal Works Inc v James H Merrit and Co., 79 NY2d 801 [1991]).

Finally, Mezz Electric argues that the provision barring recovery of damages for delays in

the Prime Contract between Invensys and DASNY is incorporated by reference into the

subcontract between it and plaintiff. So that all damages plaintiff claims for delays are barred.

Section 11.02 of the Prime Contract's General Conditions states:

> No claims for increased costs, charges, expenses or damages of any
> kind shall be made by the Contractor against the Owner for any
> delays or hindrances from any cause whatsoever; provided that the
> Owner, in the Owner's discretion, may compensate the Contractor
> for any said delays by extending the time for completion of the
> Work as specified in the Contract.

Here, the incorporation clauses in the subcontract provide:

> The contract documents for this subcontract consist of this
> agreement and any exhibits attached hereto, the agreement between
> the owner and contractor, the conditions of the contract between
> the Owner and contractor (general, supplementary and other
> conditions), drawings, specifications, all addenda issued prior to
> execution of the agreement between the owner and contractor, and
> all modifications issued subsequent thereto. All of the above
> documents are a part of this subcontract and have been available
> for inspection by the subcontractor.

Plaintiff argues that, under New York law, an incorporation clause in a construction

subcontract incorporating a prime contract clause by reference binds a subcontractor only as to

prime contract provisions relating to the scope, quality, character and manner of work (see, e.g.,

5

of a fundamental obligation of the contract (<u>Corinno Civetta</u>
<u>Constr. Corp. v City of New York</u>, 67 NY2d 297 [1986])

(<u>see</u> <u>also</u> <u>Bovis Lend Lease LMB Inc. v GCT Venture, Inc.</u>, 6 AD3d 228, 228-229 [1st Dept
2004]).

Mezz Electric argues that Mezzancello's admission about Mezz Electric's lack of
responsibility precludes plaintiff from relying on any of the exceptions to the bar of the no-
damages-for-delay clause vis a vis Mezz Electric except for uncontemplated delays. Mezz
Electric does not refute plaintiff's contention that plaintiff performed extra work as a result of
uncontemplated delays, only arguing that this presents a question of fact that defeats plaintiff's
motion. There is sufficient evidence in the record that the change order work was
uncontemplated to keep this issue in the case, and Mezz Electric's denial of approvals and
Invensys' position that it did not cause the delays present issues of fact for trial, except as
discussed below.

Plaintiff, in opposing the clause's application, relies on two exceptions cited in <u>Corrino</u>
<u>Civetta</u> *supra*. First, that the contractor's bad faith or its willful, malicious or grossly negligent
conduct caused the delays and second, that the delays were uncontemplated. However, plaintiff
submits no evidence of Mezz Electric's bad faith or willful, malicious, or grossly negligent
conduct, only arguing it is an issue of fact. Plaintiff argues that Mezz Electric directed $1.5
million in change order work not anticipated in the contract, Mezz Electric materially
misrepresented the footage or wire and conduit to be installed and did not provide a personnel
hoist or elevator as the subcontract required.

However, the only basis for barring the no-damages-for-delay clause at this juncture is on

7

the change orders, because there is evidence that Mezz Electric, despite its arguments to the

contrary, participated in these approvals along with Invensys and DASNY. The remainder of

plaintiff's claims against Mezz Electric are dismissed as barred by the contract documents (as to

the hoist) and by plaintiff's failure to show that Mezz Electric materially misrepresented to

plaintiff in the contract documents the footage to install or that plaintiff relied on a Mezz Electric

misrepresentation.

As previously noted, section A5 of the Supplemental General Requirements expressly

provides "[n]o claims or extras will be entertained because of limited availability of the

hoist/elevators."

Accordingly, plaintiff's motion and defendant Mezz Electric's cross-motion for summary

judgment are denied as to uncontemplated delays based on the change orders not anticipated in

the contract, except as discussed below.

In view of this holding, that branch of defendants Mezz Electric's and the Mezzancellos'

cross-motion, sought in the alternative, that, in the event that the court grants plaintiff,

Universal/MMEC, a judgment on the issue of liability against Lumberman's, for a conditional

judgment of indemnification against Invensys and National in favor of Lumberman's, to recover

any of Universal/MMEC's claims, is denied as academic, with leave to renew.

Next, the sureties contend that plaintiff cannot recover for its change order work, because

the contract required plaintiff to obtain prior written orders authorizing the performance of this

work. Plaintiff's rejoinder is that, under New York law, oral directions to perform extra work or

the general course of conduct between the parties, may modify or eliminate contractual

provisions requiring written authorization (Tridee Assoc. Inc. v New York City School Constr.

8

Auth., 292 AD2d 444 [2d Dept 2002]; Barsotti's Inc. v Consolidated Edison Co. Of New York, Inc., 254 AD2d 211 [1st Dept 1998]). Indeed, plaintiff claims that it performed 21 extra work orders without written authorization, for which Mezz Electric paid it $858.434.05.

