UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILLIAM A. GROSS CONSTRUCTION
ASSOCIATES, INC.,

                     Plaintiff,

    -against-

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                     Defendant.
------------------------------------------------------------------x
    And successive impleader actions.
------------------------------------------------------------------x

**ECF CASE**

07-CV-10639 (LAK) (AJP)

# CAULDWELL WINGATE'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP
Attorneys for Third-Party Defendant/Fourth-Party Plaintiff
Cauldwell-Wingate Company, LLC
250 Park Avenue
New York, New York 10177
(212) 907-9600

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    THERE IS NO BASIS TO DISMISS EITHER
    THE FIRST OR FOURTH-PARTY ACTIONS ............................................................. 2

    A.    Cauldwell Wingate Is Not A
           Necessary Party To The First-Party Action ......................................................... 2

    B.    Cauldwell Wingate Has Properly Pursued Delay
           And Extra Work Claims In The Fourth-Party Action ........................................... 6

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Barry, Bette & Led Duke Inc. v. State*,
    240 A.D.2d 54, 669 N.Y.S.2d 741 (3d Dep't 1998) ............................................................ 7

*Bovis Lend Lease LMB, Inc. v. GCT Venture, Inc.*,
    285 A.D.2d 68, 728 N.Y.S.2d 25 (1st Dep't 2001) .............................................................. 7

*Borough of W. Mifflin v. Lancaster*,
    45 F.3d 780 (3d Cir. 1995) ................................................................................................. 9

*Burmar Elec. Corp. v. Starrett Bros.*,
    60 A.D.2d 561, 400 N.Y.S.2d 346 (1st Dep't 1977) ........................................................ 6-7

*CCC Ins. Co., Ltd. v. Brooklyn Hosp. Ctr.*,
    No. 03 Civ. 3093 (TPG), 2004 WL 1191980 (S.D.N.Y. May 28, 2004) ............................ 9

*Ettlinger v. Nat'l Sur. Co.*,
    221 N.Y. 467 (1917) .......................................................................................................... 3

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546, 125 S.Ct. 2611 (2005) ................................................................................ 4

*Holland v. Fahnestock & Co., Inc.*,
    210 F.R.D. 487 (S.D.N.Y. 2002) ............................................................................... *passim*

*Huber Lathing Corp. v. Aetna Cas. and Sur. Co.*,
    132 A.D.2d 597, 517 N.Y.S.2d 758 (2d Dep't 1987) ........................................................ 3

*Jaser v. New York Prop. Ins. Underwriting Ass'n*,
    815 F.2d 240 (2d Cir. 1987) ............................................................................................... 6

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007) ............................................................................................... 4

*MMT Sales, Inc. v. Channel 53, Inc., WPGH Div.*,
    No. 92 Civ. 7207 (SS), 1993 WL 541242 (S.D.N.Y. Dec. 27, 1993) ................................ 9

*N. Moore St. Developers, LLC v. Meltzer/Mandl Architects, P.C.*,
    23 A.D.3d 27, 799 N.Y.S.2d 485 (1st Dep't 2005) ............................................................ 7

*Nev. Eighty-Eight, Inc. v. Title Ins. Co. of Minn.*,
    753 F. Supp. 1516 (D. Nev. 1990) ..................................................................................... 5

*Newman-Greene, Inc. v. Alfonzo-Larrain*,
 490 U.S. 826, 109 S.Ct. 2218 (1989)..................................................................................3

*Richmond Steel, Inc. v. Legal and Gen. Assurance Soc'y, Ltd.*,
 799 F. Supp. 234 (D. P.R. 1992).................................................................................. 4, 5

*Schiavone Constr. Co., Inc. v. Triborough Bridge & Tunnel Auth.*,
 209 A.D.2d 598, 619 N.Y.S.2d 117 (2d Dep't 1994).......................................................8

*Triangle Sheet Metal Works v. James H. Merrit*,
 79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991) .......................................................................6

*Viacom Int'l, Inc. v. Kearney*,
 212 F.3d 721 (2d Cir. 2000), *cert. denied*, 531 U.S. 1051 (2000).............................2, 3, 4

**Statutes**

28 U.S.C. § 1359 (1948)..............................................................................................................4

## PRELIMINARY STATEMENT

Cauldwell Wingate[1] respectfully submits this sur-reply to DASNY's reply on the Motion (the "Reply").

The Motion was premised on the purported lack of supplemental jurisdiction over the claims asserted in the Fourth-Party Complaint. The Reply leaves unrefuted the legal arguments that Cauldwell Wingate countered with and that established the basis for such jurisdiction.

