Electronic Filing
ECF 1:07-cv-10639

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WILLIAM A. GROSS CONSTRUCTION            07-CV-10639-LAK-AJP
ASSOCIATES, INC.,

                            Plaintiff,

                - against -

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

                          Defendant.
-------------------------------------------------------------------X
        and successive impleader actions.
-------------------------------------------------------------------X

Sur-Reply
Memorandum of Law
on behalf of
American Manufacturers Mutual Insurance

ZICHELLO & McINTYRE, LLP
420 Lexington Avenue
New York, NY 10170
Tel. 212-972-5560
E-mail  zimc@msn.com

# Contents

Authorities   ii

Preliminary Statement   1

Point I - -   Contrary to DASNY's argument, a surety may be sued alone; the principal obligor is not a necessary, let alone an indispensable, party.   1

Point II - -   When a surety is sued alone, a standard procedure is for the surety to implead the principal obligor.   3

Point III - -   When a suit is commenced by a subcontractor, it is entirely proper for the prime contractor to implead an owner who is or may be liable to the prime for all or part of the claims made by the sub.   4

Point IV - -   American would welcome a legitimate motion by DASNY to dismiss Gross's claims.   8

Conclusion:   DASNY's challenge to this court's jurisdiction must be denied.   10

## Table of Authorities

**Cases**

Ardsley Contr. v. Port Authority, 61 AD2d 953 (1st Dept 1978) . . . . . . . . . . . . . . . . . . . . . 6

Barry, Bette & Led Duke v. State, 240 AD2d 54 (2d Dept 1998) . . . . . . . . . . . . . . . . . . . . . 6

Degnon v. City of New York, 235 NY 481 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Honeywell v. J.P. Maguire, 2000 US Dist Lexis 3699 (SDNY) . . . . . . . . . . . . . . . . . . . . . . 9

Lambert Houses v. HRH Equity, 117 AD2d 227 (1st Dept 1986) . . . . . . . . . . . . . . . . . . . . 7

Martin Mechanical v. Mars Assocs, 158 AD2d 280, 281( 1st Dept 1990) . . . . . . . . . . . . 7, 9

McGuinness v. National Union, 1995 U.S. Dist Lexis 7741 (D Mass 1995) . . . . . . . . . . . . 2

Port Chester Electrical v. Fireman's Fund, 1995 US Dist Lexis 116 (SDNY 1995) . . . . . . . 8

Port Chester Electrical v. HBE, 978 F2d 820 (2d Cir 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Psaty & Fuhrman v. Continental Casualty, 278 AD 159 (1st Dept 1951) . . . . . . . . . . . . . . . 4

Schiavone v. T.B.T.A., 209 AD 2d 598 (2d Dept 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Severin v. U.S., 99 C. Cls 435 (U.S. Claims Court 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thompson v. Taylor, 72 NY 32 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Triangle Sheet Metal v. James H. Merritt, 79 NY2d 801 (1991) . . . . . . . . . . . . . . . . . . . 8, 9

U.S. v. American Druggists, 627 F Supp 315 (D Md 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Statutes**

NY General Obligations Law §15-701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NY Lien Law §44-b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

NY State Finance Law §137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Secondary Authorities**

Bender's Forms for Civil Practice, Form No. 2511: 1 .................................. 2

Report of Law Revision Commission dtd Mar 19, 1964, in Governor's Bill Jacket for L 1964, c 700 .......................................................................... 6

Restatement (Third) Suretyship and Guaranty §22 ................................... 3

Stearns, Law of Suretyship (5th ed 1951) §1.4, p. 4 ................................... 1

## Preliminary Statement

This sur-reply is submitted, with permission of the court, because DASNY's reply papers spin its motion around, turning from Section 1367 of 28 U.S. Code to Section 1359 - - from disputing supplemental jurisdiction to disparaging diversity jurisdiction.

DASNY attempts this daring forensic pirouette to get out of federal court, now saying pretty much the exact opposite of what it said before.

DASNY previously said the impleader case against it was not "part of the same case or controversy" as the original case. DASNY now says the opposite: the controversy has no parts; it has been separated artificially, indeed, "collusively." (*sic*)

DASNY previously said there was not enough in common for supplemental jurisdiction. DASNY now says diversity jurisdiction is fake, because there is but one, common cause, all against DASNY.

DASNY's turnaround trips up on the hard realities of this case, and deep-rooted principles of law, which we will trace below, slowly, one step at a time, and in a straight line.

