UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

WILLIAM A. GROSS CONSTRUCTION                    07-CV-10639 (LAK)(AJP)
ASSOCIATES, INC.,            *Plaintiff,*

     *-against-*

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,          *Defendant.*
--------------------------------------------------------------------X
AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,          *Third-Party Plaintiff,*

    *-against-*

CAULDWELL-WINGATE COMPANY, LLC,
             *Third-Party Defendant.*
--------------------------------------------------------------------X
CAULDWELL-WINGATE COMPANY, LLC,
             *Fourth-Party Plaintiff,*

    *-against-*

DORMITORY AUTHORITY-STATE OF NEW YORK,
             *Fourth-Party Defendant.*
--------------------------------------------------------------------X
DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,                  *Fifth-Party Plaintiff,*

    *-against-*

A. WILLIAMS TRUCKING & BACKHOE
TRENCHING, INC., et al.    *Fifth-Party Defendants.*
--------------------------------------------------------------------X

### FIFTH-PARTY DEFENDANT BOVIS LEND
### LEASE LMB, INC.'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS

**ARTHUR J. SEMETIS, P.C.**
*Attorneys for Fifth-Party Defendant,*
*Bovis Lend Lease LMB, Inc.*
286 Madison Avenue
14th Floor
New York, New York 10017
(212) 557-5055

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………….………………………..i

PRELIMINARY STATEMENT……………………...…………………………………………1

STATEMENT OF FACTS…..……………..……………………………………………………2


LEGAL ARGUMENTS:

POINT I

      THIS COURT LACKS SUBJECT MATTER JURISDICTION
      OVER THE FIFTH-PARTY COMPLAINT UPON JOINDER
      OF CAULDWELL WINGATE AS A NECESSARY AND
      INDISPENSABLE PARTY TO THE MAIN ACTION………………..…………………7

POINT II

      SUPPLEMENTAL JURISDICTION SHOULD NOT LIE TO
      SUBJECT SEVERAL CASES IN WHICH STATE LAW CLAIMS
      SUBSTANTIALLY PREDOMINATE TO FEDERAL JURISDICTION ...……………13


CONCLUSION………………………………………...…………………………………….....17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76 (1st Cir. 1992) ……………....... 10

Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York, 762 F.2d 205 (2d Cir. 1985) ……….…....10

Atlantic Contg'g Corp. v. Hartford Acc. & Indem. Co., 55 A.D.2d 571,
547 N.Y.S.2d 649 (2d Dep't 1989), *appeal denied,* 76 N.Y.2d 709 (1990)……………………….8

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) …………………………………….…….7, 16

Chicago v. International College of Surgeons, 522 U.S. 156 (1997) …………….…..……………14

Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70 (2d Cir. 1984) ……………..…………..9

Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) …………….……………….12

Halleran v. Hoffman, 966 F.2d 45 (1st Cir. 1992…………….………….…..…………..…………10

In re Olympic Mills Corp., 477 F.3d 1 (1st Cir. 2007) ……………..………….…..……………10

International Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
411 F. Supp. 2d 458 (S.D.N.Y. 2006) ……………..….………….…..………………..…….10

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,140 F.3d 442 (2d Cir. 1998) ……………..….14

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3rd Cir. 1993) ……………12

Jaser v. New York Prop. Ins. Underwriting Ass'n, 815 F.2d 240 (2d Cir. 1987) …………….…..11

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994) ……………..……………..…10

Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007) ……………...……12

Picciotto v. Continental Cas. Co., 512 F.3d 9 (1st Cir. 2008) …..……………..……………..…………9

Rivet v. Regions Bk. of La., 522 U.S. 470 (1998) ……………..……….…..…………….…..……7

Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806) …………….…..…………….…………....10

United Mine Workers v. Gibbs, 383 U.S. 715 (1966) …………….…..…………….…..….……16

Universal Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co.,
2001 U.S. Dist. LEXIS 7101 (S.D.N.Y. 2001), *aff'd,* 312 F.3d 82 (2d Cir. 2002) ...................11

Vedder Price Kaufman & Kammholz v. First Dynasty Mines, Ltd.,
2001 U.S. Dist. LEXIS 16146 (S.D.N.Y. 2001) ………….....………....………….....…9, 11

**Statutes:**

28 U.S.C. §1332 …………….....……………....…..…………....…………………………1, Et. Seq.
28 U.S.C. §1367 …………….....……………....…..…………....…………………………1, Et. Seq.

