UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLIAM A. GROSS CONSTRUCTION          :
ASSOCIATES, INC.,
                                       :

               Plaintiff,          :          07 Civ. 10639 (LAK) (AJP)

                                       :

         -against-          :          **REPORT AND RECOMMENDATION**

                                       :

AMERICAN MANUFACTURERS MUTUAL          :
INSURANCE COMPANY,                     :

            Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

      Plaintiff William A. Gross Construction Associates, Inc. ("Gross"), a sub-contractor, brings this diversity action against defendant American Manufacturers Mutual Insurance Company ("American"), a surety, seeking $2,619,478 owed to Gross by Cauldwell Wingate Company, LLC ("Cauldwell"), a contractor to which American issued a Labor and Material Payment Bond ("Bond") guaranteeing payment, under certain conditions, to sub-contractors not paid by Cauldwell.  (Dkt. No. 6: Am. Compl. ["Compl."] ¶¶ 1, 9, 12, 33, 35 & Ex A: Bond.)  Gross seeks delay damages, extra work damages, retainage, and unpaid contract balance on its $3,820,000 sub-contract with Cauldwell for construction work on the Bronx Criminal Court Complex, a project developed by the New York State Dormitory Authority ("DASNY"), which awarded Cauldwell a $46,955,000 general construction contract.  (Compl. ¶¶ 7, 12-14, 16-19, 20-26.)

Presently before the Court are motions by fourth-party defendant DASNY and fifth-party defendant Bovis Lend Lease LMB, Inc. ("Bovis") to dismiss the fourth and fifth-party complaints (Dkt. Nos. 34 & 118: Notices of Motion) pursuant to 28 U.S.C. § 1367(c) due to lack of supplemental jurisdiction over non-diverse third, fourth and fifth party defendants (Dkt. Nos. 36: DASNY Br. at 4-10; Dkt. No. 120: Bovis Br. at 13-16), and for failure to join third-party defendant Cauldwell and fourth-party defendant DASNY as necessary and indispensable parties to Gross' action pursuant to Fed. R. Civ. P. 19, which would destroy diversity jurisdiction. (Bovis Br. at 7-12; Dkt. No. 66: DASNY Reply Br. at 10-11). In the alternative, DASNY moves to sever and stay the fourth-party complaint from the main and third-party actions pursuant to Fed. R. Civ. P. 14(a)(4) or 42(b). (DASNY Br. at 2, 10.) The Court heard oral argument, at DASNY's request, on February 23, 2009, and has considered DASNY's February 20, 2009 letter (Dkt. No. 401).

For the reasons set forth below, DASNY's and Bovis' motions to dismiss (Dkt. Nos. 34 & 118) should be <u>DENIED</u>.

## FACTS

### The Allegations in Gross' Complaint

The facts alleged in Gross' amended complaint (Dkt. No. 6) are assumed true for purposes of this motion, and will be set forth herein without use of the preamble "Gross alleges."

On or about December 20, 2002, Cauldwell, a New York company, contracted with DASNY for approximately $47 million, "to furnish and install all labor, material and equipment necessary to fit out the Bronx Criminal Court Complex." (Dkt. No. 6: Compl. ¶¶ 5, 7-8.) DASNY is a New York "public benefit corporation" that, among other things, "acts as the developer of court

3

projects located in the City of New York for use by the Office of Court Administration as courthouses."  (Compl. ¶ 6.)

On or about December 27, 2002, American "issued a Labor and Material Payment Bond No. 3SE030676 naming itself as Surety, DASNY as Owner and [Cauldwell] as Contractor for the benefit of any 'claimant[,]' . . . defined as one who furnished labor, material or equipment for the Project as a subcontractor, sub-subcontractor or supplier to [Cauldwell] under [the] Prime Contract" between Cauldwell and DASNY.[1/]  (Compl. ¶¶ 9, 35 & Ex. A: Bond.)  On January 4, 2004, Gross

---

[1/]    The Bond states:

> WHEREAS, CONTRACTOR [Cauldwell] has by written agreement dated <u>December 20, 2002</u> entered into a Contract with OWNER [DASNY] for the <u>General Construction #2 - Fitout Work at Bronx Criminal Court Complex, DA #92561, 1380909999/CR58</u> in accordance with the Contract Documents and any changes thereto, which are made a part hereof, and are hereinafter referred to as the Contract.
>
> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the CONTRACTOR [Cauldwell] shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise such obligation shall remain in full force and effect, subject, however, to the following conditions:
>
> 1.    A claimant is defined as one having a direct Contract with the CONTRACTOR [Cauldwell] or with a Subcontractor of the CONTRACTOR for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.
>
> 2.    The above named CONTRACTOR [Cauldwell] and Surety [American] hereby jointly and severally agree with the OWNER [DASNY] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished
>
> (continued...)

4

"entered into a subcontract with [Cauldwell] for the site work and landscaping for the [court] Project under the Prime Contract," thus giving Gross "claimant" status under the Bond.  (Compl. ¶¶ 10, 12; see also Dkt. No. 190: Semetis 9/25/08 Reply Aff. Ex. 1: Gross-Cauldwell Subcontract.)[2/]  The Gross-Cauldwell sub-contract "provided that [Cauldwell] would pay [Gross] the sum of $3,820,000 for the work, labor and material called for under the subcontract."  (Compl. ¶ 13.)

By July 2007 Gross had "substantially performed its subcontract work," despite significant delays caused by Cauldwell and extra work demanded by Cauldwell that "increase[d] the value of the contract between [Cauldwell] and [Gross] to $6,704,037.44."  (Compl. ¶¶ 14-17, 20-26.) Cauldwell has paid Gross $4,084,559 and owes it $2,619,478, including "$205,577.90 in retainage on completed work."  (Compl. ¶¶ 18-19.)  In addition, "there have been no complaints of material deficiency or defect in any of the work, labor or materials provided by [Gross]," and Gross has "equitably credited [Cauldwell] and therefore Defendant American Manufacturers with costs of deleted or incomplete work."  (Compl. ¶¶ 28-29.)

On or about August 6, 2007, "less than 30 days after [Gross] last performed work at the Project and more than 90 days" since Cauldwell failed to pay Gross in full, Gross timely notified

---

[1/]    (...continued)

> by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.  The OWNER [DASNY] shall not be liable for the payment on any costs or expenses of any such suit.

(Compl. Ex. A: Bond at 1.)

[2/]    Gross, a New York corporation, "is engaged from time to time as a site work contractor." (Compl. ¶ 3.)

5

American of its claims under the Bond.[3] (Compl. ¶ 30.)  In August and September 2007, Gross

provided American with requested documents to enable American to investigate Gross' claim, but

"[t]o date, Defendant American Manufacturers has not responded to" Gross or paid Gross "all or any

part of the outstanding sum due under the Payment Bond."  (Compl. ¶¶ 32-33.)

_____On November 28, 2007, Gross filed a diversity suit against American in this Court

seeking $2,619,478 under the Bond "together with attorney fees . . . and [pre-judgment] interest at

the legal rate dating from July 31, 2007."  (Compl. ¶ 37.)

**The Third, Fourth & Fifth Party Complaints**

**American's Third Party Complaint Against Cauldwell**

On December 18, 2007, American filed a third-party complaint against Cauldwell

based on supplemental and diversity jurisdiction, alleging that "[b]ecause American was merely the

surety on [the B]ond, and Cauldwell was the principal obligor, American will be entitled to

judgment-over against Cauldwell in the event any liability is imposed on American by reason of

plaintiff Gross's claims against American in this action."  (Dkt. No. 9: 3d Party Compl. ¶¶ 1-2, 9.)

American also alleged that "Cauldwell expressly agreed to indemnify American for all sums paid

or required to be paid by American as Cauldwell's surety, . . . in a written indemnity agreement dated

on or about December 27, 2002," and that "[p]ursuant to that indemnity agreement American will

be entitled to judgment-over against Cauldwell in the event that any liability is imposed on American

in this action."  (3d Party Compl. ¶¶ 10-11.)

---

[3]     On August 8, 2007 and September 12, 2007, American and DASNY, respectively, acknowledged notice of Gross' claims under the Bond.  (Compl. ¶ 31.)

### Cauldwell's Fourth Party Complaint Against DASNY

On March 14, 2008, third-party defendant Cauldwell filed a fourth-party complaint against DASNY based on supplemental jurisdiction, seeking approximately $25.4 million in damages. (Dkt. No. 18: 4th Party Compl. ¶¶ 1, 23, 155.)  Cauldwell alleged that DASNY breached its contract with Cauldwell because "DASNY has only paid Cauldwell Wingate approximately $48.6 million, and has refused to pay the additional $3.7 million due under the . . . Contract" (4th Party Compl. ¶¶ 126-28), that DASNY has not paid Cauldwell $5.4 million for extra work  (id. ¶¶ 132, 135), that DASNY owes Cauldwell $15.6 million for unreasonably delaying completion of Cauldwell's and its subcontractors' work (id. ¶¶ 137-38, 141, 143), that DASNY unreasonably demanded that Cauldwell constructively accelerate its work, constituting a constructive change in the DASNY-Cauldwell contract entitling Cauldwell to no less than $730,000 (id. ¶¶ 147-50),  and that DASNY breached its implied covenant of good faith and fair dealing through "numerous actions taken by DASNY to deprive Cauldwell Wingate of the benefits of the . . . Contract," entitling Cauldwell to "no less than $25.4 million" (id. ¶¶ 152-55).

Cauldwell also asserted that Gross' claims against American do not arise from "any actions by Cauldwell[,] but from DASNY's actions" as set forth in the fourth-party complaint, and that "Gross's claim constitutes part of the damages sought by Cauldwell Wingate against DASNY." (4th Party Compl. ¶ 24.)  Cauldwell's complaint, however, alleged specific delay, extra work, breach of contract, constructive acceleration and breach of implied covenant of good faith and fair dealing claims entirely unrelated to and far exceeding the claims set forth in Gross' complaint.  (See generally 4th Party Compl. ¶¶ 29-122.)