DASNY disputes that it was the accepted practice and procedure at the Project that it required the plaintiff to perform orally directed change orders and that Mezz Electric and Invensys agreed that they would pay for extra work despite the lack of a prior written authorization. DASNY further observes that DASNY's contract with Invensys specifically sets forth the procedure to follow with respect to change orders, and that "[n]o claims for Extra Work shall be allowed unless such Extra Work is ordered *in writing* by the Owner. No changes in the work shall be made unless such work is ordered *in writing* by the Owner or the Owner's representative." DASNY also disputes plaintiff's claim that DASNY issued 21 change orders. DASNY states that a representative of its construction manager for the Project, TDX, rubber-stamped these with an acknowledgment that it is "for time and material only, and is not an acknowledgment that the work involved is in fact a contract modification."

Course of conduct and waiver usually present factual issues that preclude summary judgment (See Morris v Morris, 74 AD2d 490, 492-493 [1st Dept 1980]). Similarly, issues of credibility preclude an award of summary judgment (Mortimer v Lynch, 119 AD2d 558 [2d Dept 1986]). "On a motion for summary judgment, the court's function is to determine if a factual issue exists, and the court does not weigh the credibility of the affiants unless untruths are clearly apparent" (French v Cliff's Place Ltd., 125 AD2d 292, 293 [2d Dept 1986]).

However, to the extent there is uncontroverted evidence that TDX denied the claims based on uncontemplated delays or there are no written change orders or subsequent approvals, at

all for work that plaintiff performed pursuant to oral directives, the contract language in this

government project precludes plaintiff from recovering on those claims.  (Section 8.01A of the

Prime Contract [Schuerger Aff., Ex. L]; Section 2 of the Subcontract [Schuerger Aff., Ex. 2], Sub

Subcontract with Universal, Section 2 ["no changes for work performed outside the scope of this

contract shall be paid for by Siebe Environmental Controls unless authorized in writing in

advance of the work"] [Schuerger Aff., Ex. 3])

     With respect to plaintiff's claim against the surety, National, for loss of productivity,

there are several principles of law involved.  Plaintiff is required to show that National's

principal, Invensys, caused plaintiff to perform the overtime because it is fundamental that a

surety's liability on a contractor's payment bond is limited to the liability of the contractor

(Lamparter Acoustical Prods., Ltd. v Maryland Cas. Co., 64 AD2d 693 [2d Dept 1978]).

     Whether it was Invensys' fault or directives that caused the extensive overtime or Mezz

Electric' s failure to supervise its own labor and to man the job adequately present further factual

issues.

     There is a general rule that "absent a contractual commitment to the contrary, a prime

contractor is not responsible for delays that its subcontractor may incur unless those delays are

caused by some agency or circumstance under the prime contractor's direction or control"

(Triangle Sheet Metal Works, Inc. v James H. Merritt & Co., supra at 802).  Neither National's

payment bond nor State Finance Law § 137 (5) includes the concept of "loss of labor

productivity."  Because National's liability under the payment bond is defined by its terms,

plaintiff cannot recover against National for loss of labor productivity.  This reasoning also

applies to plaintiff's claim based upon the alleged failure to provide sufficient elevator service

10

and working in an occupied building.

Accordingly, the cross-motion of defendants Invensys and National is granted to the extent of dismissing plaintiff's loss of productivity claims against them.

With respect to that branch of Invensys and National's cross-motion seeking to compel Mezz Electric and the Mezzancellos to place additional monies into the Lien Law Article 3A Trust Fund, the contractor, as trustee, holds the assets for the benefit of the downstream subclaimants on the improvement, who are enumerated in the statute (Naiztat Iron Works, Inc. v Tri-Neck Constr. Corp., 62 Misc 2d 228 [Sup Ct, Kings County 1970]). The court agrees with cross movants' mathematical computations and directs that Mezz Electric and its officers and directors, the Mezzancellos, place an additional $49,824 into the segregated Lien Law Article 3A Trust Fund within 30 days after service of a copy of this order with notice of entry.

In all other respects, the motion and cross-motions are denied without prejudice.

To recapitulate, it is hereby

ORDERED that plaintiff's and third-party defendants' motion for partial summary judgment are denied; and it is further

ORDERED that that part of defendants Mezz Electric and the Mezzancellos cross-motion for partial summary judgment is granted to the extent of dismissing plaintiff's fraud claim based on the alleged misleading bid document, claims based on insufficient vertical transportation and working in an occupied building and delay claims with TDX denials, without written change orders or without subsequent written approvals; and it is further

ORDERED that that part of the cross-motion of defendants Invensys Building Systems Inc. and National Fire Insurance Company of Hartford is granted to the extent of dismissing

plaintiff's loss of productivity claim against them; and it is further

ORDERED that the cross-motion of defendants Invensys Building Systems Inc. and National Fire Insurance Company of Hartford pursuant to Lien Law Article 3-A is granted to the extent of declaring that moneys received by Mezz Electric, Inc., its officers and directors, pursuant to its subcontract with Invensys Building Systems Inc., constitute trust funds, and of directing that Mezz Electric, Inc., and its officers and directors, Guy Mezzancello and Joan Mezzancello, are required to place an additional $49,824 into the segregated Lien Law Article 3A Trust Fund within 30 days after service of a copy of this order with notice of entry, pending further court order.

In all other respects, the motion and cross-motions are denied.

This shall constitute the decision and order of this court.

Dated: March 22, 2006

FILED
MAR 23 2006
COUNTY CLERK'S OFFICE
NEW YORK

ENTER:

_____
J.S.C

12