DASNY has instead shifted gears, invoking Rule 19 and arguing for the first time that there is no *original* jurisdiction over the First-Party Complaint because of the alleged failure to join necessary, non-diverse parties. DASNY calls for dismissal of the First-Party Complaint, even though it has not even moved on that basis.

DASNY's new argument overlooks well established New York law that a contractor is not a necessary party to an action in which a subcontractor has sued the surety from whom it may obtain complete relief. Cauldwell Wingate is thus *not* a necessary party to the First-Party action, and diversity jurisdiction was not destroyed either by Gross suing American Manufacturers or by American Manufacturers impleading Cauldwell Wingate.

DASNY also maintains that the First-Party Complaint is deficient for the sole reason that Gross may not assert claims for extra work and delay. But in so doing it ignores Gross's claims for contract balance and retainage, which constitute approximately $1 million of the $2.6 million Gross is seeking for its work on the BCC Project. Gross obviously has significant claims against the surety *in addition to* its claims for extra work and delay.

DASNY interjects yet another new argument, based on state law, namely that Cauldwell Wingate's claims against it for extra work and delay also are deficient because Gross's interests

---

[1] All of the capitalized terms used here have the same meaning ascribed to them in Cauldwell Wingate's initial brief in opposition to the Motion.

291076_1/00926-0053

cannot be asserted by Cauldwell Wingate in the absence of a liquidation agreement between Cauldwell Wingate and Gross. As we show below, that argument overlooks the parties' subcontract, which contains separate liquidation provisions under which Gross *may* in fact recover for both extra work and delay, *though only if* Cauldwell Wingate recovers on its similar claims against DASNY.

Ironically, by introducing these new arguments DASNY has only highlighted the relationship between Gross's and Cauldwell Wingate's claims -- all of which arise from the same large construction project -- thereby reinforcing our earlier argument to the Court that it is because the issues here *are* so interrelated that supplemental jurisdiction is warranted.

## ARGUMENT

### THERE IS NO BASIS TO DISMISS EITHER THE FIRST OR FOURTH-PARTY ACTIONS

A. **Cauldwell Wingate Is Not A Necessary Party To The First-Party Action**

In addition to its extra work and delay claims, Gross has claims for contract balance and retainage, to which Cauldwell Wingate is not a necessary party. (*See, e.g.,* Levy Aff., Ex. C, ¶ 19.) Those claims were properly brought against American Manufacturers alone.

Although DASNY casually interchanges the concepts of "interested," "necessary" and "indispensable" parties, (DASNY Br. at 8, 10), the Rule 19 analysis must be precise. A court must first determine "whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000), *cert. denied*, 531 U.S. 1051, 1215 S.Ct. 655 (2000). If the party is deemed "necessary" then the court must determine if it also is "indispensable." *Id.* But if "a party does

not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.*

It is well settled under New York law that a general contractor is *not* a necessary party to an action by a subcontractor under a payment bond. *See, e.g., Huber Lathing Corp. v. Aetna Cas. and Sur. Co.*, 132 A.D.2d 597, 598, 517 N.Y.S.2d 758, 760 (2d Dep't 1987). It is entirely permissible for the subcontractor to sue *either* the general contractor *or* the surety, and, having chosen to proceed against the surety, the subcontractor "cannot be compelled to bring in the principal as a defendant in an action brought by him to obtain a money judgment." *Ettlinger v. Nat'l Sur. Co.*, 221 N.Y. 467, 471 (1917).

The rationale for this rule is that the general contractor and the surety are joint obligors on the payment bond, and because the subcontractor is entitled to only one performance (i.e., from *either* the general contractor *or* the surety, but not both), the subcontractor can obtain complete relief from an action against either one. *See, e.g., Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 499-500 (S.D.N.Y. 2002) (citing *Huber*). Since Gross can obtain complete relief against American Manufacturers, Cauldwell Wingate is not a necessary party to the First-Party action pursuant to Rule 19(a).

Even if Cauldwell Wingate were a necessary party, it still would not be an indispensable party under Rule 19(b). It is "well-settled . . . that *co-obligors* to an agreement are not 'indispensable' parties to a litigation under Rule 19(b)," such that an action must be dismissed for failure to join an indispensable, non-diverse party. *Id.* at 501 (citing *Newman-Greene, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838, 109 S.Ct. 2218, 2226 (1989)).

To paraphrase the decision in *Holland*, which was based on the report and recommendation issued by this Court:

> [E]ven if it is assumed, *arguendo*, that [Cauldwell Wingate] is a necessary party under Rule 19(a), it is not indispensable under Rule 19(b). [Gross] can obtain complete relief in this action, because [American Manufacturers' and Cauldwell Wingate's] liability is joint and several. [American Manufacturers] can avoid sole responsibility for the contract breach by impleading or independently suing [Cauldwell Wingate].