## Point I

**Contrary to DASNY's argument, a surety may be sued alone; the principal obligor is not a necessary, let alone an indispensable, party.**

As a matter of substantive law, an action on a surety bond may ordinarily be brought, either, against both the principal and surety together or, alternatively, against the surety alone. The choice is the claimant's. That much is black letter law. See, e.g., Stearns, Law of Suretyship (5th ed 1951) §1.4, p. 4. Suits naming the surety alone are not at all

1

unusual. Formbooks even contain forms for suits against sureties alone. See, e.g., Bender's Forms for Civil Practice, Form No. 2511: 1.

What's more, as a matter of New York law, a surety cannot even compel an unwilling claimant to sue the principal obligor. This abrogation of the old rule of Pain v. Packard is actually embodied in a state statute: NY General Obligations Law §15-701.

Nor is any exception to this general provision carved out by the particular state statute pursuant to which the payment bond in ths case was issued, NY State Finance Law §137. (Were it otherwise it would seriously dilute the utility of these bonds.)

It follows that a principal obligor is not even a "necessary" party to a suit against a surety, let alone an "indispensable" party, for purposes of compulsory joinder. And it has been so held. See, e.g., U.S. v. American Druggists, 627 F Supp 315 (D Md 1985); McGuinness v. National Union, 1995 U.S. Dist Lexis 7741 (D Mass 1995).

Furthermore, the actual bond in this case, as written, leaves no doubt that the principal and surety obligate themselves "jointly and severally." And the bond's forum-selection clause explicitly permits suit in a local "United States District Court." (A copy of the bond was appended to the complaint and is included in "Exhibit C" to the Declaration of Edwin M. Levy dated June 13, 2008.)

As a matter of law, therefore, plaintiff Gross is entirely within its rights to choose to sue the surety American alone, without joining Cauldwell, and to do so in this federal court.

Consequently, there is no way American could force Gross to sue in state

2

court even if American wanted to.[1]  And there is no way American can compel Gross to join Cauldwell as a direct defendant.  American's hands are tied.

American is bound by applicable law, and the terms of the bond as written.  And, by the way, the bond was issued back in 2002, not as some recent arrangement contrived specially to manufacture jurisdiction here.

Nor, alas, is there anything make-believe, or "sham," about Gross's suit against American.  Gross is plainly aiming for a real judgment against American, collectible out of American's own assets, without regard to when if ever or how much if anything American can ultimately collect from Cauldwell.  After all, that is why you have sureties, isn't it?  So, as far as Gross is concerned, collecting from Cauldwell is American's problem.

Which brings us to our next step.

### Point II

**When a surety is sued alone, a standard procedure is for the surety to implead the principal obligor.**

A surety is entitled to indemnification by the principal obligor.  Equity confers this right, as can inherent corollary of suretyship.  See Thompson v. Taylor, 72 NY 32 (1878).  Also, Williston on Contracts (3d ed 1967) § 1274.  Also, Restatement (Third) Suretyship and Guaranty §22.

In practice, the surety's rights to indemnification are typically reinforced,

---

[1] Candidly, if Gross had sued in Bronx state court, American would want a change of venue, preferably to Montreal.

3

as here, by written agreements made at or before the time the bond is issued. (See American's Third-Party Complaint p. 3 ¶10.)

And when a surety is sued alone, a standard way for the surety to seek indemnity is to implead the principal. Such impleaders are hardly novel or unusual. See, e.g., Psaty & Fuhrman v. Continental Casualty, 278 AD 159 (1st Dept 1951).

In federal court, such a claim-over gets the benefit of "ancillary," or "supplemental," jurisdiction. There is no need to "contrive" diversity, though, as it happens, there is diversity here between American (Illinois) and Cauldwell (New York).

American's bringing Cauldwell into this case is no gimmick. There is nothing "sham" about American's claim-over against Cauldwell. Make no mistake about it: despite some obvious common interests, like defeating Gross's claims, American and Cauldwell are genuinely adverse parties. If Gross gets a judgment against American, American really does want judgment-over against Cauldwell - - and has every intention of enforcing such a judgment against Cauldwell's assets.

Which brings us to Cauldwell, and the next step in our analysis.

### Point III

**When a suit is commenced by a subcontractor, it is entirely proper for the prime contractor to implead the project owner who is or may be liable to the prime for all or part of the claims made by the subcontractor.**

The claims initiated by plaintiff Gross in this action - - for project delays, for contract extras, and for amounts unpaid because of DASNY backcharges - - all lead to DASNY,

4

at least as Cauldwell sees things.[2]

So it was only natural for Cauldwell to implead DASNY, contending DASNY is liable to Cauldwell "for all or part of the claims made against" Cauldwell.