Fed. R. Civ. P. 12(b)(7) …………….....………....………....…..…………………………1, Et. Seq.
Fed. R. Civ. P. 19 …………...…………....…………....………...…..…………....………….9, 11

**Other Authorities:.**

3A Moore's Fed. Prac. ¶ 19.11 (2d ed. 1982) …………….....……….....…………….....…………..9
4 Moore's Fed. Prac. § 17.01[1] (3rd ed. 2005) …………….....………....…………...…………..10

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Fifth-Party Defendant, Bovis Lend Lease LMB, Inc. ("Bovis"), in support of its motion seeking an order mandating joinder of Third-Party Defendant and Fourth-Party Plaintiff, Cauldwell Wingate Company, LLC ("Cauldwell Wingate"), as a necessary and indispensable party, pursuant to Fed. R. Civ. P. Rule 19, to the original action commenced in this Court captioned, *William A. Gross Construction Associates, Inc. v. American Manufacturers Mutual Insurance Company*, ("Main Action"). The joinder of Cauldwell Wingate as an indispensable party in the Main Action will divest this Court of the sole ground alleged for subject matter jurisdiction, *to wit,* diversity of citizenship,[1] and requires dismissal, pursuant to Fed. R. Civ. P. Rule 12(b)(7), of the above-captioned actions in their entirety since the only predicate for the exercise of subject matter jurisdiction in the remaining actions before this Court is based upon supplemental jurisdiction, as provided in 28 U.S.C. §1367(a). Supplemental jurisdiction cannot be invoked in the absence of an original basis for the invocation of federal subject matter jurisdiction.

In the alternative, Bovis moves the Court for dismissal of the Fifth-Party Complaint on the grounds that the exercise of supplemental jurisdiction, 28 U.S.C. §1367(a), should be declined in this matter where there is a substantial predominance of state law issues that far exceed the scope of Plaintiff, Gross' sole cause of action based upon the Labor and Material Payment Bond provided by Cauldwell Wingate's surety, American Manufacturers.

---

[1] 28 U.S.C. §1332. Plaintiff's Amended Complaint, ¶ 1, p. 1.

## STATEMENT OF FACTS

The facts salient to a resolution of this matter are stated in the accompanying Declaration of Arthur J. Semetis, dated September 4, 2008, and the exhibits attached thereto and referenced therein ("Semetis Dec."). For the convenience of the Court, a brief summary is provided.

The Main Action was commenced on or about November 28, 2007 by Plaintiff Gross, a subcontractor domiciled in New York that performed certain site work during the construction of the Bronx County Hall of Justice ("Project"), against American Manufacturers, an Illinois-based corporation that issued a Labor and Material Payment Bond ("Bond") on behalf of Third-Party Plaintiff and Fourth-Party Defendant, Cauldwell Wingate.

Cauldwell Wingate is the general contractor that entered into an agreement with Gross to perform a small portion of the work required under Cauldwell Wingate's general construction contract with DASNY for the Project.  Gross filed an Amended Complaint on or about December 11, 2007.[2]

In its Amended Complaint, Gross seeks additional compensation of $2.6 million from American Manufacturers, Cauldwell Wingate's surety, allegedly due under Gross' $ 3.8 million subcontract with Cauldwell Wingate.[3]  The crux of Gross' Amended Complaint seeks approximately $1.6 million in claims for extra work and delay damages that are wholly outside the scope of available relief under the Bond.[4] It is manifestly clear that Gross has attempted to manufacture federal diversity jurisdiction by singularly naming only the diverse defendant, American Manufacturers, in connection with its claims.