### DASNY's Fifth Party Complaint

On July 9, 2008, fourth-party defendant DASNY filed a fifth-party complaint against numerous fifth-party defendant contractors, including Bovis, based on supplemental jurisdiction, alleging that fifth-party defendants breached their individual contracts with DASNY by, inter alia, failing to: perform in a timely fashion, "perform in a good, workmanlike manner," complete work in compliance with the New York City Building Code, or comply with professional standards of care. (See generally Dkt. No. 42: 5th Party Compl. ¶¶ 2, 29-291.) DASNY named seventeen fifth-party defendants in its fifth-party complaint, and claimed that it had "entered into numerous contracts with not less than nineteen different prime contractors and several engineering and other consulting firms." (5th Party Compl. ¶ 29.) On September 23, 2008, DASNY filed an amended fifth-party complaint, adding several more fifth-party defendants. (See Dkt. No. 171: Am. 5th Party Compl.)

### DASNY's Motion to Dismiss

On June 13, 2008, DASNY filed a motion to dismiss Cauldwell's fourth-party complaint pursuant to 28 U.S.C. § 1367, arguing that the claims raised in Cauldwell's fourth party complaint "substantially predominate over [the claims in Gross'] amended complaint." (Dkt. No. 34: DASNY Notice of Motion; Dkt. No. 35 Levy Aff.; Dkt. No. 36: DASNY Br. at 2.) Specifically, DASNY argued that "[i]n contrast to the much more circumscribed scope of [Gross'] complaint, [Cauldwell's] fourth-party complaint asserts claims encompassing the entire breath of Cauldwell Wingate's general contract with DASNY," and that "these new claims . . . greatly broaden the scope of litigation, [and] will require significantly more proof and expenditure of judicial resources . . . and . . . involve only state law claims which the state court is in a better position to decide."

(DASNY Br. at 2-5.)  DASNY, therefore, asked this Court to exercise its discretion under 28 U.S.C. § 1367(c) to deny supplemental jurisdiction over Cauldwell's fourth-party complaint.  (DASNY Br. at 5-9.)  Alternatively, DASNY asked this Court to "remand to state court the claims in the fourth-party complaint that concern the general contract and the subcontractors other than" Gross.  (DASNY Br. at 9-10.)  "In the event the Court declines to dismiss [Cauldwell's] fourth-party complaint in its entirety or in part," DASNY asked this Court to sever and stay the fourth-party complaint "from the main and third-party actions . . . in the interests of justice pursuant to Fed. R. Civ. P. 14(a)(4)." (DASNY Br. at 10.)

In its reply papers, DASNY invoked, for the first time, Fed. R. Civ. P. 19 in arguing that DASNY should have been joined as "an indispensable, though non-diverse, party with respect to Gross' delay and [extra work] claims," thus mandating dismissal of the entire case due to lack of diversity jurisdiction.  (Dkt. No. 66: DASNY Reply Br. at 10-11.)

**Bovis' Motion To Dismiss**

On September 4, 2008, fifth-party defendant Bovis filed a motion to dismiss DASNY's fifth-party complaint, seeking Cauldwell's joinder as a necessary and indispensable party to the original Gross action pursuant to Fed. R. Civ. P. 19.  (Dkt. No. 118: Bovis Notice of Motion; Dkt. No. 120: Bovis Br.; Dkt. No. 121: Semetis Aff.)  Such joinder would destroy diversity jurisdiction, the sole basis for federal jurisdiction over Gross' original action, and therefore mandate dismissal of Gross' action, as well all remaining actions based on supplemental jurisdiction, which "cannot be invoked in the absence of an original basis for . . . federal subject matter jurisdiction." (Bovis Br. at 1, 7-12.)

In the alternative, Bovis also argued, like DASNY, that this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. 1367(c) over the fourth or fifth-party complaints because they contain state law claims that "substantially predominate" over the claims set forth in Gross' complaint.  (Bovis Br. at 13-16.)

## ANALYSIS

### I.       APPLICABLE LAW GOVERNING A MOTION TO DISMISS UNDER RULE 19

"Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party.  First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir.), cert. denied, 531 U.S. 1051, 121 S. Ct. 655 (2000).[4/] Rule 19(a) defines the parties who are "necessary" (a term no longer used in the Rule) in the sense that their joinder is compulsory "if feasible":

(a)       **Persons Required to Be Joined if Feasible.**

(1)       **Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A)       in that person's absence, the court cannot accord complete relief among existing parties; or

---

[4/]       Accord, e.g, Bartfield v. Murphy, 578 F. Supp. 2d 638, 644-45 (S.D.N.Y. 2008); Tele-Guia Talking Yellow Pages, Inc. v. Cablevision Sys. Corp., 07 Civ. 3948, 2007 WL 3224573 at *2 (S.D.N.Y. Oct. 31, 2007); In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288, 2004 WL 2955237 at *2 (S.D.N.Y. Dec. 22, 2004); Giaguara S.p.A. v. Amiglio, 257 F. Supp. 2d 529, 540 (E.D.N.Y. 2003); Holland v. Fahnestock & Co., 210 F.R.D. 487, 493 (S.D.N.Y. 2002) (Berman, D.J. & Peck, M.J.).

10

> **(B)**     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > **(i)**     as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > **(ii)**     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> **(2)**     **Joinder by Court Order.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a). "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." Viacom Int'l, Inc. v. Kearney, 212 F.3d at 724 (citing Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir. 1990)).[5/]

"But where the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons, . . . the

---

[5/]     See also, e.g., Temple v. Synthes Corp., 498 U.S. 5, 8, 111 S. Ct. 315, 316 (1990); MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006); Cont'l Cas. Co. v. Am. Home Assurance Co., 05 Civ. 7874, 2008 WL 1752231 at *6 (S.D.N.Y. Apr. 14, 2008); Fulani v. MacKay, 06 Civ. 3747, 2007 WL 959308 at *3 (S.D.N.Y. Mar. 29, 2007); Mattera v. Clear Channel Comm'ns, Inc., 239 F.R.D. 70, 73 (S.D.N.Y. 2006); Agilent Techs., Inc. v. Micromuse, Inc., 04 Civ. 3090, 2004 WL 2346152 at *7 (S.D.N.Y. Oct. 19, 2004); E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., 00 Civ. 8670, 2003 WL 22064257 at *3 (S.D.N.Y. Sept. 5, 2003); Holland v. Fahnestock & Co., 210 F.R.D. at 494; Rocchigiani v. World Boxing Council, Inc., 139 F. Supp. 2d 440, 445 (S.D.N.Y. 2001); Rose v. Simms, 95 Civ. 1466, 1995 WL 702307 at *3 (S.D.N.Y. Nov. 29, 1995); 7 C. Wright & A. Miller, Federal Practice & Procedure: Civil 3d § 1607 at 84 (3d ed. 2001).

court must finally determine whether the party is 'indispensable.'" <u>Viacom Int'l, Inc.</u> v. <u>Kearney</u>, 212 F.3d at 725.[6/]  Rule 19(b) provides:

> **(b)     When a Joinder Is Not Feasible.**  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
>
> **(1)**     the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)**     the extent to which any prejudice could be lessened or avoided by:
>
> **(A)**     protective provisions in the judgment;
>
> **(B)**     shaping the relief; or
>
> **(C)**     other measures;
>
> **(3)**     whether a judgment rendered in the person's absence would be adequate; and
>
> **(4)**     whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).  The Supreme Court has summarized Rule 19(b)'s four factors as follows: (1) whether the party sought to be joined has an interest in having a forum and whether an adequate alternate forum exists; (2) the interest of the party seeking joinder in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another;" (3) "the interest of the outsider whom it would have been desirable to join;" (4) "the interest of the courts and the

---

[6/]     Accord, <u>e.g.</u>, <u>Tele-Guia Talking Yellow Pages, Inc.</u> v. <u>Cablevision Sys. Corp.</u>, 2007 WL 3224573 at *2; <u>Mattera</u> v. <u>Clear Channel Comm'ns, Inc.</u>, 239 F.R.D. at 73; <u>In re WorldCom, Inc. Sec. Litig.</u>, 2004 WL 2955237 at *3; <u>Holland</u> v. <u>Fahnestock & Co.</u>, 210 F.R.D. at 494.

12

public in complete, consistent, and efficient settlement of controversies."  <u>Provident Tradesmens</u> <u>Bank & Trust Co.</u> v. <u>Patterson</u>, 390 U.S. 102, 109-11, 88 S. Ct. 733, 737-39 (1968).[7/]

Rule 19(b) does not "assign relative weight to each of the factors enumerated in this Rule," but instead contemplates that the Court will "determine the emphasis to be placed on each consideration according to 'the facts of [the] given case and in light of the governing equity-and-good-conscience test.'"  <u>Associated Dry Goods Corp.</u> v. <u>Towers Fin. Corp.</u>, 920 F.2d at 1124; <u>accord</u>, <u>e.g.</u>, <u>Holland</u> v. <u>Fahnestock & Co.</u>, 210 F.R.D. at 494.  "The language of Rule 19(b) leaves the district court with 'substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute.'"  <u>Envirotech Corp.</u> v. <u>Bethlehem Steel Corp.</u>, 729 F.2d 70, 75 (2d Cir. 1984).[8/]  "The phrase 'good conscience' implies a careful and constructive consideration of those parties that are necessary to the litigation.  As a consequence, very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible."  <u>Jaser</u> v. <u>New York Prop. Ins. Underwriting Ass'n</u>, 815 F.2d 240, 242 (2d Cir. 1987).[9/]

---

[7/]     <u>Accord</u>, <u>e.g.</u>, <u>Universal Reinsurance Co.</u> v. <u>St. Paul Fire & Marine Ins. Co.</u>, 312 F.3d 82, 88 (2d Cir. 2002); <u>Mattera</u> v. <u>Clear Channel Comm'ns, Inc.</u>, 239 F.R.D. at 73; <u>In re WorldCom, Inc. Sec. Litig.</u>, 2004 WL 2955237 at *3; <u>Holland</u> v. <u>Fahnestock & Co.</u>, 210 F.R.D. at 494; <u>see generally</u> 7 C. Wright & A. Miller, <u>Federal Practice & Procedure: Civil 3d</u> § 1608.