*Holland*, 210 F.R.D. at 503.

It is thus entirely permissible for one obligor (here, American Manufacturers) to implead a joint obligor (Cauldwell Wingate), *even where there would have been no diversity jurisdiction if the obligee (Gross) had asserted claims against the latter*. *See, e.g., id.* at 502. That, of course, is precisely what American Manufacturers did.[2]

Nor does such impleader constitute "collusion" under 28 U.S.C. § 1359 (1948) or warrant realignment of the parties, as DASNY suggests. *See, e.g., Richmond Steel, Inc. v. Legal and Gen. Assurance Soc'y, Ltd.*, 799 F. Supp. 234, 239 (D. P.R. 1992). In *Richmond Steel*, a structural steel installation contractor ("RSI") sued the owner ("PRASA"), architect ("Lebron"), general contractor ("Lluch"), and the insurer ("LGAS") of a composting facility which partially collapsed, as well as an employee of Lebron who assisted in preparing the plans for the facility ("Beato"). Lluch and LGAS asserted third-party claims against Royal, RSI's insurer. Beato then moved to dismiss on the grounds that (*inter alia*), Royal should be realigned as a plaintiff in the

---

[2] This analysis is not disturbed by the Second Circuit's recent decision in *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007). In *Merrill*, the Court revisited that portion of its earlier decision in *Viacom*, which had held that original diversity jurisdiction is not destroyed so long as a necessary party to the first-party action has been impleaded in a third-party action (over which the Court could then assert supplemental jurisdiction). Relying on the Supreme Court's recent decision in *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S.Ct. 2611 (2005), the *Merrill* Court observed that the failure to join a necessary party in the first-party action destroys diversity, and "contaminates" the jurisdictional basis for any third-party actions. Here, however, since Cauldwell Wingate is *not* a necessary party to the First-Party action, its introduction into this case as a third-party defendant did not contaminate this Court's original diversity jurisdiction, but instead was entirely permissible. *See, e.g., Holland*, 210 F.R.D. at 502. And furthermore, to the extent that Cauldwell Wingate asserted claims against DASNY to protect its interest upon being impleaded into this action, the Court has supplemental jurisdiction over those claims. *See, e.g., Viacom*, 212 F.3d at 726-28.

main action, which would have destroyed diversity jurisdiction. The court rejected Beato's argument.

In relevant part, the court observed that diversity jurisdiction was not destroyed because Royal was not a necessary, indispensable party to the main action. *Id.* at 239. It noted that the addition of new parties, through a third-party action, will not divest a federal court of diversity jurisdiction absent evidence of collusion. *Id.* at 239; *see also Nev. Eighty-Eight, Inc. v. Title Ins. Co. of Minn.*, 753 F. Supp. 1516, 1526 (D. Nev. 1990) ("The better view, and the one adopted by this Court, is that third party defendants will only be realigned according to their interests if they qualify as necessary or indispensable parties under Rule 19").

In concluding that diversity jurisdiction was proper and realignment unnecessary, the court in *Richmond Steel necessarily* decided that the impleading of Royal, which was not a necessary party to the main action, *did not constitute collusion*, and therefore, did not warrant realignment so as to defeat diversity jurisdiction.

So too here. Since Cauldwell Wingate was not a necessary party to the First-Party action, its impleader by American Manufacturers does not suggest or constitute collusion and does not, therefore, require realignment of the parties.

Finally, to the extent that DASNY has raised a factual issue regarding whether Cauldwell Wingate is a necessary party, it has the burden of proof on that issue. *See, e.g., Holland*, 210 F.R.D. at 495. DASNY has failed to put forward any facts whatsoever in support of its argument and, accordingly, DASNY has failed to satisfy its burden.

\* \* \*

While district courts have the discretion to weigh the various factors implicated by Rule 19, "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Holland*, 210 F.R.D. at 494-95 (citing *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)).

As shown, DASNY has failed to establish that Gross's claims against American Manufacturers for contract balance and retainage cannot be resolved in the absence of any additional party. Because Cauldwell Wingate is not a necessary party to the prosecution of those claims, and realignment is not required, this Court has original jurisdiction over the First-Party action based on diversity.

### B. Cauldwell Wingate Has Properly Pursued Delay And Extra Work Claims In The Fourth-Party Action

In addition to challenging the Court's original jurisdiction and, by implication, its jurisdiction over the Fourth-Party action, DASNY has introduced another new argument for dismissal of the Fourth-Party action, based on state law, namely, that Cauldwell Wingate may not pursue "'pass through'" claims against DASNY for delay and extra work suffered by Gross in the absence of a liquidation agreement between Gross and Cauldwell Wingate.