And since it "forms a part of the same case or controversy," Cauldwell's claim over is plainly within this court's "supplemental jurisdiction" (or what used to be called "ancillary" jurisdiction.)

Nevertheless, DASNY protests.

From the mere fact that Gross initiated the lawsuit, DASNY conjures up an imaginary "collusive agreement" to concoct diversity jurisdiction. Yet, at the same time, DASNY contends Cauldwell is disabled from suing DASNY because there is *no agreement* - - no agreement whereby Gross explicitly authorizes Cauldwell to sue DASNY on Gross's behalf, no so-called "liquidating agreement."

Ironically, the kind of "liquidating agreement" DASNY is talking about is necessary only in the opposite scenario: where the sub does *not* sue but the sub's claims are nevertheless included in a suit initiated by the prime. In that scenario - - unless the prime has already paid the sub (which the prime might not want to do, and risk losing versus the owner) - - the prime will be met with the defense that it has not actually incurred the damages it sues for. That is exactly what happened in the Degnon case, Degnon v. City of New York, 235 NY 481 (1923). The response was to cope with the problem by special agreements.

These agreements became known in New York as "Degnon agreements"

---

[2] The road to DASNY was mapped in our previous memo, so we will refrain from re-tracing it here.

5

(after the eponymous case), or "pass-through" agreements (the sub's claims are passed through the prime to the owner), or "liquidating agreements" (the sub typically agrees to liquidate the amount of its claim to whatever is ultimately recovered from the owner.)[3] See, e.g., Ardsley Contr. v. Port Authority, 61 AD2d 953 (1st Dept 1978).

Without some kind of liquidating agreement (the terms can vary), whether a later stand-alone or a clause right in the original subcontract itself, the prime is not permitted to initiate a suit to collect for a sub the prime has not paid. See, e.g., Barry, Bette & Led Duke v. State, 240 AD2d 54 (2d Dept 1998).

Nor of course can a sub itself sue the owner directly. There is no privity of contract. See Barry, Bette, 240 AD2d at 56.

DASNY's suggestions (Reply Memo p. 10, p. 11) to the contrary are puzzling. Gross could not properly join DASNY as a direct defendant.

DASNY's reference (Reply Memo p. 12) to Gross's mechanic's lien is a red herring. Section 137 payment bonds are designed to spare claimants the trouble of lien enforcement. That was the very purpose these bonds were divorced from mechanics' liens by a 1964 revision. See Report of Law Revision Commission dtd Mar 19, 1964, in Governor's Bill Jacket for L 1964, c 700. Nor would DASNY be a necessary or even a proper party in a lien-enforcement action if, as often happens, the lien itself were "bonded." See NY Lien Law §44-b. And such lien claims are worthless except to the extent they attach money otherwise payable. DASNY sends Gross on a fool's errand unless DASNY is prepared to pay enough to satisfy the lien. DASNY doesn't say it is

---

[3] "Severin agreements" are the federal analog, after Severin v. U.S., 99 C. Cls 435 (U.S. Claims Court 1943).

ready to pay. DASNY does not even divulge how much - - if anything - - DASNY is holding by reason of Gross's lien.

While subs cannot sue owners directly, liquidating agreements enable primes to sue on behalf of the subs, even if the primes have not already paid the subs' claims. Of course, in such a situation, the sub can still sue the prime and the prime can then claim over against the owner. Liquidating agreements do not preclude third-party practice. See Lambert Houses v. HRH Equity, 117 AD2d 227 (1st Dept 1986) ("There is no rule against a defendant settling and agreeing to cooperate with the plaintiff [against the third-party defendant]"). See also Martin Mechanical v. Mars Assocs., 158 AD2d 280 (1st Dept 1990).[4]

On the other hand, liquidating agreements should normally be unnecessary for third-party practice. The liquidating agreement was devised to enable a prime contractor to assert claims for a sub in a case initiated by the prime, as a plaintiff, before paying the sub's claims. Prior payment is never necessary for a third-party action. Third-party practice is designed for claims-over that are merely contingent.

Of course, it is always fair game for an impleaded defendant to challenge the validity of the underlying claim. DASNY evidently wants to do so here. Though DASNY folds its merits challenge (improperly we think) into what is advertised as a motion challenging subject-matter jurisdiction.

In the course of this excursion, DASNY leads us into the peculiarities of

---

[4]Martin, by the way, provided for a separate trial of the third-party action, but that is something best considered by the trial judge, later on.