However, in order to accord Gross complete relief for the allegations pled in its Amended Complaint, Cauldwell Wingate should be deemed to be both a necessary and indispensable party

---

[2] A copy of Gross' Amended Complaint is annexed as Exhibit 2 to the Semetis Dec.
[3] *See,* Exhibit 2 to Semetis Dec., ¶¶ 13, 18-20, 27, pp. 4, 5-6 and 8, respectively.
[4] *See,* Exhibit 2 to the Semetis Dec., ¶¶ 14-27, pp. 4-8.

2

in accordance with FRCP Rule 19 since it is the only party with whom Gross can assert the bulk of the claims in its Amended Complaint, *i.e.,* for extra work and delay damages allegedly incurred in the performance of Gross' subcontract.

Although the addition of Cauldwell Wingate as a defendant in the Main-Party Action will divest this Court of diversity jurisdiction since both Gross and Cauldwell Wingate are residents of New York, in addition to the absence of a federal question, dismissal of the Main Action is required pursuant to FRCP 12(b)(7). Moreover, since the remainder of the above-captioned actions are predicated upon the supplemental jurisdiction provisions of 28 U.S.C. §1367, and are bereft of any independent grounds for the exercise of federal subject matter jurisdiction, dismissal of the same is warranted in the absence of diversity jurisdiction in the Main Action. Finally, as all parties are fully able to litigate their state law claims in New York state courts, any claims of prejudice are avoided.

American Manufacturers filed an Answer on or about December 17, 2007.[5] In essence, American Manufacturer's Answer denies knowledge or information sufficient to form a belief as to the truth of the substantive allegations contained in Gross' Amended Complaint, "except that Cauldwell (the principal obligor on the bond for which American was surety) has denied those allegations, has denied due and complete performance by Gross, has denied Gross is entitled to payment as claimed, and has specifically denied that all conditions precedent for any further payment to Gross have occurred ..."[6]

A mere review of the allegations and defenses in American Manufacturer's Answer further supports Bovis' motion seeking an order pursuant to FRCP Rule 19 mandating the addition of Cauldwell Wingate as a defendant in the Main Action and dismissing Gross'

---

[5] A copy of American Manufacturers' Answer to the Amended Complaint is attached as Exhibit 3 to the Semetis Dec.

[6] Exhibit 3 to the Semetis Dec., ¶ **FIFTH**, p. 2.

Amended Complaint since it is patently clear that Cauldwell Wingate is the real party in interest and is the only party who possesses the capacity to resolve the majority of Gross' claims.

Nonetheless, in an obvious orchestrated attempt to maintain federal diversity jurisdiction at all costs, American Manufacturers brought the Third-Party Complaint against Cauldwell Wingate seeking both common-law and contractual indemnification on the day after it filed its Answer.[7]  Cauldwell Wingate filed an Answer to the Third-Party Complaint on or about February 19, 2008.[8] Cauldwell Wingate's Answer effectively denied the allegations of the Third-Party Complaint and interposed an affirmative defense denying Cauldwell Wingate's liability for indemnity on the basis that if "Gross sustained any of the damages alleged in the Amended Complaint, those damages arise from the breach of contract and/or duty of non-parties to this action…"[9]

Thereafter, on or about March 14, 2008, Cauldwell Wingate filed a Fourth-Party Complaint against DASNY.[10]  On or about June 13, 2008, DASNY filed its Answer to the Fourth-Party Complaint with Counterclaims.[11]

The Fourth-Party Complaint involves the entire $52 million general construction contract between DASNY and Cauldwell Wingate.  In connection with the general construction contract, Cauldwell Wingate agreed to provide, among other things, masonry, metal and hardware work, drywall and ceilings, tile and marble, architectural metal and glasswork, painting, and sidewalk

---

[7] A copy of American Manufacturers' Third-Party Complaint is attached as Exhibit 4 to the Semetis Dec.

[8] A copy of Cauldwell Wingate's Answer to the Third-Party Complaint is attached as Exhibit 5 to the Semetis Dec.

[9] Exhibit 5 to the Semetis Dec., ¶ 9, p. 3.

[10] A copy of Cauldwell Wingate's Fourth-Party Complaint is attached as Exhibit 6 to the Semetis Dec.