[8/]     <u>Accord</u>, <u>e.g.</u>, <u>Holland</u> v. <u>Fahnestock & Co.</u>, 210 F.R.D. at 494; <u>Rose</u> v. <u>Simms</u>, 1995 WL 702307 at *3; <u>see also</u>, <u>e.g.</u>, <u>Tele-Guia Talking Yellow Pages, Inc.</u> v. <u>Cablevision Sys. Corp.</u>, 2007 WL 3224573 at *3 ("District courts take a 'flexible approach' when deciding whether parties are indispensable.").

[9/]     <u>Accord</u>, <u>e.g.</u>, <u>Universal Reinsurance Co.</u> v. <u>St. Paul Fire & Marine Ins. Co.</u>, 312 F.3d at 87, (continued...)

      The moving party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994); accord, e.g., W. Peninsular Title Co. v. Palm Beach County, 41 F.3d 1490, 1492 (11th Cir.), cert. denied, 516 U.S. 932, 116 S. Ct. 338 (1995); Holland v. Fahnestock & Co., 210 F.R.D. at 495.[10/]

      The Court may consider matters outside the pleadings in ruling on the motion. See, e.g., Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d at 1293; Mattera v. Clear Channel Comm'ns, Inc., 239 F.R.D. at 74; Holland v. Fahnestock Co., 210 F.R.D. at 495.[11/]  In deciding this

---

[9/]    (...continued)
cert. denied, 499 U.S. 955, 111 S. Ct. 1430 (1991); Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 90 (2d Cir. 1990); Tele-Guia Talking Yellow Pages, Inc. v. Cablevision Sys. Corp., 2007 WL 3224573 at *3; In re WorldCom, Inc. Sec. Litig., 2004 WL 2955237 at *3; Shimkin v. Tompkins, McGuire, Wachenfeld & Barry, 02 Civ. 9731, 2003 WL 21964959 at *4 (S.D.N.Y. Aug. 19, 2003); Holland v. Fahnestock & Co., 210 F.R.D. at 494; Wolf v. Wolf, 97 Civ. 6475, 1998 WL 67649 at *3 (S.D.N.Y. Feb. 19, 1998); Rose v. Simms, 1995 WL 702307 at *3; Ing. Hoschek Autoverleich GES.M.B.H. v. Balag, Ltd., 93 Civ. 8513, 1994 WL 701989 at *3 (S.D.N.Y. Dec. 14, 1994); 7 C. Wright & A. Miller, Federal Practice & Procedure: Civil 3d § 1609 at 130 ("Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result.").

[10/]    See, e.g., City of New York v. Milhelm Attea & Bros., Inc.,  550 F. Supp. 2d 332, 353 (S.D.N.Y. 2008); Tele-Guia Talking Yellow Pages, Inc. v. Cablevision Sys. Corp., 2007 WL 3224573 at *3; Mattera v. Clear Channel Comm'ns, Inc., 239 F.R.D. at 74; M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 223 F.R.D. 103, 105-06 (W.D.N.Y. 2004); Ashley v. Am. Airlines, Inc., 738 F. Supp. 783, 788 (S.D.N.Y. 1990); 7 C. Wright & A. Miller, Federal Practice & Procedure: Civil 3d § 1609 at 129-30; 2 Moore's Federal Practice ¶ 12.35 at 12-120 (3d ed. 2008).

[11/]    See also, e.g., Albahary v. City of Bristol, 963 F. Supp. 150, 156 n.2 (D. Conn.1997); Cont'l Kraft Corp. v. Euro-Asia Dev. Group, Inc., No. 97 CV. 0619, 1997 WL 642350 at *6 (E.D.N.Y. Sept. 8, 1997); Circle Indus. v. City Fed. Sav. Bank, 749 F. Supp. 447, 457 n.2 (E.D.N.Y. 1990), aff'd, 931 F.2d 7 (2d Cir. 1991); 5C C. Wright & A. Miller, Federal (continued...)

motion, the Court has considered affidavits submitted by the parties and the exhibits to those affidavits.

"The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy- Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); see also, e.g., Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

## II.   APPLICATION OF RULE 19 TO THE PRESENT CASE

DASNY claims that it is "an indispensable, though non-diverse, party with respect to Gross' delay and [extra work] claims" because, under Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co., 79 N.Y.2d 801, 580 N.Y.S.2d 171 (1991), Gross cannot, as a matter of law, "prevail" against American or Cauldwell for these damages, which Cauldwell attributes to "DASNY's acts or omissions."  (Dkt. No. 66: DASNY Reply Br. at 2-4, 10-11.)  Instead, according to DASNY, Gross' extra work and delay claims "can only be asserted against DASNY by Cauldwell . . . , on Gross' behalf, through a liquidating agreement" or "an express provision in the subcontract."  (DASNY Reply Br. at 4, 6, 10.)  Furthermore, DASNY argues that because no liquidating agreement or express subcontract provision exists between Gross and Cauldwell, Cauldwell "is precluded from asserting a 'pass through' claim of Gross [for delay and extra work claims] directly against DASNY."  (DASNY Reply Br. at 6; see id. at 5-7.)  Accordingly, DASNY

---

11/      (...continued)
        Practice & Procedure: Civil 2d § 1359 at 68 & n.3 (collecting cases).

asks this Court to dismiss Gross' complaint under 28 U.S.C. § 1359, due to "the apparent collusion of Gross, American and/or Cauldwell Wingate to keep this case in federal court despite the lack of diversity between the real parties in interest."  (DASNY Reply Br. at 12; see id. at 7, 11-12.)[12]

## A.    DASNY Is Not A Rule 19(b) Indispensable Party

DASNY argues that it should be joined as an indispensable party – which would destroy diversity jurisdiction –  because New York law precludes Gross from properly asserting delay and extra work claims against Cauldwell or American.  (Dkt. No. 66: DASNY Reply Br. at 2-5, 10-11.)  DASNY argues that Gross, as a subcontractor, cannot recover against American or

---

[12]    DASNY inappropriately conflates joinder of necessary and indispensable parties under Fed. R. Civ. P. 19, with improper or collusive joinder under 28 U.S.C. §1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  The purpose of 28 U.S.C. § 1359 is "'to prevent the manufacture of Federal jurisdiction by the device of assignment.'"  Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 826, 828-29, 89 S. Ct. 1487, 1489, 1490 (1969); accord, e.g., Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 124 (2d Cir. 2008); Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 474 (2d Cir. 1976); O'Brien v. AVCO Corp., 425 F.2d 1030, 1034 (2d Cir. 1969) ("The purpose of Section 1359 . . . was to prevent agreements whose primary aim was to vest the court with a jurisdiction it had not formerly enjoyed.").  DASNY's argument that it should be joined to the main action as an indispensable party implicates Fed. R. Civ. P. 19 (see pages 2, 8 above and DASNY 2/20/09 Ltr., Dkt. No. 401), and not 28 U.S.C. § 1359, which divests federal courts of jurisdiction where a party has used an assignment to  manufacture diversity jurisdiction.  See, e.g., Lerner v. Fleet Bank, N.A., 318 F.3d 113, 125 (2d Cir. 2003) ("Failure to name an indispensable party" under Rule 19 implicates different concerns than "collusive assignment of claims" under 28 U.S.C. §1359.), cert. denied, 540 U.S. 1012, 124 S. Ct. 532 (2003).  DASNY presents no evidence of 28 U.S.C. § 1359-style collusion, and any argument that Gross selectively asserted claims against American, and not Cauldwell, in order to invoke diversity jurisdiction, turns on whether or not Cauldwell is a Rule 19 indispensable party.  (See pages 23-29 below.)  Nor has DASNY cited any case applying § 1359 in a Rule 19 situation as here.  This Court, therefore, will analyze DASNY's Reply Brief argument (Dkt. No. 66) under Fed. R. Civ. P. 19.

Cauldwell on its delay or extra work claims, citing <u>Triangle Sheet Metal Works, Inc</u>. v. <u>James H.</u>

<u>Merritt & Co.</u>:

> This case falls squarely within the general rule that, <u>absent a contractual commitment</u> <u>to the contrary, a prime contractor is not responsible for delays that its subcontractor</u> <u>may incur unless those delays are caused by some agency or circumstance under the</u> <u>prime contractor's direction or control</u>.   Contrary to [subcontractor] Triangle's contention, there is no basis for concluding that a prime contractor--which often times lacks control over much of the work to be performed at a particular project--has *implicitly* agreed to assume responsibility for all delays that a subcontractor might experience--no matter what their cause.  If a subcontractor wants a prime contractor to be a guarantor of job performance, it should bargain for the inclusion in its subcontract of a provision to that effect.

<u>Triangle Sheet Metal Works, Inc.</u> v. <u>James H. Merritt & Co.</u>, 79 N.Y.2d 801, 802-03, 580 N.Y.S.2d

171, 172 (1991) (citations omitted, emphasis added).[13/]  DASNY argues that Gross' extra work[14/] and

delay claims against American,[15/] for which Gross blames Cauldwell (<u>see</u> page 4 above), "consist,

in the main, not of damages alleged to have been caused by Cauldwell, but instead those which

---

[13/]   <u>Accord</u>, <u>e.g.</u>, <u>In re Reg'l Bldg. Sys., Inc.</u>, 320 F.3d 482, 485 (4th Cir. 2003); <u>Port Chester</u> <u>Elec. Constr. Corp.</u> v. <u>HBE Corp.</u>, 978 F.2d 820, 822 (2d Cir. 1992); <u>Sea Crest Constr. Corp.</u> v. <u>City of New York</u>, 286 A.D.2d 652, 653, 730 N.Y.S.2d 332, 333 (2d Dep't 2001); <u>Phoenix</u> <u>Elec. Contracting, Inc.</u> v. <u>Lehr Constr. Corp.</u>, 219 A.D.2d 467, 467-68, 631 N.Y.S.2d 146, 147 (1st Dep't), <u>appeal denied</u>, 87 N.Y. 2d 805, 640 N.Y.S. 2d 878 (1995).

[14/]   <u>Triangle</u> does not apply to extra work claims.  Much of the following, therefore, only applies to Gross' delay claims.  Because this Court finds <u>Triangle</u> inapposite (<u>see</u> pages 17-22 below), DASNY's failure to make this distinction is largely irrelevant to this Court's analysis.