Having cited *Triangle Sheet Metal Works v. James H. Merrit*, 79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991), only once in its answering brief, Cauldwell Wingate did not "heavily rely" on it, as DASNY argues. (DASNY Br. at 2.) We agree nevertheless that under *Triangle* Gross may not recover for its delay claims against Cauldwell Wingate unless Cauldwell Wingate prevails against DASNY for such claims. We cited *Burmar Electrical Corp. v. Starrett Brothers,*

60 A.D.2d 561, 400 N.Y.S.2d 346 (1st Dep't 1977), for a similar proposition with regard to extra work claims.

It does not follow, however, that Cauldwell Wingate may not pursue delay and extra work claims related to the work that Gross performed. Indeed, the subcontract between Gross and Cauldwell Wingate (the "Gross Subcontract") included liquidation provisions with respect to both delay and extra work which assumed that Cauldwell Wingate would do precisely that. (Hewitt Aff., Ex. I at §§ 5.3 and 9.4.)

Liquidation agreements are "designed to overcome the[] legal impediments" against a subcontractor recovering as a result of an owner's delays, and are "uniformly upheld in this state." *Bovis Lend Lease LMB, Inc. v. GCT Venture Inc.*, 285 A.D.2d 68, 69-70, 728 N.Y.S.2d 25, 27 (1st Dep't 2001) (citations omitted). They typically contain three basic elements: "(1) impos[ing] liability upon the general contractor for the subcontractor's increased costs, thereby providing the general contractor with a basis for legal action against the owner, (2) liquidat[ing] that liability in the amount of the general contractor's recovery against the owner, and (3) provid[ing] for a pass-through of that recovery to the subcontractor." *Id.* at 70, 728 N.Y.S.2d at 27, (quoting *Barry, Bette & Led Duke Inc. v. State*, 240 A.D.2d 54, 56, 669 N.Y.S.2d 741, 743 (3d Dep't 1998).[3]

"[L]iquidating agreements . . . need not take a particular form. They may be memorialized in the subcontract or in a separate written agreement and may be assembled from several documents executed over a period of years." *Barry, Bette* at 56; 669 N.Y.S.2d at 743;

---

[3] Of course, as the court noted in *N. Moore St. Developers, LLC v. Meltzer/Mandl Architects, P.C.*, 23 A.D.3d 27, 34, 799 N.Y.S.2d 485, 491 (1st Dep't 2005), there need not be any express liability running from the general contractor to the subcontractor in order for the general contractor to assert claims on behalf of the subcontractor under a liquidation agreement. Rather, the general contractor's liability to the subcontractor under the liquidation agreement can be premised upon and limited to its recovery from the owner, as is the case here.

see also *Schiavone Constr. Co., Inc. v. Triborough Bridge & Tunnel Auth.*, 209 A.D.2d 598, 600, 619 N.Y.S.2d 117, 118 (2d Dep't 1994).

Section 5.3 of the Gross Subcontract provides in pertinent part:

> Where such delays are caused by the Owner, *except to the extent any costs or claim for such delays are recognized and paid by the Owner under the Contract,* the extension of time granted shall be Subcontractor's sole remedy.

(Hewitt Aff., Ex. I at § 5.3.) (Emphasis added.) Thus, with respect to delay, the parties agreed that if -- though only if -- Cauldwell Wingate recovered against DASNY for delay suffered by Gross, that recovery would be passed through to Gross.

DASNY's assertion that Gross's "remedy for delay caused by DASNY" was limited to "an extension of time," (DASNY Br. at 6), thus ignores the plain language of the Gross Subcontract. And DASNY improperly cites *Schiavone* in this context, (*see* DASNY Br. at 5), since *Schiavone* specifically provides for a "pass through" where, as here, the parties' subcontract provides that the contractor may "liquidate its liability to the subcontractors in such amounts as may be recovered against the defendants." *Schiavone,* 209 A.D.2d at 599-600, 619 N.Y.S.2d at 118.

With respect to extra work, the Gross Subcontract also contains a liquidation provision. Section 9.4 provides in pertinent part:

> The Contractor . . . at its sole discretion, may . . . institute suit for damages for extra work or contest any deduction or refusal to pay by the Owner for any reason which involves the Work of the Subcontractor. . . . In the case of any recovery, the Subcontractor shall be entitled to those amounts allocated to its work, less overhead and profit to the Contractor . . . .