7

New York jurisprudence governing delay claims, and the curious pathways opened by these liquidating agreements there.

So we are compelled to respond, which takes us to the next (and, mercifully, last) step of our analysis.

### Point IV
#### American would welcome a legitimate motion by DASNY to dismiss Gross's claims.

DASNY begins by impugning our motives. DASNY sees evidence of "collusion" in American's "failure to move to dismiss [Gross's] illegal claims", at the pleading stage. (DASNY Reply Memo, p. 7 and p. 11.)

Frankly, we do not read the pleadings the same way DASNY does. To us, they seem to raise, not foreclose, issues.

Take the delay claims, for example, which are DASNY's main focus.

It is not clear to us that all parties agree that DASNY, and DASNY alone, is to blame for all the delays on this project. To the contrary, DASNY says it in "no way concedes" such blame. (DASNY Reply Memo p. 3).

That sounds like a material issue to us. It matters because the Triangle case denies damages to a sub only for delays for which the owner (here DASNY) is responsible. See Triangle Sheet Metal v. James H. Merritt, 79 NY2d 801 (1991).

Oddly, DASNY relies on a case that was remanded for the very purpose of making a fact determination of who caused the delays. Port Chester Electrical v. Fireman's Fund, 1995 US Dist Lexis 116 (SDNY 1995) on remand from Port Chester Electrical v. HBE, 978 F2d 820 (2d Cir 1992). The Triangle case itself was resolved only

8

*after trial.* See Triangle, 79 NY2d at 802. Other cases have found issues of fact precluding summary judgments dismissing delay claims. See, e.g., Martin Mechanical v. Mars Assocs, 158 AD2d 280, 281( 1st Dept 1990).

Furthermore, Triangle allows a loophole when there is an agreement between sub and prime covering owner-caused delays. See 79 NY2d at 803. And the Schiavone case holds that a liquidating agreement suffices. See Schiavone v. T.B.T.A., 209 AD 2d 598 (2d Dept 1994). It may seem a curious transformation of agreements which originated to limit, not enlarge, contractors' liability, but, after Triangle, that has become an accepted use for such liquidating agreements.

There is in fact such an agreement in Gross's subcontract, but DASNY seems to have missed it. DASNY refers (Reply Memo, p. 6) to the part making an extension of time the subcontractor's sole remedy, but missed the part reading "except to the extent any costs or claim for such delays are recognized and paid by the Owner."

Is that clause enough under Schiavone? Gross will presumably say so. There is an arguably contrary interpretation suggested by one of the cases cited by DASNY, Honeywell v. J.P. Maguire, 2000 US Dist Lexis 3699 (SDNY). However, Gross may also point to other provisions, and to other facts and circumstances. It is too early for us to tell. We lack DASNY's certitude.

Consequently, it is by no means clear - - not to us, at any rate - - that Gross's delay claims can be dismissed at this stage of the case.

We are also aware that delay claims, or, more precisely, certain items of damages claimed for delay, do not constitute "labor or material" compensable under a payment bond. That is why our answering pleading asks that plaintiff Gross be put to

9

its proof on that score. (American's Answer p. 3 ¶ "Ninth") Only we did not see that issue as ripe for a motion at this stage, as DASNY evidently does.

And, as we see it, Gross's case is not only about delay claims. Gross seeks an unpaid balance, and additional payments, for extra work. As these seem to be in dispute, we do not see how American could make a successful (maybe not even a good faith) motion to dismiss, not yet anyway, not at this time.

So, call us short-sighted, if you will, even timorous. But spare us the reckless hyperbole of "collusion."

We have no desire to pass up a chance to defeat the claims against our client American in this case.

On the contrary, if DASNY files a good motion to dismiss Gross's action, or for summary judgment against Gross, DASNY will find us on DASNY's side. And if Gross then accuses us of "collusion," with DASNY . . . so be it.

### Conclusion: DASNY's challenge to this court's jurisdiction must be denied.

For now, however, we believe this case has to proceed. DASNY's arguments challenging this court's jurisdiction are invalid, no matter how DASNY spins them. DASNY's current motions should be denied.

Dated: New York, NY
August 15, 2008

Respectfully submitted,

ZICHELLO & McINTYRE, LLP
Attorneys for American Manufacturers

Mutual Insurance Company

By: _____
Vincent J. Zichello (VZ-3487)
Office & P.O. Address
420 Lexington Avenue
New York, NY 10170
Tel 212-972-5560
E-mail zimc@msn.com

11