[11] A copy of DASNY's Answer to the Fourth-Party Complaint and Counterclaims are attached as Exhibit 7 to the Semetis Dec.

and landscaping.[12] Cauldwell Wingate claims damages of $25.4 million, not only for Gross' work on the Project, but also for its drywall and ceiling work subcontractor,[13] its architectural metal and glass work subcontractor,[14] its masonry subcontractor,[15] its tile and marble subcontractor,[16] its hollow metal and hardware work subcontractor,[17] and for its painting subcontractor.[18] In addition, Cauldwell Wingate seeks damages on its own behalf from DASNY.[19]

As both Cauldwell Wingate and DASNY have their principal offices in New York,[20] and no federal questions are raised, jurisdiction with respect to the Fourth-Party Action is said to be premised on supplemental jurisdiction as provided in 28 U.S.C. § 1367(a).

In contrast to the much more circumscribed scope of Gross' Amended Complaint, the Fourth-Party Complaint asserts claims encompassing the entire breadth of Cauldwell Wingate's general construction contract with DASNY, including numerous subcontracts, none of which are related to Plaintiff's claims.

In the Fifth-Party Complaint, Fourth-Party Defendant and Fifth-Party Plaintiff, DASNY, asserts claims against Bovis and sixteen (16) other entities alleging negligence, breach of contract and common law indemnity for the claims asserted against DASNY in the Fourth-Party Action brought by Third-Party Defendant and Fourth-Party Plaintiff, Cauldwell Wingate.[21]

---

[12] *See*, Exhibit 6 to Semetis Dec., ¶¶ 27-28, p. 8.
[13] *See*, Exhibit 6 to Semetis Dec., ¶¶ 71-74, pp. 17-18.
[14] *See*, Exhibit 6 to Semetis Dec., ¶¶ 75-89, pp. 18-21.
[15] *See*, Exhibit 6 to Semetis Dec., ¶¶ 102-103, p. 24.
[16] *See*, Exhibit 6 to Semetis Dec., ¶¶ 104-105, p. 25.
[17] *See*, Exhibit 6 to Semetis Dec., ¶¶ 106-107, pp. 25-26.
[18] *See*, Exhibit 6 to Semetis Dec., ¶¶ 112-114, p. 27.
[19] *See*, Exhibit 6 to Semetis Dec., ¶¶ 47-70, pp. 13-17.
[20] *See*, Exhibit 6 to Semetis Dec., ¶¶2-3, p. 2.
[21] A copy of the Fifth-Party Complaint is attached as Exhibit 1 to the Semetis Dec.

5

In the same manner as the Fourth-Party Complaint, federal jurisdiction for the Fifth-Party Complaint is premised upon 28 U.S.C. § 1367(a), "to the extent that the Court has supplemental jurisdiction over the claim in the Fourth-Party Action."[22]

In sum, based upon the irrefutable conclusion that Cauldwell Wingate is both a necessary and indispensable defendant in the Main Action in accordance with FRCP Rule 19, dismissal of all of the captioned actions is warranted, pursuant to FRCP 12(b) (7), since this Court lacks subject matter jurisdiction over the Main Action in the absence of diversity of citizenship and must decline to exercise supplemental jurisdiction when no proper grounds for federal jurisdiction can be found to exist.

In the alternative, should the Court decline to dismiss the captioned actions under FRCP Rule 12(b) (7), given the substantial predominance of the Fourth-Party and Fifth-Party state law claims over the singular claim on the Bond as alleged in Gross' Amended Complaint, it is respectfully submitted that the Court should exercise its discretion in declining to entertain the Third-Party, Fourth-Party and Fifth-Party Actions on the grounds of supplemental jurisdiction.

---

[22] *See,* Exhibit 1 to Semetis Dec., ¶ 3, p. 3 (footnote omitted).