[15/]   Under the Bond, American is liable to Gross for delay or extra work damages caused by Cauldwell.  <u>See</u>, <u>e.g.</u>, <u>Azevedo & Boyle Contracting, Inc.</u> v. <u>J. Greaney Constr. Corp.</u>, 285 A.D.2d 571, 572, 728 N.Y.S.2d 743, 744 (2d Dep't 2001) ("As the surety, [defendant] stands in the shoes of its principal.")  DASNY, therefore, argues that because Gross may not properly bring extra work and delay claims against Cauldwell, it may not bring such claims against American, Cauldwell's surety.  (<u>See</u> DASNY Reply Br. at 5, 10.)

allegedly have been caused by DASNY."[16]  (DASNY Reply Br. at 3.)  DASNY posits, therefore, that

Gross' extra work and delay claims "can only be asserted against DASNY by Cauldwell Wingate,

on Gross' behalf, through a liquidating agreement."[17]  (DASNY Reply Br. at 4.)  DASNY asks this

Court to join Cauldwell and DASNY to "the main action," which would destroy diversity

jurisdiction.  (DASNY Reply Br. at 10-11.)  Moreover, DASNY argues that if this Court joins the

required parties, Cauldwell could not assert extra work or delay claims on Gross' behalf because

"[n]either American nor Cauldwell Wingate allege that any such liquidating agreement exists, nor

do they cite to any provision of the subcontract between Cauldwell Wingate and Gross under which

---

[16]     DASNY cites Cauldwell's fourth party complaint, and not Gross' complaint, in asserting that
         Cauldwell "squarely places the blame for delays sustained by Gross upon DASNY" and that
         "only DASNY is responsible for approving and making payment for . . . extra work."
         (DASNY Reply Br. at 3; see also Dkt. No. 48: Hayes Opp. Aff. ¶¶ 6-11, 14-18.)  Gross'
         complaint clearly blames Cauldwell, not DASNY.  (See page 4 above.)

[17]     DASNY argues that "both Cauldwell Wingate and DASNY are interested parties and should
         have been named in the initial complaint" (see DASNY Reply Br. at 10), and does not argue
         that Gross alone should directly sue DASNY for delays damages.  New York law would
         preclude Gross from directly suing DASNY, due to lack of contractual privity.  See Bovis
         Lend Lease LMB Inc. v. GCT Venture, Inc., 285 A.D.2d 68, 69, 728 N.Y.S.2d 25, 27 (1st
         Dep't 2001) ("Subcontractors, lacking privity of contract, are precluded from bringing suit
         against the owners directly."); Barry, Bette & Led Duke, Inc. v. State of New York, 240
         A.D.2d 54, 56, 669 N.Y.S.2d 741, 743 (3d Dep't) ("[L]acking privity of contract, the
         subcontractor is . . . precluded from bringing suit against the owner."), appeal denied, 92
         N.Y.2d 804, 677 N.Y.S. 2d 779 (1998); see also N. Moore St. Developers, LLC v.
         Meltzer/Mandl Architects, P.C., 23 A.D.3d 27, 30-31, 799 N.Y.S.2d 485, 489 (1st Dep't
         2005) ("[T]he sole recourse of an owner damaged due to delays caused by a subcontractor
         with whom it has no privity is to proceed against the general contractor who, pursuant to the
         general contract, is liable to the owner for damages due to the acts of the subcontractor.");
         Key Int'l Mfg., Inc. v. Morse/Diesel, Inc., 142 A.D.2d 448, 452, 536 N.Y.S.2d 792, 794 (2d
         Dep't 1988) ("[A]n owner of a building ha[s] no cause of action for economic injuries against
         a firm of engineers with whom it was not in privity.").

18

the prime contractor [Cauldwell] can assert delay claims on behalf of the subcontractor," Gross. (DASNY Reply Br. at 5-6.)

DASNY's reliance on Triangle, however, is misplaced, because Triangle does not preclude Gross from seeking delay damages from Cauldwell when the delays "are caused by some agency or circumstance under [Cauldwell's] direction or control." Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co., 79 N.Y.2d at 802-03, 580 N.Y.S.2d at 172.  Triangle prevents a subcontractor like Gross from recovering on delay claims against a contractor (such as Cauldwell) if that contractor did not cause or control the delay, or otherwise assume liability for such damages. See, e.g., In re Reg'l Bldg. Sys., Inc., 320 F.3d 482, 485-86 (4th Cir. 2003) (affirming denial of subcontractor's delay claims under Triangle because delay was not caused by contractor and because contractor did not agree to assume liability for such delay claims); Thalle Constr. Co. v. Whiting-Turner Contracting Co., 39 F.3d 412, 418 (2d Cir. 1994) ("A general contractor (sometimes called a 'prime contractor') is only responsible for delays 'caused by some agency or circumstance under the prime contractor's direction or control.'") (quoting Triangle); Port Chester Elec. Constr. Corp. v. HBE Corp., 978 F.2d 820, 822 (2d Cir. 1992) (remanding case under Triangle to "determine which, if any, of the alleged delays were attributable in whole or in part to [the contractor], and [to] limit [the sub-contractor's] recovery accordingly."); Mid-State Precast Sys. Inc. v. Corbetta Constr. Co., 202 A.D.2d 702, 704, 608 N.Y.S.2d 546, 549 (3d Dep't) (Sub-contractor not permitted to proceed against contractor for delay damages caused by owner.), appeal dismissed, 84 N.Y. 2d 923, 621 N.Y.S. 2d 520 (1994).  In the instant action, however, Gross alleges that Cauldwell itself – not DASNY – caused various delays.  (See page 4 above.)  Cauldwell's subsequent allegations shifting

the blame to DASNY for these delays (see page 6 above)[18/] does not affect this Court's analysis, which is based on Gross' complaint.

        In Triangle, the New York Court of Appeals denied plaintiff subcontractor recovery for delay damages only after the trial court found that neither the general contractor, nor anyone under the general contractor's direction or control, caused the delay, or contracted to assume responsibility for the delay.  See Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co., 79 N.Y.2d at 802, 580 N.Y.S.2d at 172 (affirming trial court's grant of motion to dismiss made "[a]t the close of Triangle's case," in which the trial court held that plaintiff "Triangle had failed to make out a prima facie case since it had not offered any evidence that [defendant contractor] was responsible for any of the delays in question").  Gross' current allegations that Cauldwell caused the delay damages renders Triangle inapposite at this time; at the summary judgment stage or trial, Cauldwell can present evidence that Cauldwell was not responsible for any delays affecting Gross.  See Sea Crest Constr. Corp. v. City of New York, 286 A.D.2d at 653, 730 N.Y.S.2d at 333 (affirming denial of defendant's contractor's summary judgment motion because while plaintiff sub-contractor's delay claims subject to rule in Triangle, "triable issues of fact [exist] as to whether the delays [were] caused" by the prime contractor or the owner); Benjamin Elec. Engineering Works, Inc. v. A-J Contracting Co., 214 A.D.2d 339, 339, 626 N.Y.S.2d 439, 439 (1st Dep't 1995) (affirming denial of defendant's summary judgment motion against plaintiff sub-contractor because "issues exist whether defendant, which as prime contractor, cannot be held liable for delays caused by the owner [under Triangle], itself was the cause of the delays alleged").

---

[18/]      DASNY "in no way concedes" that it caused such delays.  (See DASNY Reply Br. at 3.)

While the Court could end its Rule 19 analysis at this point, it is useful also to address DASNY's argument that Cauldwell cannot sue DASNY for delay claims on behalf of Gross in the absence of a liquidating agreement or clause in the Cauldwell-Gross subcontract.

Under <u>Triangle</u>, a contractor may bring an action for delays damages against the owner on behalf of a subcontractor if a provision in the subcontract permits the "prime contractor to be a guarantor of job performance," <u>Triangle Sheet Metal Works, Inc.</u> v. <u>James H. Merritt & Co.</u>, 79 N.Y.2d at 802-03, 580 N.Y.S.2d at 172, often asserted as pass-through claims[19] made pursuant to a liquidating agreement. <u>See, e.g.</u>, <u>Helena Assocs., LLC</u> v. <u>EFCO Corp.</u>, 06 Civ. 0861, 2008 WL 2117621 at *9 (S.D.N.Y. May 14, 2008) ("Liquidating agreements are often employed on construction projects to bridge gaps in privity and 'are recognized under New York law as a valid means of avoiding the duplicative lawsuits that would otherwise be necessary to ensure that cost overruns and delay damages are ultimately borne by the responsible party.'") (citing <u>Menorah Home & Hosp. for the Aged & Infirm</u> v. <u>Fireman's Fund Ins. Co.</u>, No. 04 Civ. 3172, 2007 WL 1109079 at *2 (E.D.N.Y. Apr. 13, 2007)); <u>Honeywell, Inc.</u> v. <u>J.P. Maguire Co.</u>, 2000 WL 307398 at *11 ("New York courts have . . . recognized that a prime contractor may assert a subcontractor's [delay] claims pursuant to a liquidating agreement.").[20]

---

[19]     <u>See, e.g.</u>, <u>Honeywell, Inc.</u> v. <u>J.P. Maguire Co.</u>, 93 Civ. 5253, 2000 WL 307398 at *11 (S.D.N.Y. Mar. 23, 2000) ("Pass-through claims are claims asserted by a primary contractor "'against the owner for the benefit of the injured subcontractor.'") (citing <u>Schiavone Constr. Co.</u> v. <u>Triborough Bridge & Tunnel Auth.</u>, 209 A.D.2d 598, 599, 619 N.Y.S.2d 117, 118 (2d Dep't 1994)).

[20]     <u>See also</u>, <u>e.g.</u>, <u>Morse/Diesel, Inc.</u> v. <u>Trinity Indus., Inc.</u>, 875 F . Supp. 165, 174 (S.D.N.Y. 1994); <u>I.T.R.I. Masonry Corp.</u> v. <u>State of New York</u>, 21 A.D.3d 990, 991, 801 N.Y.S.2d 396, 397 (2d Dep't 2005) ("The general contractor never entered into a 'liquidating agreement' (continued...)