(Hewitt Aff., Ex. I at § 9.4.) DASNY references this section, but disingenuously argues that it does not permit Cauldwell Wingate to bring *delay* claims against DASNY, thus ignoring that this particular section deals with extra work, *not* delay. (DASNY Br. at 6.)

Accordingly, Cauldwell Wingate has properly included claims pertaining to Gross among the extra work and delay claims it has asserted in the Fourth-Party action. As we demonstrated in our earlier brief on the Motion, those claims arise from the same construction project as Gross's contract balance and retainage claims, and those contract balance and retainage claims, as well as Cauldwell Wingate's defenses to them, are intertwined with the extra work claims. (*See, e.g.,* Hayes Aff., ¶¶ 6-11.) Since the delay and extra work claims arise from the same case and controversy as presented by the contract balance/retainage claims, they have properly been asserted in the Fourth-Party action. *See, e.g., MMT Sales, Inc. v. Channel 53, Inc., WPGH Div.*, No. 92 Civ. 7207 (SS), 1993 WL 541242 (S.D.N.Y. Dec. 27, 1993); *CCC Ins. Co., Ltd. v. Brooklyn Hosp. Ctr.*, No. 03 Civ. 3093 (TPG), 2004 WL 1191980, at *4 (S.D.N.Y. May 28, 2004); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).

## CONCLUSION

For all of the reasons set forth above, and those articulated in Cauldwell Wingate's prior brief on the Motion, Cauldwell Wingate respectfully requests that the Motion be denied in all respects.

Dated: New York, New York
　　　　August 14, 2008

　　　　　　　　　　　　　　　　INGRAM YUZEK GAINEN CARROLL &
　　　　　　　　　　　　　　　　BERTOLOTTI, LLP

　　　　　　　　　　　　　　　　By: *Patricia Hewitt*
　　　　　　　　　　　　　　　　　　Larry F. Gainen (LG-9351)
　　　　　　　　　　　　　　　　　　Patricia Hewitt (PH-7769)
　　　　　　　　　　　　　　　　　　Caitlin L. Bronner (CB-4280)
　　　　　　　　　　　　　　　　Attorneys for Third-Party Defendant/
　　　　　　　　　　　　　　　　　Fourth-Party Plaintiff
　　　　　　　　　　　　　　　　　Cauldwell Wingate Company, LLC
　　　　　　　　　　　　　　　　250 Park Avenue
　　　　　　　　　　　　　　　　New York, New York  10177
　　　　　　　　　　　　　　　　(212) 907-9600

## CERTIFICATE OF SERVICE

      I am an attorney admitted to practice before this Court and am associated with Ingram Yuzek Gainen Carroll & Bertolotti, LLP, attorneys for Third-Party Defendant/Fourth-Party Plaintiff Cauldwell Wingate Company, LLC. I certify that on August 14, 2008, I caused copies of **Cauldwell Wingate's Sur-Reply Memorandum of Law in Opposition to Motion to Dismiss**, dated August 14, 2008, to be e-filed and served upon the following in the manner indicated:

**<u>Via electronic filing</u>:**[1]

Edwin M. Levy, Esq.
New York City Law Department
Office of the Corporation Counsel
  of the City of New York
100 Church Street, Room 3-214
New York, New York 10007

Carol A. Sigmond, Esq.
Dunnington, Bartholow & Miller, L.L.P.
477 Madison Avenue, 12th Floor
New York, New York 10017

Vincent J. Zichello, Esq.
Zichello & McIntyre, L.L.P.
420 Lexington Avenue, Suite 2800
New York, New York, 10170

Frank P. Ribaudo, Esq.
Tunstead & Schechter
500 North Broadway
Jericho, NY 11753

Constantine T. Tzifas, Esq.
Arthur J. Semetis, P.C.
286 Madison Avenue
New York, NY 10017

Steven G. Rubin, Esq.
Steven G. Rubin & Associates, P.C.
225 Old Country Road
Melville, NY 11747

---

[1] Per Section 9 of the ECF rules, electronic filing constitutes service.

Marc S. Krieg, Esq.
Krieg Associates, P.C.
5 Heather Court
Dix Hills, NY 11746

Leonardo D'Alessandro, Esq.
Milber Makris Plousadis & Seiden, LLP
3 Barker Avenue, 6th Floor
White Plains, NY 10601

Steven I. Levin, Esq.
Levin & Glasser, P.C.
420 Lexington Avenue
New York, NY 10170

Edward T. Byrne, Esq.
Murtagh, Cohen & Byrne
100 North Park Avenue
Rockville Centre, NY 11570


Dated:  New York, New York
        August 14, 2008

_____
Caitlin L. Bronner