## LEGAL ARGUMENT

### POINT I

### THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE FIFTH-PARTY COMPLAINT UPON JOINDER OF CAULDWELL WINGATE AS A NECESSARY AND INDISPENSABLE PARTY TO THE MAIN ACTION

The present action presents a classic example of parties' attempts to manufacture and manipulate federal jurisdiction by maintaining an original action against only a diverse party in order to sustain federal subject matter jurisdiction based upon diversity of citizenship. 28 U.S.C. §1332. However, a close reading of the relief demanded by the Plaintiff herein clearly reveals that Gross has intentionally omitted at least one necessary and indispensable party to the Main Action to avoid the divestiture of this case since the joinder of said indispensable party would deprive this Court of complete diversity. At the same time, Gross is unable to obtain complete relief without the addition of Cauldwell Wingate as a necessary and indispensable party.

In <u>Rivet v. Regions Bk. of La.</u>, 522 U.S. 470, 475-476 (1998), the Supreme Court acknowledged that there are a long line of cases that expressly disallow forum manipulations by plaintiffs that are designed to either create or avoid diversity jurisdiction by, for example, misaligning party's interests, naming party's who have no real interest in the controversy or misstating the citizenship of a party. Further, in <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 356 n. 14 (1988), the Court further stated that "forum manipulation concerns are serious and legitimate." As such, Plaintiff's blatant forum fabrication should not be countenanced by this Court.

In light of the Supreme Court's clear denouncements of the type of forum manipulation that is patently obvious herein, it is maintained that this Court must re-align the parties correctly

in accordance with Rule 19 in order to grant the relief that Plaintiff Gross seeks and has demanded in his Amended Complaint, but which is unavailable without the joinder of Cauldwell Wingate as a necessary and indispensable party to the Main Action.

Gross' Amended Complaint seeks damages of approximately $2.6 million, in its capacity as a claimant, as defined in the Bond,[23] which was posted by Cauldwell Wingate in connection with its work at the Project by Cauldwell Wingate's surety, American Manufacturers. As alleged in Gross' Amended Complaint, the vast majority of Gross' alleged damages, which resulted in its sole cause of action under the Bond and the commencement of the Main Action against American Manufacturers, arise from both change orders based upon extra work, as well as damages incurred by reason of alleged delays at the Project.[24]

The scope of recovery under the Bond is limited to damages incurred by: "... a Subcontractor of the CONTRACTOR for labor, material, or both, used or reasonably required for use in the performance of the Contract..." In addition, several other conditions precedent, such as notice, must be complied with before recovery under the Bond becomes possible.

Assuming compliance with all prerequisites necessary to assert a claim under the Bond, Gross is only permitted to recover damages under the payment Bond that were incurred in connection with the work performed pursuant to his subcontract with Gross.[25] Based upon the allegations in the Amended Complaint, Gross' contract damages amount to approximately $1 million of the $2.6 million in damages that they are seeking. It is true that since both the surety and principal are joint obligors on the Bond, a plaintiff may sue either co-obligor for relief to the

---

[23] A copy of the Bond is annexed as Exhibit A to Plaintiff's Amended Complaint, which is attached to the Semetis Dec. as Exhibit 2.

[24] Semetis Dec., Exhibit 2, ¶¶ 14, 16, 17, 18, 21, 22 and 23.

[25] *See*, Atlantic Contg'g Corp. v. Hartford Acc. & Indem. Co., 55 A.D.2d 571, 547 N.Y.S.2d 649, 651 (2d Dep't 1989), *appeal denied*, 76 N.Y.2d 709 (1990) (unless payment for extra work is authorized, no liability may be imputed to the surety for such damages).

extent permitted by the bond. <u>Envirotech Corp. v. Bethlehem Steel Corp.</u>, 729 F.2d 70, 74 (2d Cir. 1984) *citing,* 3A Moore's Fed. Prac. ¶ 19.11 (2d ed. 1982).

However, in the present matter, as in <u>Envirotech</u>, Gross cannot obtain complete relief if it proceeds solely against American Manufacturers, since Gross' remaining damages for extra work and delays, totaling $1.6 million, are only available to the extent permissible through Cauldwell Wingate, the party with whom Gross contracted. As such, Cauldwell Wingate is a necessary part to the Main Action. <u>Id.</u>; *see also,* <u>Vedder Price Kaufman & Kammholz v. First Dynasty Mines, Ltd.</u>, 2001 U.S. Dist. LEXIS 16146, *7 (S.D.N.Y. 2001) (while co-obligors are generally not considered indispensable parties, this fact, alone, does not militate against a finding that a co-obligor may be an indispensable party).