"'Liquidating agreements have three basic elements:  (1) the imposition of liability upon a party for a third party's increased costs, thereby providing the first party with a basis for legal action against the party at fault, (2) a liquidation of liability in the amount of the first party's recovery against the party at fault, and (3) a provision for the pass-through of that recovery to the third party.'" Helena Assocs., LLC v. EFCO Corp., 2008 WL 2117621 at *9.[21]  "For a liquidating agreement to be valid, there must be 'an actual contractual commitment,' however, it 'need not take any particular form.'" Helena Assocs., LLC v. EFCO Corp., 2008 WL 2117621 at *9 (quoting Barry, Bette & Led Duke Inc. v. State of New York, 240 A.D.2d at 56, 669 N.Y.S.2d at 743); see, e.g., N. Moore St. Developers, LLC v. Meltzer/Mandl Architects, P.C., 23 A.D.3d at 32, 799 N.Y.S.2d at 490.

The Cauldwell-Gross subcontract contains provisions that may effectively liquidate any recoveries for delay made by Cauldwell against DASNY to Gross:

> Should the Subcontractor [Gross] be obstructed or delayed in the commencement, prosecution or completion of the Work because of conditions not attributable to the Subcontractor [Gross] and which by the terms of the Contract may be grounds for an extension of time, it shall, in full and complete compensation for said delay within twenty-four (24) hours thereafter, make claim to the Contractor [Cauldwell] in writing, for an extension of time, and the Contractor [Cauldwell] may award and certify the amount of additional time to be allowed, if any.  Said extension of time shall be the same as shall be allowed by the Owner [DASNY] to the Contractor [Cauldwell] under the Contract for said delay.  If the Subcontractor

---

[20]   (...continued)
with the claimant which would have authorized the general contractor to bring a 'pass-through' action against the State of New York "); Schiavone Constr. Co. v. Triborough Bridge & Tunnel Auth., 209 A.D.2d at 600; 619 N.Y.S.2d at 118.

[21]   See also, e.g., Menorah Home & Hosp. for the Aged and Infirm v. Fireman's Fund Ins. Co., 2007 WL 1109079 at *2; Honeywell, Inc. v. J.P. Maguire Co., 2000 WL 307398 at *11; N. Moore St. Developers, LLC v. Meltzer/Mandl Architects, P.C., 23 A.D.3d at 31, 799 N.Y.S.2d at 489; Bovis Lend Lease LMB Inc. v. GCT Venture, Inc., 285 A.D.2d at 70, 728 N.Y.S.2d at 27.

> [Gross] fails to furnish the Contractor [Cauldwell] written notice in accordance with this paragraph, the Subcontractor [Gross] agrees that it has waived any right to any such extension of time.  Where such delays are caused by the Owner [DASNY], except to the extent any costs or claim for such delays are recognized and paid by the Owner [DASNY] under the Contract, the extension of time granted shall be [Gross'] sole remedy.

(Dkt. No. 190: Semetis Reply Aff. Ex. 1: Cauldwell-Gross Subcontract § 5.3, emphasis added.)  The Cauldwell-Gross subcontract contains a similar provision regarding extra work:

> The Contractor [Cauldwell] . . . at its sole discretion . . . may institute suit for damages for extra work or contest any deduction or refusal to pay by the Owner [DASNY] for any reason which involves the Work of the Subcontractor [Gross]. . . . In the case of any recovery, the Subcontractor [Gross] shall be entitled to those amounts allocated to its work, less overhead and profit to the Contractor [Cauldwell] and all expenses and attorneys fees incurred by the Contractor [Cauldwell] in prosecuting such appeal or suit.

(Semetis Reply Aff. Ex. 1: Cauldwell-Gross Subcontract § 9.4.)  Both Gross and Cauldwell claim that because of these clauses, the "Subcontract between Plaintiff [Gross] and Cauldwell is self-liquidating."  (Dkt. No. 85: Gross Sur-Reply Br. at 4; Dkt. No. 82: 8/14/08 Cauldwell Sur-Reply Br. at 7-8.)

It is not necessary on this motion to determine whether these provisions qualify as valid liquidating agreements.  See, e.g., Honeywell, Inc. v. J.P. Maguire Co., 2000 WL 307398 at *12-13 (provision in contractor-subcontractor subcontract did not constitute a liquidating agreement provision because "the language in . . . the Subcontract is not consistent with the obligatory language found in liquidating agreements").  Suffice it to say that Triangle does not necessarily preclude delay and extra work claims by Cauldwell against DASNY on Gross' behalf, due to the possible existence of a liquidating agreement.

This Court finds that DASNY is not an indispensable party under Rule 19(b), regardless of whether a valid liquidating agreement exists.

## B.    Cauldwell, A Co-Obligor with American, Is Not A Rule 19(b) "Indispensable" Party

DASNY argues that Gross cannot "assert[] its delay claims and [extra work] claim only against American, an Illinois corporation," because American is "not liable for [these claims] as a matter of law," and that Cauldwell must be joined as a defendant, or as a co-plaintiff with DASNY joined as a defendant.  (Dkt. No. 66: DASNY Reply Br. at 4-5, 10.)  DASNY mainly frames this argument within the context of its claim, which this Court has rejected, that DASNY is an indispensable party under New York law.  (See pages 2, 8 above.)

Bovis, however, argues that "in order to accord Gross complete relief . . . , Cauldwell Wingate should be deemed both a necessary and indispensable party in accordance with FRCP Rule 19 since it is the only party [against] whom Gross can assert . . . [its] extra work and delay damages" claims, and without Cauldwell's joinder, Gross cannot "obtain complete relief."  (Dkt. No. 120: Bovis Br. at 2-3, 7, 9.)  Accordingly, Bovis argues that such joinder warrants dismissal of the various actions pursuant to Fed. R. Civ. P. 12(b)(7), due to a lack of diversity jurisdiction in Gross' action, and a corresponding lack of supplemental jurisdiction in the remaining actions.  (Bovis Br. at 3, 6.)

It is well-settled that co-obligors to an agreement, like American and Cauldwell,[22] are generally not "indispensable" parties to a litigation under Rule 19(b).  See, e.g., Newman-Greene, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 838, 109 S. Ct. 2218, 2226 (1989) ("given that all of the guarantors . . . are jointly and severally liable, it cannot be argued that [absent guarantor] was

---

[22]    Under the Bond, American and Cauldwell are jointly and severally liable to all claimants, thus qualifying as co-obligors.  (See Dkt. No. 6: Compl. Ex. A: Bond at 1.)

indispensable to the suit"); <u>Universal Reinsurance Co.</u> v. <u>St. Paul Fire & Marine Ins. Co.</u>, 312 F.3d 82, 87 (2d Cir. 2002) ("Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others."); <u>Janney Montgomery Scott, Inc.</u> v. <u>Shepard Niles, Inc.</u>, 11 F.3d 399, 408-09 (3d Cir. 1993) (absent party that was sole signatory to agreement held not necessary to action, because absent party and named defendant were joint obligors, as distinguished from joint obligees); <u>Tehran-Berkeley Civil & Envtl. Eng'r</u> v. <u>Tippetts-Abbett-McCarthy-Stratton</u>, 888 F.2d 239, 243 (2d Cir. 1989) ("We have construed Fed. R. Civ. P. 19 as not mandating the joinder of joint obligors."); <u>Bank of Am. Nat'l Trust & Sav. Ass'n</u> v. <u>Hotel Rittenhouse Assocs.</u>, 844 F.2d 1050, 1054 (3d Cir. 1988) (co-obligor is necessary but not indispensable); <u>Brackin Tie, Lumber & Chip Co.</u> v. <u>McLarty Farms, Inc.</u>, 704 F.2d 585, 586-87 (11th Cir. 1983) (following majority view that co-obligors, unlike co-obligees, are not indispensable parties); <u>Greenleaf</u> v. <u>Safeway Trails, Inc.</u>, 140 F.2d 889, 890-91 (2d Cir.) ("one of several joint obligors is not an indispensable party to an action against the others"), <u>cert. denied</u>, 322 U.S. 736, 64 S. Ct. 1048 (1944).[23/]

---

[23/]   See also, e.g., <u>Giaguara S.p.A.</u> v. <u>Amiglio</u>,  257 F. Supp. 2d 529, 541 (E.D.N.Y. 2003) ("[I]t is long established in the Second Circuit that a joint obligor is not an indispensable party to an action against one of the other obligors."); <u>Gen. Elec. Capital Corp.</u> v. <u>Por-Fac Cooperative, Inc.</u>, 01 Civ.10215, 2002 WL 1300054 at *3 (S.D.N.Y. June 11, 2002) ("Even if Defendants were viewed as co-obligors on the lease, joinder would not be required under Rule 19 . . . ."); <u>Rose</u> v. <u>Simms</u>, 95 Civ. 1466, 1995 WL 702307 at *6 (S.D.N.Y. Nov. 29,1995) ("While co-obligors are treated as necessary under Rule 19(a), they are generally not indispensable under Rule 19(b)."); <u>Cunard Line Ltd.</u> v. <u>Abney</u>, 540 F. Supp. 657, 659 n.3 (S.D.N.Y. 1982) ("The individual joint obligor is a necessary party (not an indispensable one) in an action against one or more of the joint individual obligors . . ."); 4 <u>Moore's Federal Practice</u> § 19.06[3] at 19-113 (3d ed. 2008) ("even if co-obligors are determined to be necessary parties whose joinder is not feasible, they are generally not held to be indispensable"); 7 C. Wright & A. Miller, <u>Federal Practice & Procedure: Civil 3d</u>

(continued...)

As the Second Circuit explained long ago:

> "[T]he plaintiff, by his judgment against one of his joint debtors, gets the relief he is entitled to, and no injustice is done to that debtor, because he is only made to perform an obligation which he was legally bound to perform before.  The absent joint obligors are not injured, because their rights are in no sense affected, and they remain liable to contribution to their coobligor who may pay the judgment by suit, as they would have been had he paid it without suit."  And this is especially true under New York statutes which permit a joint obligor to be sued separately.

Greenleaf v. Safeway Trails, Inc., 140 F.2d at 890 (citation omitted).[24/]  American is not subject to

an inconsistent obligation:

> The possibility that [defendant] may bear the whole loss if it is found liable is not the equivalent of double liability.  It is instead a common result of joint and several liability and should not be equated with prejudice.  Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy its whole judgment by execution against any one of the multiple defendants who are liable to him, thereby forcing the debtor who has paid the whole debt to protect itself by an action for contribution against the other joint obligors.