In applying the appropriate analysis under FRCP Rule 19, the court must first determine that the absent party is necessary. FRCP Rule 19(a). A person is a necessary party if "the district court found either that the litigation would 'impair or impede' her ability to protect her interests. Fed. R. Civ. P. 19(a) (2) (ii) or if the case would leave defendants subject to multiple obligations as explained in Fed. R. Civ. P. 19(a) (2) (ii).'" <u>Picciotto v. Continental Cas. Co.</u>, 512 F.3d 9, 16 (1st Cir. 2008).

In short, under Rule 19(a), an absent party is necessary if "in the person's absence, complete relief cannot be accorded among those already parties."[26] Once it is determined that a person is deemed necessary, joinder will be order if it is "feasible". FRCP 19(a). As the court articulated in <u>Picciotti</u>, 512 F.3d at 17:

> In the traditional analysis, when the court's subject matter jurisdiction is grounded in diversity, the joinder of a nondiverse party is not feasible because such joinder destroys the court's subject matter jurisdiction. *In re*

---

[26] Although Rule 19(a) contains three criteria by which to determine whether an absent person is a necessary party, it is only necessary to satisfy one of the criteria in order to establish necessity. <u>Picciotto</u>, 512 F.3d at 16.

> *Olympic Mills Corp., 477 F.3d 1, 8 (1st Cir. 2007); Acton, 668 F.2d at 79.* It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).* The statutory grant of federal jurisdiction in diversity cases gives district courts "original jurisdiction of all civil cases where the matter in controversy … is between … citizens of different States." *28 U.S.C. §1332(a).* This statutory grant requires *complete* diversity between plaintiffs and defendants in an action. *Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992).* Thus, under the traditional analysis, if the "matter in controversy" involves a necessary, nondiverse absentee, the court must determine whether the litigation may continue in the absence of this person or whether she is so indispensable that the court should dismiss the case for want of subject matter jurisdiction. *Acton, 668 F.2d at 80.* (Emphasis in the original).

It is clear that Cauldwell Wingate is a real party in interest to Gross' Amended Complaint and should properly be joined as a defendant. "Real parties in interest are the persons or entities possessing the right or interest to be enforced through the litigation." International Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 411 F. Supp. 2d 458, 462 (S.D.N.Y. 2006) *citing,* 4 Moore's Fed. Prac. § 17.01[1] @ 17-10 to 17-11 (3rd ed. 2005).

As a result of the foregoing, the failure to join Cauldwell Wingate as a party defendant to the Main Action will preclude the Court from its ability to grant the complete relief demanded in the Amended Complaint. Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York, 762 F.2d 205, 209 (2d Cir. 1985).

In light of the foregoing, the Court must apply the analysis required under Rule 19(b) to determine if Cauldwell Wingate is also an indispensable party in whose absence the Main Action may not proceed.

> Rule 19(b) enumerates four factors to be considered in determining in whether 'in equity and good conscience'

10

this action should proceed in the absence of [Cauldwell Wingate] or be dismissed because [Cauldwell Wingate] is an indispensable party:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other means, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Vedder Price, 2001 U.S. Dist. LEXIS 16146, at *3-*4, *citing, Fed. R. Civ. P. 19(b)*; see Jaser v. New York Property Underwriting Ass'n, 815 F.2d 240, 243 (2d Cir. 1987).

In applying the factors pursuant to Rule 19(b) set forth above to determine dismissal of the above-captioned actions, the first factor that concerns whether a judgment entered in the absence of Cauldwell Wingate as a party defendant would be prejudicial to either Cauldwell Wingate, or to Gross or American Manufacturers. Since full and complete relief of the allegations contained in the Main and Third-Party Actions is available in New York state courts, no prejudice exists.