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d at 412.

In addition, as a joint obligor, American alleviated any potential prejudice to

American from Cauldwell's absence in Gross' action by commencing its third party action (Dkt. No.

9) against Cauldwell.  See, e.g., Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d at

---

[23/]   (...continued)
§ 1613 at 177-78 ("Joint obligors . . . typically are treated as Rule 19(a) parties, but are not deemed indispensable under Rule 19(b).").

[24/]   In contrast, where the absent party is a joint obligee rather than a joint obligor, the courts will dismiss on indispensability grounds, because the absent party could bring a separate action, subjecting the obligors "to double liability on the same claim."  Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d at 408; accord e.g., Rose v. Simms, 1995 WL 702307 at *5-6 (co-obligors, unlike co-obligees, are not indispensable parties); 7 C. Wright & A. Miller, Federal Practice & Procedure: Civil 3d § 1613 at 181 (In contrast to joint obligors, "[j]oint obligees . . . usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action."); 4 Moore's Federal Practice § 19.06[3] at 19-114 (same).

412-13 (absent co-obligor held not necessary party under Rule 19 because named defendant was "free to implead [the absent co-obligor], using Rule 14, . . . or to institute a separate action against [absent party] for contribution or indemnity upon principles of restitution if it is ultimately held liable" to plaintiff.); Niroomand v. Erie County Med. Ctr., No. 94-CV-0021, 1996 WL 328183 at *7 (W.D.N.Y. June 4, 1996) ("The defendants have not claimed that joinder of [absent party] by means of a third-party complaint is not feasible.  Furthermore, there is no showing that any defendant . . . is barred from bringing a subsequent claim for indemnity or contribution in another action; therefore there is apparent to this Court no prejudice to any party caused by the absence of [absent party] in this action that will result from proceeding without it.").

Accordingly, even assuming arguendo that Cauldwell were a necessary party under Rule 19(a), it is not indispensable under Rule 19(b).  Gross can obtain complete relief in this action, because American's and Cauldwell's liability is joint and several.   American will avoid sole responsibility for Gross' various causes of action through American's third party complaint against Cauldwell.   There is no danger that American and Cauldwell will be subject to inconsistent obligations, because Gross has requested only money damages.

Furthermore, although state court would be an adequate alternative venue, that single factor is not dispositive. See, e.g., Samaha v. Presbyterian Hosp., 757 F.2d 529, 531 (2d Cir. 1985) ("this court has recognized that . . . the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action."); Prescription Plan Serv. Corp. v. Franco, 552 F.2d 493, 497 (2d Cir. 1977) ("[I]t seems inappropriate to dismiss the action simply because

there exists a state forum . . . . The interests of the two groups are identical, counsel for those remaining in the case will be no less vigorous in their advocacy. . . .").

Bovis, however, maintains that Gross' "damages for extra work and delays, totaling $1.6 million, are only available . . . through Cauldwell" because "Gross is only permitted to recover damages under the payment Bond that were incurred in connection with the work performed pursuant to [the Cauldwell-Gross] subcontract." (Bovis Br. at 8-9.) Bovis admits that "since both the surety and principal are joint obligors on the Bond, a plaintiff may sue either co-obligor for relief to the extent permitted by the bond" (Bovis Br. at 8-9), but argues that the terms of the Bond and relevant case-law preclude Gross from recovering extra work and delay damages against American. (Bovis Br. at 8-9).

Bovis' interpretation of the Bond is overly narrow; the Bond does not limit payment to Gross for work performed under the Cauldwell-Gross subcontract, but rather guarantees payment to any claimant (including Gross) who provides "labor, material, or both, used or reasonably required for use in the performance of the Contract" (Dkt. No. 6: Compl. Ex. A: Bond at 1, emphasis added), which is defined as the DASNY-Cauldwell General Construction Contract. The Bond provides that:

> [Cauldwell] has by written agreement dated December 20, 2002 entered into a Contract with [DASNY] for the General Construction #2 - Fitout Work at Bronx Criminal Court Complex, DA #92561,1380909999/CR58 in accordance with the Contract Documents and any changes thereto, which are made a part hereof, and are hereinafter referred to as the Contract.

(Compl. Ex. A: Bond at 1, emphasis added.) Thus, under the Bond's terms, Gross easily qualifies as a "claimant" because its delay and extra work claims arise from its performance under the DASNY-Cauldwell General Construction Contract. (See generally Compl. ¶¶ 14-17, 20-26.) Gross

28

therefore may seek recovery on these claims against American alone.[25/]  Indeed, American concedes

that the Bond covers these claims (while contesting the validity of the claims).  (See Dkt. No. 151:

9/17/08 American Br. at 3, 5-7.)

> Bovis also argues that Gross' recovery under the Bond is confined to work performed

in connection with the Cauldwell-Gross subcontract by Atlantic Contracting Corp. v. Hartford

Accident & Indem. Corp., 155 A.D.2d 571, 547 N.Y.S.2d 649 (2d Dep't 1989), appeal denied, 76

N.Y. 2d 709, 561 N.Y.S. 2d 913 (1990), which Bovis claims holds that "unless payment for extra

work is authorized, no liability may be imputed to the surety for such damages."  (Bovis. Br. at 8

n.25.)  Construction contracts often require proof of authorization for contractors or subcontractors

to receive payment for extra work, and to correspondingly impose liability on the beneficiary of any

extra work.  See, e.g, G. Rama Constr. Enters., Inc. v. 80-82 Guernsey St. Assocs., LLC, 43 A.D.3d

863, 865-66, 841 N.Y.S.2d 669, 672 (2d Dep't 2007) (affirming summary judgment against plaintiff

contractor seeking "extra work" damages because "the parties' written contract . . . expressly

precluded oral extras or change orders not documented in writing" and because plaintiff was unable

to demonstrate that extras and charge orders were "approved or authorized").  Indeed, the Cauldwell-

Gross subcontract requires such authorization:

> > [Gross] acknowledges and agrees that it shall make no claim for extra or additional
> > compensation on account of any such work, unless same shall have been  done
> > pursuant to a written order, signed by the representative designated by the Contractor
> > as having the authority to order such extra work.

---

[25/]      Furthermore, even if the Bond defined claimants by reference to work performed in
furtherance of the Cauldwell-Gross subcontract, the subcontract specifically provides
Cauldwell the right to order extra work, and provides Gross the corresponding right to seek
"extra or additional compensation on account of any such work." (Dkt. No. 46: Hewitt Opp.
Aff. Ex. I: Cauldwell-Gross Subcontract ¶ 9.1.)

(Hewitt Opp. Aff. Ex. I: Cauldwell-Gross Subcontract ¶ 9.1.) Atlantic Contracting Corp. v. Hartford Accident & Indem. Corp., in which defendant-surety conceded liability to plaintiff subcontractor for extra work claims, does not support Bovis' claim that Gross cannot recover on the Bond for "extra work" claims.

"New York cases have made clear that such suits . . . in which a surety but not the principal is sued by an alleged creditor, are common and permissible under New York law." Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co., 226 F.R.D. 485, 490 (S.D.N.Y. 2005); see, e.g., Siteworks Contracting Corp. v. W. Sur. Co., 461 F. Supp. 2d 205, 209 (S.D.N.Y. 2006); Holland v. Fahnestock & Co., 210 F.R.D. 487, 500 (S.D.N.Y. 2002) (Berman, D.J. & Peck, M.J.); Huber Lathing Corp. v. Aetna Cas. & Sur. Co., 132 A.D.2d 597, 598, 517 N.Y.S.2d 758, 760 (2d Dep't 1987) ("[I]t is not unusual for the beneficiary of a guarantee to sue a guarantor or surety alone, apart from any action against the principal debtor, and there is no requirement that the beneficiary join both parties.") (citation omitted); see also 63 N.Y. Jur.2d Guaranty & Suretyship § 330 ("If the action is to obtain a money judgment against the surety alone, the creditor cannot be compelled to bring in the principal as a defendant, unless the suretyship contract expressly provides as a condition precedent to liability on the part of the surety that the principal must be made a party to any action on the undertaking.") (fns. omitted).  Atlantic Contracting Corp. does not meaningly distinguish or add anything relevant to this basic tenet of New York law.

In "equity and good conscience," the Court finds that Cauldwell is not indispensable to this action under Rule 19(b).

### III.   SUPPLEMENTAL JURISDICTION PROPERLY EXISTS OVER CAULDWELL'S FOURTH-PARTY AND DASNY'S FIFTH PARTY ACTIONS; SEVERANCE OF CLAIMS IS UNWARRANTED

In the alternative, DASNY asks this Court to exercise its discretion under 28 U.S.C. § 1367(c)(2) to decline supplemental jurisdiction – this Court's sole basis for jurisdiction – over Cauldwell's fourth-party complaint against DASNY, "because the claims raised in the fourth-party complaint substantially predominate" over the claims raised in Gross' complaint. (Dkt. No. 36: DASNY Br. at 2.) DASNY argues that Cauldwell's complaint warrants dismissal under 28 U.S.C. 1367(c)(2) because "[i]n contrast to the much more circumscribed scope of [Gross'] complaint, [Cauldwell's] fourth-party complaint asserts claims encompassing the entire breadth of Cauldwell Wingate's general contract with DASNY, including numerous subcontracts, none of which are related to plaintiff's claims." (DASNY Br. at 3.)

Bovis also asks this Court to exercise its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over DASNY's fifth-party complaint because "the myriad state law claims that are raised in the Fourth and Fifth-Party Actions involve entirely different analyses, standards of proof and a substantially expanded scope of discovery" and because of "exceptional circumstances" related to the inconvenience of litigating in federal court. (See Dkt. No. 120: Bovis Br. at 14-15.)

In the alternative, DASNY asks this Court to "sever the fourth-party complaint from the main and third-party actions" pursuant to Fed. R. Civ. P. 14(a)(4) or 42(b) and stay the fourth-party complaint. (DASNY Br. at 2, 10.)