"The availability of a state court forum cures the likely prejudice to all parties posed by parallel federal and state court actions, considerations reflected by the second factor in the analysis." Universal Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co., 2001 U.S. Dist. LEXIS 7101, *11 (S.D.N.Y. 2001) *aff'd,* 312 F.3d 82 (2d Cir. 2002). To the extent that the parties to the present action have extensively prepared for the disclosure of documents mandated by this Court, these efforts do not constitute prejudice to any parties' interests since they will be required for both the prosecution and defense of all claims asserted in the above-captioned actions in state court.

11

With respect to the third and fourth factors, any judgment rendered in connection with Gross' Amended Complaint against American Manufacturers will not fully adjudicate Gross' claims since, as discussed above, any claims for extra work and delays are recoverable only against Cauldwell Wingate. If Cauldwell Wingate is not deemed to be an indispensable party, Gross will be required to institute yet another action and name Cauldwell Wingate as a defendant in order to recoup any amounts for extras and delays that Cauldwell Wingate may recover against DASNY in the Fourth-Party Action.[27]

In sum, it is respectfully maintained that Cauldwell Wingate must be joined as a necessary and indispensable party to the Main Action as required by Rule 19 in order to accord complete relief to Gross as demanded in its Amended Complaint. Since the joinder of Cauldwell Wingate destroys the only predicate for the exercise of federal jurisdiction, *i.e.,* diversity of citizenship, all of the above-captioned actions must similarly be dismissed pursuant to FRCP 12(b)(7). "A failure of diversity… contaminates the action, so to speak, and takes away any justification for providing a federal forum." Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 178 (2d Cir. 2007) *citing,* Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 562 (2005).

---

[27] In this connection, Gross would be unable to invoke the supplemental jurisdiction of this Court to support its potential claims against Cauldwell Wingate for extras and delay damages. 28 U.S.C. 1367(b) expressly provides that a plaintiff [Gross] may not bring upsloping claims against non-diverse parties [Cauldwell Wingate] without destroying diversity jurisdiction. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 412 n. 15 (3rd Cir. 1993).

## POINT II

## SUPPLEMENTAL JURISDICTION SHOULD NOT LIE TO SUBJECT LITIGANTS TO FEDERAL JURISDICTION WHEN STATE LAW CLAIMS SUBSTANTIALLY PREDOMINATE

Bovis also seeks dismissal of the Fifth-Party Complaint on the alternative ground that this Court's exercise of supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), should be declined based upon the facts of the above-captioned matters, when considered in light of the prevailing law.

The Main Action in these matters concerns a single cause of action against CW's surety for recovery on a Bond issued by AM. The substance of Gross' Amended Complaint involves CW's improper withholding of its contract balance and its failure to make payment for extra work and delay damages allegedly sustained by Gross. As a result, Gross brought suit against AM on the Bond.[28]

Immediately thereafter, AM brought a Third-Party Action against CW for contractual and common-law indemnification for any amounts that may become payable to Gross in the Main Action under the Bond.

Thereafter, CW brought a Fourth-Party Complaint against DASNY based upon the entire $52 million general construction contract between DASNY and Cauldwell Wingate for the Project, including numerous subcontracts, none of which are related to Plaintiff's claims.

On or about July 9, 2008, DASNY instituted a Fifth-Party Action by service of a Fifth-Party Complaint asserting claims against Bovis and sixteen (16) other entities for alleged

---

[28] As discussed fully in POINT I, Bovis maintains that the Main Action, in addition to all of the captioned actions, should be dismissed for Gross' failure to name Cauldwell Wingate as a party defendant, since its presence in the Main Action destroys the diversity of citizenship required to invoke the subject matter jurisdiction of this Court in accordance with 28 U.S.C. §1332. In the event that the Court determines to grant dismissal of all actions under FRCP 12(b)(7), POINT II should be considered moot.

negligence, breach of contract and common law indemnity based upon CW's allegations in the Fourth-Party Complaint.