**A.    Supplemental Jurisdiction Should Be Extended To the Fourth & Fifth Party Actions**

28 U.S.C. § 1367 provides that when a district court has original jurisdiction in a civil action, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Claims are part of the same case or controversy if they derive from a common nucleus of operative fact.  E.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006); State St. House, Inc. v. New York State Urban Dev. Corp., 75 Fed. Appx. 807, 811-12 (2d Cir. 2003).[26]  It is clear – and neither DASNY nor Bovis disagree – that the claims in the fourth and fifth party complaints are part of the same case or controversy under 28 U.S.C. § 1367(a), i.e., derive from the common nucleus of operative facts of who – owner, contractors or subcontractors – is liable for delay and extra work damages, thus granting this Court the authority to properly exercise supplemental jurisdiction.

Although 28 U.S.C. §1367(a) broadly grants supplemental jurisdiction over constitutionally related claims when original jurisdiction lies solely in diversity, as in the instant action, 28 U.S.C. § 1367(b)[27] creates several exceptions, none of which apply here.  See, e.g.,

---

[26]    See, e.g., Prudential Equity Group, LLC v. Ajamie, 524 F. Supp. 2d 473, 475 (S.D.N.Y. 2007); Dunlop v. City of New York, 06 Civ. 443, 2006 WL 2853972 at *4 (S.D.N.Y. Oct. 4, 2006); SAT Int'l Corp. v. Great White Fleet (US) Ltd., 03 Civ. 7481, 2006 WL 661042 at *5 (S.D.N.Y. Mar. 16, 2006).

[27]    In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under

(continued...)

Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 326 n.7 (2d Cir. 2001) ("Although as a general matter, § 1367 expands supplemental jurisdiction to all claims and all parties that are part of the same constitutional case over which there exists independent federal jurisdiction, it retains . . . several exceptions . . . in cases in which original federal jurisdiction is founded solely on diversity."); Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 297 (2d Cir. 2000).[28/]  Neither DASNY nor Bovis assert that § 1367(b)'s exceptions apply in this case.  (Dkt. No. 36: DASNY Br. at 4-10; Dkt. No. 120: Bovis Br. at 13-16.)

        Section 1367(c) permits district courts to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

        (1) the claims raises a novel or complex issue of State law,

        (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

        (3) the district court has dismissed all claims over which it has original jurisdiction, or

        (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

_____

[27/]    (...continued)
        Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

        28 U.S.C. § 1367(b).

[28/]    See also, e.g., Green Hills (USA), L.L.C. v. Aaron Streit, Inc., 361 F. Supp. 2d 81, 87 n.6 (E.D.N.Y. 2005); In re Sept. 11th Liab. Ins. Coverage Cases, 333 F. Supp. 2d 111, 117 (S.D.N.Y. 2004); Green v. Doukas, 97 Civ. 8288, 2001 WL 767069 at *3 (S.D.N.Y. June 22, 2001); UNI Storebrand Ins. Co., UK Ltd. v. Star Terminal Corp., 96 Civ. 9556, 1997 WL 391125 at *3-4 (S.D.N.Y. July 11, 1997).

33

28 U.S.C. § 1367(c).  "In providing that a district court 'may' decline to exercise such jurisdiction, this subsection is permissive rather than mandatory."  <u>Valencia</u> v. <u>Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003).[29/]

      "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in [<u>United Mine Workers</u> v.] Gibbs, 383 U.S. [715,] 726, 86 S. Ct. 1130 [,1139 (1966)]: economy, convenience, fairness, and comity."  <u>Jones</u> v. <u>Ford Motor Credit Co.</u>, 358 F.3d 205, 214 (2d Cir. 2004); <u>see</u>, <u>e.g.</u>, <u>Itar-Tass Russian News Agency</u> v. <u>Russian Kurier, Inc.</u>, 140 F.3d 442, 446 (2d Cir. 1998) ("Once a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion 'is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity.") (internal quotations omitted).[30/]  Defendants (DASNY and Bovis in this case) bear the burden of persuading the Court

---

[29/]     Accord, <u>e.g.</u>, <u>Klein & Co. Futures, Inc.</u> v. <u>Bd. of Trade of City of New York</u>, 464 F.3d 255, 263 (2d Cir. 2006), <u>cert. dismissed</u>, 128 S. Ct. 828 (2007); <u>Shah</u> v. <u>Wilco Sys., Inc.</u>, 76 Fed. Appx. 383, 386 (2d Cir. 2003); <u>Vysovsky</u> v. <u>Glassman</u>, 01 Civ. 2531, 2007 WL 3130562 at *5 (S.D.N.Y. Oct. 23, 2007); <u>Wellnx Life Scis. Inc.</u> v. <u>Iovate Health Scis. Research Inc.</u>, 516 F. Supp. 2d 270, 296 (S.D.N.Y. 2007); <u>De Nicola</u> v. <u>Adelphi Acad.</u>, No. CV-05-4231, 2006 WL 2844384 at *12 (E.D.N.Y. Sept. 29, 2006); <u>Barclay</u> v. <u>Polano</u>, No. 03CV6585, 2004 WL 2900694 at *5 (W.D.N.Y. Dec. 14, 2004); <u>Miqui</u> v. <u>City of New York</u>, No. 01-CV-4628, 2003 WL 22937690 at *7 (E.D.N.Y. Dec. 5, 2003).

[30/]     Accord, <u>e.g.</u>, <u>Kolari</u> v. <u>New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006); <u>Briarpatch Ltd., L.P.</u> v. <u>Geisler Roberdeau, Inc.</u>, 99 Civ. 9623, 2007 WL 1040809 at *20 (S.D.N.Y. Apr. 4, 2007); <u>Advance Relocation & Storage Co.</u> v. <u>Local 814, Int'l Bhd. of Teamsters, AFL-CIO</u>, No. 03CV4475, 2005 WL 665119 at *11 (E.D.N.Y. Mar. 22, 2005); <u>Hutchinson</u> v. <u>United States</u>, No. 01-CV-1198, 2004 WL 350576 at *3 (E.D.N.Y. Feb. 20, 2004); <u>SST Global Tech., LLC</u> v. <u>Chapman</u>, 270 F. Supp. 2d 444, 456 (S.D.N.Y. 2003) ("In
(continued...)

to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) because plaintiff's "claims are better litigated elsewhere." <u>Akwesi</u> v. <u>Uptown Lube & C/W, Inc.</u>, 07 Civ. 335,  2007 WL 4326732 at *5 (S.D.N.Y. Nov. 30, 2007).

First, then, this Court must determine whether § 1367(c)(2) or (4) applies to the instant action.[31]

"The 'substantially predominates' standard of § 1367(c)(2) creates a 'limited exception' to the exercise of supplemental jurisdiction that should be invoked only when 'permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" <u>Luongo</u> v. <u>Nationwide Mut. Ins. Co.</u>, 95 Civ. 3190, 1996 WL 445365 at *5 (S.D.N.Y. Aug. 7, 1996); <u>accord</u>, <u>e.g.</u>, <u>Gliatta</u> v. <u>Stein</u>, No. 03-CV-0214, 2004 WL 1171714 at *3 (W.D.N.Y. May 23, 2004); <u>OccuNomix Int'l LLC</u> v. <u>N. Ocean Ventures, Inc.</u>, 03 Civ. 6047, 2003 WL 22240660 at *1 (S.D.N.Y. Sept. 30, 2003).[32] "The inquiry under Section 1367(c)(2) turns

---

[30]     (...continued)
the Second Circuit, the supplemental jurisdiction analysis has two steps. First, the court must 'identif[y] one of the factual predicates which corresponds to one of the subsection 1367(c) categories.'  Then, the court may exercise its discretion to determine whether to decline to grant supplemental jurisdiction; its decision should be informed by the values of judicial economy, convenience, fairness, and comity.") (citations omitted); <u>Bu</u> v. <u>Benenson</u>, 181 F. Supp. 2d 247, 250-51 (S.D.N.Y. 2001).

[31]     Bovis and DASNY concede that § 1367(c)(1) & (3) are inapplicable.  (DASNY Br. at 4-6; Bovis Br. at 14-16; 2/23/09 Oral Argument.)

[32]     <u>See also</u>, <u>e.g.</u>, <u>Nichols</u> v. <u>Washington Mut. Bank</u>, No. 07-CV-3216, 2007 WL 4198252 at *10 (E.D.N.Y. Nov. 21, 2007) ("It is appropriate to decline to exercise supplemental jurisdiction where the federal claims constitute 'an appendage' to the state claims forming the 'real body of the case.'"); <u>Nelson</u> v. <u>City of Rochester</u>, 492 F. Supp. 2d 282, 289 n.3 (W.D.N.Y. 2007); <u>City of New Rochelle</u> v. <u>Town of Mamaroneck</u>, 111 F. Supp. 2d 353, 371 (S.D.N.Y. 2000); <u>State</u> v. <u>Philip Morris Inc.</u>, 97 Civ. 794, 1998 WL 2574 at *2 (S.D.N.Y. (continued...)

on whether the supplemental claims 'are more complex or require more judicial resources or are more salient in the case as a whole' than the claims over which the court has original jurisdiction." Pro Bono Invs., Inc. v. Gerry, 2005 WL 2429787 at *14 (citing Luongo v. Nationwide Mut. Ins. Co., 1996 WL 445365 at *5).[33/]

Courts most commonly apply 28 U.S.C. § 1367(c)(2) to actions based in §1331 federal question jurisdiction in order to determine whether "predominating" supplemental state claims would be best litigated in state court. See, e.g., Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *13 (E.D.N.Y. Apr. 23, 2007) (supplemental state law wage claims do not predominate over federal FLSA claims); Caruso v. Camilleri, No. 04-CV-167, 2008 WL 170321 at *32 (W.D.N.Y. Jan. 15, 2008) (supplemental New York Human Rights Law claims do not predominate over federal ADA retaliation claim.); Padilla v. Clovis & Roche, Inc., No. 07-CV-0267, 2007 WL 4264582 at *4 (N.D.N.Y. Nov. 30, 2007) (supplemental state law debt collection counterclaims do not predominate over federal FDCPA claims); Lindner v. New York City Bd. of Educ., No. 01-CV-8245, 2005 WL 1801648 at *8 (E.D.N.Y. July 28, 2005) (supplemental state law claims do not predominate over federal Title VII claims); OccuNomix Intern. LLC v. N. Ocean Ventures, Inc., 2003 WL 22240660 at *1 (supplemental state law fraud and breach of contract claims predominate over federal Electronics Communications Privacy Act claim.).