Significantly, the only action that alleges federal subject matter jurisdiction based upon complete diversity of citizenship (28 U.S.C. §1332(a)) is the Main Action. The Third-Party, Fourth-Party and Fifth-Party Complaints have no independent basis for federal subject matter jurisdiction. Instead, each of the foregoing Complaints contain averments that jurisdiction is predicated upon the supplemental jurisdiction provisions of 28 U.S.C. §1367(a).

In order to justify the application of supplemental jurisdiction over state law claims, the claims must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." City of Chicago v. International College of Surgeons, 522 U.S. 156, 165 (1997) citing, §1367(a). In addition, it is necessary for the state and federal claims to form "a common nucleus of operative fact". Id.

However, as the Court stated in Itar-Tass Russian News Agency v. Russian Kurier, Inc.,140 F.3d 442, 446 (2d Cir. 1998), a court may decline to exercise supplemental jurisdiction if certain factors, set forth in 28 U.S.C. 1367(c), are established:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

For purposes of this motion, Bovis will focus on two (2) of the grounds set forth for the Court to decline the exercise of supplemental jurisdiction. First, it is clear that the myriad state

law claims that are raised in the Fourth and Fifth-Party Actions involve entirely different analyses, standards of proof and a substantially expanded scope of discovery than what will be required to isolate one subcontractor's claim on a payment bond. The Main Action involves the issue of a surety's duty under a payment bond, while the Third-Party Action is solely concerned with the law of indemnification.

In both the Fourth-Party and Fifth-Party Actions, the central dispute involves a comprehensive analysis of approximately twenty (20) entities' day-to-day actions and omissions on a $325 million Project that proceeded over the course of several years. The Fifth-Party Complaint alleges state law claims of negligence, breach of contract and common law indemnity. Further, the Fourth-Party Complaint also opens "Pandora's Box" and involves the same type of comprehensive analysis that will be required to prosecute and defend the Fifth-Party Action.

It is patently clear that the exercise of supplemental jurisdiction under 28 U.S.C. §1367(a) should be declined where, as here, the actions sought to be tried together would amount to the proverbial "apples and oranges" analogy.

Additionally, there are exceptional circumstances presented herein that warrant this Court to decline the exercise of supplemental jurisdiction in these actions. At the outset, the Plaintiff's misalignment, nonjoinder and other manipulations of the federal forum have caused Bovis, and other parties, to expend substantial sums of money to bring a state law case into a state forum, while simultaneously complying with the mandates and directives of this Court.

Although Bovis is manifestly confident of this Court's capacity to efficaciously manage and streamline the resolution of the captioned actions, at the time that it entered into the agreement to provide services to DASNY at the Bronx Criminal Courthouse, Bovis never intended to resolve any of the Project's disputes in federal district court in Manhattan as the

15

result of a claim on a payment bond filed by a second tier subcontractor against the surety of another contractor with whom Bovis is not in privity of contract.

Finally, the statutory scheme belying the exercise of supplemental jurisdiction by federal courts, as referred to in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966), encouraged federal courts to act flexibly, when considering the exercise of supplemental jurisdiction over state law claims, and to "consider and weigh in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." <u>Carnegie-Mellon</u>, 484 U.S. at 350.

In sum, the Court is respectfully requested to decline to exercise supplemental jurisdiction over the Fifth-Party Action and to dismiss the same based upon the absence of federal subject matter jurisdiction.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that the all of the above-captioned actions be dismissed in accordance with Fed. R. Civ. P. 12(b)(7) since the joinder of Cauldwell Wingate as a necessary and indispensable party to the Main Action divests this Court of subject matter jurisdiction. In the alternative, Bovis seeks dismissal of the Fifth-Party Complaint on the grounds that supplemental jurisdiction is not properly invoked to preserve jurisdiction in a matter where there is a substantial predominance of state law claims in the Fifth-Party Complaint.

Dated:  New York, New York
       September 4, 2008

ARTHUR J. SEMETIS, P.C.
*Attorneys for Fifth-Party Defendant,*
*Bovis Lend Lease LMB, Inc.*
286 Madison Avenue, 14th Floor
New York, New York 10017
Telephone: (212) 557-5055

By: _____
         Arthur J. Semetis (AS-8477)

17