---

[32/]   (...continued)
Jan. 5, 1998).

[33/]   See, e.g., Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d 556, 582 (S.D.N.Y. 2007); Gliatta v. Stein, 2004 WL 1171714 at *3; OccuNomix Intern. LLC v. N. Ocean Ventures, Inc., 2003 WL 22240660 at *1.

In this case, however, federal jurisdiction is based on diversity.  DASNY and Bovis maintain that this Court should decline to exercise supplemental jurisdiction over the fourth and fifth-party complaints because they function as the "real body of the case," dramatically expanding the scope of an otherwise straightforward, simple action by Gross against American.  DASNY argues that Cauldwell's "fourth-party complaint raises state law claims [that] . . . will require significantly more testimonial and documentary evidence and judicial resources to adjudicate" and that Cauldwell's complaint "requires determination of claims entirely unrelated to [Gross'] subcontract." (Dkt. No. 36: DASNY Br. at 6.)  Similarly, Bovis argues that "the myriad state law claims that are raised in the fourth and fifth-party actions involve entirely different analyses, standards of proof and a substantially expanded scope of discovery than what will be required to isolate one subcontractor's claim on a payment bond" and that "[t]he [m]ain [a]ction involves the issue of a surety's duty under a payment bond, while the Third-Party [a]ction is solely concerned with the law of indemnification." (Dkt. No. 120: Bovis Br. at 14-15.)

This Court disagrees with Bovis' and DASNY's contention that the fourth and fifth-party complaints inappropriately expand the scope of this case.  Gross' complaint asserts state law claims that Cauldwell (and hence American) is responsible for Gross' contract, extra work and delay damages.  American's third party complaint seeks indemnification from Cauldwell, and Cauldwell's defense is that it is not responsible for these claims, DASNY is.  If the Court declined to exercise supplemental jurisdiction over Cauldwell's fourth party complaint against DASNY, Cauldwell (and American) could be subject to inconsistent rulings.  This Court could find Cauldwell responsible for Gross' damages, but when Cauldwell sought to recover on its claims against DASNY in a separate

suit in state court, DASNY might prevail, subjecting Cauldwell to inconsistent verdicts.  Similarly, as to DASNY and the fifth party defendants including Bovis.  In other words, the intertwined factual and state law legal issue on the original complaint and the fourth and fifth party complaints is which of the owner, contractors and subcontractors is responsible for causing delays or requiring extra work.

Cauldwell's and DASNY's fourth and fifth party complaints do, of course, involve contracts, subcontracts and particular work that may not affect Gross, and which has resulted in expanded discovery and a more complicated litigation.  This construction litigation, however, always was destined for an ever-expanding cast of litigants and substantial discovery, no matter which party filed first, and in whichever court the litigation landed.  The Court has not been shy in telling counsel at conferences that the Court would have been happier if Gross had started this litigation in state court or if the parties could agree to have this entire litigation in state court.  Gross' action, however, was properly brought before this Court based on diversity jurisdiction, and although the Court would not hesitate to dismiss the supplemental actions if they could be more efficiently and fairly managed by a state court, such a dismissal would diminish the possibility of a fair resolution of the entire dispute.  Gross' complaint, Cauldwell's fourth party complaint and DASNY's fifth party complaint all involve the same New York state construction law principles, and have and will generate overlapping and intertwined discovery that calls for resolution before the same judicial body.  See, e.g., United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C., 569 F. Supp. 2d 658, 667 (E.D. La. 2008) (Defendant's cross-claim does not predominate over the diversity-based main action under § 1367(c)(2) because the "actions are sufficiently intertwined so that one does not predominate over

the other and the discovery, evidence, etc., will overlap in both the main demand and in the cross-claim. Further, the main demand and the cross-claim involve the same Louisiana state law principles."); CCC Ins. Co. v. Brooklyn Hosp. Ctr., 03 Civ. 3093, 2004 WL 1191980 at *4 (S.D.N.Y. May 28, 2004) (Defendant's state law claims against non-diverse defendants do not substantially predominate over the original claims under § 1367(c)(2) where "[p]laintiffs have properly invoked this Court's diversity of citizenship jurisdiction with a substantial claim against defendant, and their proposed amended complaint would bring before th[e] Court the full breadth of the dispute between the parties.  Under those circumstances, it is proper for the Court also to exercise jurisdiction over any third-party claims defendant wishes to assert."); Hartford Steam Boiler Inspection & Ins. Co. v. Quantum Chem. Corp., No. 91 C 6907, 1994 WL 494776 at *8 (N.D. Ill. Sept. 8, 1994) ("Because the [third-party] counterclaims against [plaintiff] and against the [third-party defendants] involve overlapping and almost identical questions of law and fact, there can be no argument under § 1367(c)(2) that the supplemental claims predominate over the claims over which we have original [diversity] jurisdiction.").   This Court, therefore, should continue to exercise supplemental jurisdiction over Cauldwell's fourth and DASNY's fifth party complaints.

In addition, Bovis asks this Court to decline to exercise supplemental jurisdiction due to "exceptional circumstances," namely that "Bovis never intended to resolve any of the Project's disputes in federal district court in Manhattan."  (Bovis Br. at 15-16.)  Bovis presumably refers to "the catch-all created by subsection 1367(c)(4)," which "should be employed when circumstances are 'quite unusual.'"  Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d at 446; accord, e.g., Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d at 583; Bray v. City of New

York, 356 F. Supp. 2d 277, 283 (S.D.N.Y.2004); U. S. Fire Ins. Co. v. United Limousine Serv., Inc.,

328 F. Supp. 2d 450, 454 (S.D.N.Y. 2004); Hutchinson v. United States, 2004 WL 350576 at *3

(§ 1367(c)(f) "determinations should be the 'exception rather than the rule'");  SST Global Tech.,

LLC v. Chapman, 270 F. Supp. 2d at 459.  Bovis' explanation is feeble at best, as it should have been

equally prepared to litigate the instant action in state or federal court, as diversity cases based on

New York state law are often filed in the Southern District of New York, including in construction

disputes.[34/]  Nothing about this is in any way "unusual."

       Accordingly, as much as this Court would be happy to see this entire case in state

court, supplemental jurisdiction over the fourth and fifth party complaints should not be denied under

§ 1367(c).

### B.    The Fourth and Fifth Party Actions Should Not be Severed under Rules 14(a)(4) or 42(b)

       Alternatively, DASNY asks this Court to sever Cauldwell's fourth-party complaint

(see Dkt. No. 36: DASNY Br. at 2,10) under Federal Rule of Civil Procedure 14(a)(4) which

provides that "[a]ny party may move to strike the third-party claim, to sever it or to try it separately,"

Fed. R. Civ, P. 14(a), or under Federal Rule of Civil Procedure 42(b) which states that "[f]or

convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial

of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

---

[34/]    Construction disputes often are brought in this District pursuant to diversity jurisdiction. See generally, e.g., Helena Assocs., LLC v. EFCO Corp., 06 Civ. 0861, 2008 WL 2117621 (S.D.N.Y. May 14, 2008); Nova Cas. Co. v. Liberty Mut. Ins. Co., 540 F. Supp. 2d 476 (S.D.N.Y. 2008); Travelers Cas. & Sur. Co. v. White Plains Public Schs., 03 Civ. 8144, 2007 WL 935612 (S.D.N.Y. Jan. 26, 2007); Oldcastle Precast, Inc. v. U.S. Fid. & Guar. Co., 458 F. Supp. 2d 131 (S.D.N.Y. 2006).

"Federal courts view severance as a 'procedural device to be employed only in exceptional circumstances .'" Wausau Bus. Ins. Co. v. Turner Constr. Co., 99 Civ. 0682, 2001 WL 963943 at *1 (S.D.N.Y. Aug. 23, 2001); accord, e.g., Carr v. Michael Weinig, AG, No. 01-CV-1514, 2006 WL 2355867 at *7 (N.D.N.Y. Aug. 14 2006); Hartford Fire Ins. Co. v. County Asphalt, Inc., 01 Civ. 6176, 2002 WL 31654853 at *4 (S.D.N.Y. Nov. 22, 2002).  In determining whether to sever claims or to order a separate trial, a court may consider:

> (1) whether the issues sought to be tried separately are significantly different; (2) whether the issues are triable by the jury or the court; (3) whether the posture of discovery as to the respective issues favors separate trials; (4) whether the issues require different proof; and (5) whether the non-movant will be prejudiced by a severance.

Flair Broad. Corp. v. Powers, 89 Civ. 2528, 89 Civ. 5185,  1995 WL 507314 at *2 (S.D.N.Y. Aug. 28, 1995).[35/]  "The movant has the burden of showing that it will be prejudiced if a separate trial is not granted."  Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 551 (S.D.N.Y. 1994); accord, e.g., Carr v. Michael Weinig, AG, 2006 WL 2355867 at *7; Edwards v. Int'l Bus. Machines Corp., No. 89-CV-274, 1994 WL 532499 at *9 (N.D.N.Y. Sept. 26, 1994).

For the exact same reasons discussed above (see Section III. A), this Court declines to sever the supplemental claims, at least for pretrial purposes.  Decision as to the best way to try this case will be left to Judge Kaplan as the trial judge, and DASNY may renew its Rule 42 motion at that time.

---

[35/]      Accord, e.g., Carr v. Michael Weinig, AG, 2006 WL 2355867 at *7; Jeanty v. County of Orange, 379 F. Supp. 2d 533, 548 (S.D.N.Y. 2005); Hecht v. City of New York, 217 F.R.D. 148, 150 (S.D.N.Y. 2003); Hartford Fire Ins. Co. v. County Asphalt, Inc., 2002 WL 31654853 at *4.

## CONCLUSION

For the reasons stated above, DASNY's and Bovis' motions to dismiss (Dkt. Nos. 34 & 118) should be <u>DENIED</u>.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

42

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(d).

Dated:      New York, New York
            February 23, 2009

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies **by ECF** to:   All Counsel
                        Judge Lewis A. Kaplan

H:\OPIN\GROSS CONSTRUCTION